1  **NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
2     Alex M. Tomasevic (SBN 245598)
      Shaun Markley (SBN 291785)
3  225 Broadway, 19th Floor
   San Diego, California 92101
4  Tel: (619) 325-0492
   Fax: (619) 325-0496
5  Email: cnicholas@nicholaslaw.org
   Email: atomasevic@nicholaslaw.org
6  Email: smarkley@nicholaslaw.org

7  **WINTERS & ASSOCIATES**
      Jack B. Winters, Jr. (SBN 82998)
8     Georg M. Capielo (SBN 245491)
      Sarah Ball (SBN 292337)
9  1901 First Avenue, Suite 400
   San Diego, CA 92101
10 Tel: (619) 234-9000
   Email: jackbwinters@earthlink.net
11 Email: gcapielo@einsurelaw.com
   Email: sball@einsurelaw.com
12
   Attorneys for Plaintiff
13 MICHELLE L. MORIARTY, Individually,
   as Successor-In-Interest to Heron D. Moriarty, Decedent,
14 on Behalf of the Estate of Heron D. Moriarty,
   and on Behalf of the Class
15

16                **UNITED STATES DISTRICT COURT**

17              **SOUTHERN DISTRICT OF CALIFORNIA**

18 | MICHELLE L. MORIARTY, | CASE NO.:  3:17-cv-01709-BTM-BGS |
   Individually, as Successor-In-Interest
19 to Heron D. Moriarty, Decedent, on         **FIRST AMENDED CLASS ACTION**
   Behalf of the Estate of Heron D.           **COMPLAINT FOR:**
20 Moriarty, and on Behalf of the Class,
                                              **(1)   DECLARATORY RELIEF AND**
21           Plaintiff,                              **INJUNCTIVE RELIEF;**
         vs.
22                                            **(2)   BREACH OF CONTRACT;**

23 AMERICAN GENERAL LIFE                      **(3)   BAD FAITH;**
   INSURANCE COMPANY, a Texas
24 Corporation; BAYSIDE INSURANCE            **(4)   NEGLIGENCE; AND**
   ASSOCIATES, INC., a California
25 Corporation; and Does 1-20, Inclusive,    **(5)   VIOLATION OF CALIFORNIA**
                                                   **BUSINESS & PROFESSIONS**
26           Defendant.                            **CODE §§ 17200, ET. SEQ.**

27                                            **DEMAND FOR JURY TRIAL**

28

---

                          1                          3:17-CV-01709-BTM-BGS
             FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff MICHELLE L. MORIARTY, Individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of William Heron D. Moriarty, and on Behalf of the Class, alleges as follows:

## I.   NATURE OF THE CASE

1.   This action arises out of the failure of AMERICAN GENERAL LIFE INSURANCE COMPANY ("AGLIC") to comply with California Insurance Code Sections 10113.71 and 10113.72, requirements for individual policies of insurance issued or delivered in the state of California prior to January 1, 2013, and in force at any time thereafter.  These California Insurance Code provisions mandate that from January1, 2013, policy holders in the state are to be afforded a 60-day grace period, a right to a written 30-day notice prior to any lapse or termination, and, further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage.  These California Insurance Code provisions went into effect on January 1, 2013, and apply to every policy issued or delivered in the state and in force on January 1, 2013, and thereafter.

2.   In September of 2012, Heron D. Moriarty purchased a $1,000,000 term life insurance policy (the "Policy") for the protection of his family.  In March of 2016, a single monthly payment was returned unpaid.  Mr. Moriarty, who was incapacitated at the time, was not afforded the protections intended by the implementation of these new Insurance Code protections. He was never advised he could have someone else receive the requisite notices.  He was not provided a 60-day grace period.  He was also not afforded a 30-day written notice prior to the lapse and termination of his coverage.  The benefits of these provisions were also denied to the express designated beneficiary of the Policy.

3.   When Plaintiff MICHELLE L. MORIARTY ("Ms. Moriarty"), the wife of Mr. Moriarty, learned the Policy premiums may not have been paid, she went to the family's insurance agent for assistance.  That assistance, while promised, was not provided and, unbeknownst to Ms. Moriarty and her husband, AGLIC lapsed and

1  terminated the Policy.  On May 31, 2016, while awaiting word from their insurance

2  agent about the Policy's status, Mr. Moriarty died.

3       4.     Subsequent to her husband's death, Plaintiff made numerous attempts to

4  obtain the benefits of the Policy which were intended to protect her family exactly in

5  this type of situation.  AGLIC's sole response to these demands has been to assert that

6  California Insurance Code Sections 10113.71 and 10113.72 do not apply to policies

7  issued or delivered prior to January 1, 2013, because this would operate as some form

8  of illegal retroactive application of these forfeiture provisions.

9       5.     The statutes are not in any sense being applied retroactively and only

10  regulate the manner in which life insurance policies are lapsed or terminated after

11  January 1, 2013.  Despite being provided actual judicial decisions supporting this

12  interpretation, AGLIC refuses to comply with these provisions, not only as to Ms.

13  Moriarty, but also as to every AGLIC policy holder and beneficiary whose policies

14  may have issued prior to January 1, 2013.

15       6.     This action is intended to address the conduct of AGLIC and the rights,

16  not only of Ms. Moriarty and the Estate of Mr. Moriarty, but of all AGLIC policy

17  holders and beneficiaries who have been denied the benefit and protection of these

18  provisions.

19  ## II.   PARTIES

20       7.     Plaintiff MICHELLE L. MORIARTY is an individual who at all times

21  referenced herein was a resident of the state of California and the wife of Heron D.

22  Moriarty ("Mr. Moriarty").  Prior to his death, Mr. Moriarty resided in the county of

23  San Diego.  Plaintiff pursues these claims and causes of action individually, on her

24  own behalf as the sole beneficiary of the subject Policy; as Executor of the Estate of

25  Heron D. Moriarty, pursuant to California Code of Civil Procedure Sections 377.30,

26  *et seq.*; as Decedent's successor-in-interest, in compliance with California Code of

27  Civil Procedure Section 377.32; and as the representative of the Classes.  Filed

28  herewith and incorporated hereto by this reference is Plaintiff's Declaration pursuant

to California Code of Civil Procedure Section 377.32.  Plaintiff pursues these claims to the extent they are not held by Mr. Moriarty.  For purposes of this litigation, the Estate of Heron D. Moriarty is considered a citizen of the state of California.  In each of these capacities, Ms. Moriarty also pursues these claims on behalf of all others similarly situated as against Defendants herein.

8.     Defendants AMERICAN GENERAL LIFE INSURANCE COMPANY, a Texas Corporation, and DOES 1 through 5 (hereinafter collectively "AGLIC") are various forms of insurance companies, holding companies, parent and related subsidiary companies, and, during all times relevant herein, conducted business as licensed insurers in the state of California, were involved in the sale and maintenance of life insurance issued by Defendants, and were licensed to sell and maintain life insurance in the state of California.   Specifically, AGLIC is a wholly-owned subsidiary of American International Group (hereinafter "AIG").  AIG is, amongst other things, an insurance holding company which owns and controls insurance companies, including AGLIC, as well as those companies hereinafter described as "affiliated companies", which are involved in the sale, issuance, and delivery of life insurance products and policies in the state of California.  Plaintiff is informed and believes that AIG determines and manages the policies and procedures of AGLIC and other insurance companies doing business in the state of California.

9.     Defendant BAYSIDE INSURANCE ASSOCIATES, INC. (hereinafter "Bayside") is a California corporation doing business in San Diego County in the state of California.  At all times herein, BAYSIDE, its agents, and its representatives, held themselves out as expert life insurance agents and/or brokers and provided services to this effect to Plaintiff's Decedent and Plaintiff concerning life insurance policies described herein.  Plaintiff is informed and believes BAYSIDE was involved in the activities described herein pursuant to a written agreement with AGLIC, AIG, or one of its affiliated companies and entities, and also was involved in providing advice and counsel to Plaintiff's Decedent and to Plaintiff as either a broker to

Plaintiff, to Plaintiff's Decedent, and/or as an agent and representative of AGLIC or of one of its "affiliated companies." Plaintiff is informed and believes there may exist some form of written agency or producer agreement between BAYSIDE and AGLIC and/or affiliated companies or managing agents which further defines and explains BAYSIDE's status and capacity.

10.    Plaintiff is informed and believes and thereon allege that DOES 6 thru 20, inclusive, were the agents, servants, and employees of their co-Defendants and, in doing the things hereinafter alleged, were acting within the scope of their authority as such agents, servants, and employees, with the permission, consent and/or subsequent ratification of co-Defendants.

11.    Plaintiff is informed and believes and on that basis alleges that, now and at all times herein mentioned, each Defendant was and is the agent, employee, employer, servant, representative, partner, and/or co-venturer of each of the other Defendants and was acting and is acting within the scope of such authority and relationship and with the knowledge, approval, consent, and ratification of the other Defendants, as applicable as to each of the transactions, events, or other matters herein described.

### III.    <u>JURISDICTION</u>

12.    This is a civil matter of which this Court has jurisdiction. This action arose in the state of California and exclusively involves application of the laws of the state of California, as well as life insurance policies issued and delivered in the state of California, the death of a policyholder and insured within the state, and a denial of the claim for benefits solely within the state to a resident of the state involving current and ongoing disputes between citizens of this state. The matter also involves the Estate of Heron D. Moriarty and the citizenship of the Decedent at the time of his death pursuant to United States Code, Title 28, Section 1332(c)(2). Thus, "[w]here an estate is a party, the citizenship that counts for diversity purposes is that of the decedent, and [he] is deemed to be a citizen of the state in which [he] was domiciled

at the time of [his] death."  At the time of his death, Plaintiff's Decedent was a resident and thus a citizen of the state of California.

13.    Plaintiff is informed and believes that the controversy at issue solely involves a dispute confined to the state of California, its laws, and the ultimate jurisdiction of the courts of California.

14.    Plaintiff is informed and believes that all injuries and damages arose primarily in the state of California and all related conduct of each of the Defendants occurred solely within the state of California.

## IV.    FACTUAL STATEMENT

15.    In September of 2012, AGLIC issued and delivered to Plaintiff's Decedent a $1,000,000 term life insurance policy which named his wife, Ms. Moriarty, as the sole beneficiary for the benefit of his wife and mother of his three children.  A true and accurate copy of the Policy is attached hereto as Exhibit "A" and incorporated by reference herein.  The Policy was issued and delivered in the state of California and thus was subject to all mandates of the California Insurance Code, including, California Insurance Code Section 41 and, as a matter of law, incorporated all laws of the state of California applicable to policies issued or delivered in the state at any time.  When the Policy was issued and delivered, AGLIC understood and agreed that during all times the Policy was in force, AGLIC would agree to comply with the provisions of the California Insurance Code.

16.    Under the terms of the Policy, Decedent was required to pay a monthly premium due on the 20th day of each month.  Beginning in September of 2012, Decedent paid the premiums monthly, payments being due on the 20th of each month.

17.    On January 1, 2013, by operation of law and consistent with AGLIC's understanding that its policies were governed by and would conform to the mandates of the California Insurance Code, the Policy was modified by the provisions of California Insurance Code Sections 10113.71 and 10113.72 regarding various forfeiture procedures arising from nonpayment of premiums.  By the statutes' clear

terms, the provisions applied to the obligations of insurers of policies governed by the state of California and required insurers provide a 60-day grace period before any lapse or termination of a policy could be effectuated for nonpayment of premiums. The provisions also required that notices of pending lapse or termination be mailed "after a premium was due and unpaid" to the policy owner, as well as to designated individuals, at least 30-days before lapse or termination for nonpayment of premiums. Section (c) of 10113.72 provides as follows:

> No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after the premium is due and unpaid.

Additionally, the provisions require that policy owners be provided a right to designate individuals to receive these pending lapse or termination notices. Under these provisions and California law, failure to strictly comply with the forfeiture provisions invalidates or makes "ineffective" any lapse or termination of a policy. Under these provisions and California law, these forfeitures provisions were made part of all policies in force as of January 1, 2013.

18. Prior to January 1, 2013, Defendant AGLIC became aware of the provisions of California Insurance Code Sections 10113.71 and 10113.72, but continues to fail to comply with these provisions, solely on grounds that the provisions do not apply "retroactively." These forfeiture provisions, by their clear terms, are not being applied retroactively, but are to be applied prospectively as of January 1, 2013, and only deal with lapses and terminations, as well as grace periods and notices of pending lapse or termination, occurring or arising after January 1, 2013.

19. To the extent there is deemed any retroactive application of the statutes, it was further the clear intent of the California Legislature to apply these provisions

FIRST AMENDED CLASS ACTION COMPLAINT

to "every life insurance policy issued or delivered in the state."  The Legislature evidenced this intent in its use of the word "every" and further in specifying in the statute what life insurance policies were governed by this statute.  *See* Cal. Ins. Code § 10113.71(c).  When intending to limit mandated policy provisions to newly issued or delivered policies, the California Legislature clearly indicates such an intention.  *See* Cal. Ins. Code § 10113.5(d) (mandating the inclusion of a two-year discretionary clause in individual life or disability policies "delivered or issued for delivery", but explicitly excepting policies issued or delivered prior to the date of the statute's enactment).

20.    The language of the statutes is clear and explicit and there is no reasonable interpretation that prevents application of these provisions to AGLIC policies issued or delivered prior to January 1, 2013.  To the extent there is evidence of legislative intent, this evidence also clearly demonstrates that the purpose of these statutes was that they immediately apply to existing, in-force life insurance policies in order to address the immediate and current need to prevent seniors and the ill from losing lifetime investments in life insurance or be subject to unnecessary reinstatement by providing "consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit."  The legislative history for these statutes indicates a need "to add additional procedural protections to a policy owner in order to avoid lapse", as stated in one of the Assembly Committee Background Information Sheets on AB 1747 in response to why the bill was needed.

21.    Assembly Bill 1747 provides consumer safeguards for the benefit of people who have purchased life insurance coverage, especially seniors, and the ill. Under the law which existed prior to enactment of these statutes, individuals could easily lose the critical protection of life insurance if a single premium was accidentally missed (although they had been paying premiums on time for many years).  If an insured individual loses coverage and wants it reinstated, he or she may have to undergo a new physical exam and be underwritten again, risking a

significantly more expensive, possibly unaffordable premium if his or her health has changed in the years since purchasing the Policy.

22.     By conscious decision and with full knowledge of California Insurance Code Sections 10113.71 and 10113.72, AGLIC, with the approval, ratification, and direction of AIG, failed to implement the provisions of California Insurance Code Sections 10113.71 and 10113.72 and took no steps or actions to provide to policy holders and beneficiaries of existing, in-force policies the protections afforded by these provisions.

23.     At no time from January 1, 2013, until his death was Plaintiff's Decedent notified of a right or capacity to designate anyone to receive notices of pending lapse or termination.

24.     At no time from January 1, 2013, until his death was Plaintiff's Decedent notified of or provided a right to a 60-day grace period within which to pay premiums.

25.     At no time from January 1, 2013, until his death was Plaintiff's Decedent notified of or provided a 30-day notice prior to lapse or termination of the Policy.

26.     From September of 2012 through 2016, Decedent's Policy renewed and continued and otherwise all premiums were paid.  Decedent made all payments through February 2016, and all premiums were due and paid until March 20, 2016.

27.     On information and belief, Plaintiff alleges that on March 20, 2016, a prearranged debit payment to AGLIC was rejected.

28.     On March 24, 2016, AGLIC purportedly sent a letter to Plaintiff's Decedent, advising that the payment of premium had not occurred.

29.     On May 22, 2016, AGLIC contends that a Termination Notice was sent to Plaintiff's Decedent, advising that the Policy had terminated on March 20, 2016, for nonpayment of premium.  Pursuant to the provisions of California Insurance Code Section 10113.71(a), the legal grace period ran on May 20, 2013.   Any attempt to lapse or terminate the Policy for nonpayment prior to that date was void and

ineffective as a matter of law under the provisions of California Insurance Code Sections 10113.71 and 10113.72(c).

30.     At no time from March 20, 2016, through May 31, 2016, did AGLIC provide any form of written notice of pending lapse or pending termination of the Policy to Plaintiff's Decedent, to anyone with an interest in the Policy, or to Mr. Moriarty.  The only written notice purportedly sent while premiums were purportedly due and unpaid was a May 22, 2016 post-lapse notice, which advised that the Policy had terminated.

31.     Sometime in April of 2016, Ms. Moriarty independently learned that the monthly insurance premium payment may not have been made.  On April 25, 2016, Ms. Moriarty contacted BAYSIDE agents, requesting what steps to take to prevent loss of Decedent's insurance.  At this time, Ms. Moriarty was without any information regarding the Policy, other than that she believed a premium payment may not have been made.  Plaintiff is informed and believes BAYSIDE had in fact received some form of notice of pending lapse or termination of the Policy.

32.     On April 26, 2016, BAYSIDE advised Ms. Moriarty that it would contact AGLIC and then inform Ms. Moriarty of what action to take to keep the Policy in effect.  Plaintiff is informed and believes BAYSIDE failed to take any steps or conduct any investigation into the status of the Policy and that BAYSIDE's assertion that it would contact AGLIC was false.

33.     After April 26, 2016, there is no evidence BAYSIDE took any steps or performed any investigation into the status of the Policy, failed to take any steps to advise Ms. Moriarty of the status of the Policy, and failed to advise Ms. Moriarty what she could do to avoid lapse or termination of the Policy.

34.     Plaintiff relied on BAYSIDE's statements that it would inquire on her behalf and thereafter advise her of the steps and actions available to keep the Policy in effect.  BAYSIDE specifically asserted that it held special expertise or knowledge concerning insurance.  It held itself out as an expert on insurance issues, qualified

and competent to provide proper advice and counsel to Ms. Moriarty.  Prior to Mr. Moriarty's death, BAYSIDE never advised or assisted Plaintiff in maintaining or ensuring the Policy was not lapsed or terminated.

35.     On May 31, 2016, Plaintiff's husband, Heron D. Moriarty, unexpectedly died.

36.     On June 24, 2016, Plaintiff filed a claim for benefits under the Policy.  At no time did AGLIC advise that the claim was deficient or lacking in any procedural requirement.

37.     On July 26, 2016, AGLIC denied Plaintiff's claim for benefits, solely on grounds the Policy lapsed for nonpayment on March 20, 2016.

38.     On December 2, 2016, January 17, 2017, March 3, 2017, and on March 28, 2017, Plaintiff supplemented her claim, setting forth the provisions of California Insurance Code Sections 10113.71 and 10113.72 and two California court decisions interpreting the provisions of California Insurance Code Sections 10113.71 and 10113.72 and further documenting application of these provisions to AGLIC policies. Plaintiff is informed and believes that officers, directors, and managing directors of AGLIC received and reviewed these supplemental claims and their enclosures.

39.     On February 21, 2017, AGLIC refused and continues to refuse to acknowledge coverage and pay Plaintiff's claim.  During this time, AGLIC learned that courts on the state and federal levels in California had addressed this issue and had concluded that the provisions of California Insurance Code Sections 10113.71 and 10113.72 applied to policies issued before January 1, 2013.  Despite this knowledge, AGLIC refused to acknowledge its obligation to comply with these provisions.  In response to all of Plaintiff's claims for benefits, AGLIC asserted that the Policy had lapsed on March 20, 2016, and was terminated due to a purported failure to pay a single monthly premium.  AGLIC provided no other justification or basis for denial of benefits.

40.     To date, AGLIC refuses to pay the claim on the sole grounds that the Policy lapsed for nonpayment of the premium and that AGLIC was not required to comply with several forfeiture mandates that went into effect more than three years before Mr. Moriarty's death.

41.     Since January 1, 2013, AGLIC has failed to provide any policy owner of individual policies issued or delivered prior to January 1, 2013, any of the protections for lapse or termination afforded by Insurance Code Sections 10113.71 and 10113.72 and refuses to begin providing these protections. Plaintiff is informed and believes that numerous life insurance policies issued or delivered prior to January 1, 2013, but still in force and not pending lapse or termination as of January 1, 2013, have ineffectively lapsed or terminated or have subsequently been unnecessarily modified through reinstatement, resulting in payment of premiums not owed by the policy holder and not earned by AGLIC. As a result, numerous beneficiaries have been denied claims or have failed to make claims based on the incorrect assumption that the policies lapsed and terminated when, in fact, they have not. Plaintiff alleges that AGLIC further refuses to begin providing notices to policy holders of the right to designate individuals to receive such notices.

42.     This action is intended to require AGLIC to comply with its California Insurance Code obligations and to mandate that AGLIC begin providing legally required grace periods, timely and proper written notices of pending lapse or pending termination, and the right to designate pursuant to California Insurance Code Section 10113.72. This Class Action is also intended to invalidate improper lapse, termination and/or reinstatement of policies that resulted from AGLIC's failure to comply with the statutes. Finally, the Class Action is intended to mandate payments to beneficiaries who were denied payment of policy proceeds arising from AGLIC's wrongful lapse or termination of coverage. Any purported "lapse" or "termination" was legally ineffective and void if not accomplished strictly in compliance with these

provisions.   Further, any purported "reinstatement" of a policy, after an improper lapse or termination, would also be a legally ineffective "reinstatement."

43.     Plaintiff also brings her separate individual action for breach of contract, bad faith, and professional negligence claims against Plaintiff's insurance agent.

## V.   CLASS ACTION ALLEGATIONS

44.     Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Policy Holder Class" – No Sixty-Day Grace Period Provided or Advised," consisting of:

> All current and former policy owners of every individual life insurance policy issued or delivered at any time in the State of California by AMERICAN GENERAL LIFE INSURANCE COMPANY, which were as of January 1st, 2013 in force, not pending lapse or termination, who were not and have not been provided a sixty (60) day grace period arising from non-payment of premium pursuant to the provisions of California Insurance Code § 10113.71 (a).

45.     Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Policy Holder Class – No Notice of Right to Designate," consisting of:

> All current and former policy owner of every life individual insurance policy issued or delivered at any time in the State of California by AMERICAN GENERAL LIFE INSURANCE COMPANY, which were as of January 1st, 2013 in force, not pending lapse or termination, who were not and have not been provided annual notice of the right to change the written designation under the provisions of California Insurance Code § 10113.72(b).

46.     Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Policy Holder Class – Restatements Arising from AGLI's Failure to Comply with California Insurance Code § 10113.71 and/or § 10113.72," consisting of:

All current and former policy owner of every life insurance policy issued or delivered at any time in the State of California by AMERICAN GENERAL LIFE INSURANCE COMPANY, which were as of January 1st, 2013 in force, not pending lapse or termination, who obtained any form of reinstatement of coverage after January 1st, 2013, but who were not and have not been provided annual notice of the right to change the written designation under the provisions of California Insurance Code §10113.72(b); or who did not receive a sixty (60) day grace period before lapse or termination or who did not receive the required thirty day written notices of pending lapse or termination, pursuant to the provisions Insurance Code §10113.71 (b)(1)(3) and Insurance Code § 10113.72 (c).

47.   Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Denied Beneficiary Class – No 60-Day Grace Period," consisting of:

All beneficiaries of every individual life insurance policy issued or delivered by AMERICAN GENERAL LIFE INSURANCE COMPANY at any time in the State of California which were as of January 1st, 2013 in force, not pending lapse or termination, who was advised, learned or understood that the policy had lapse or terminated for non payment prior to their insured's death and thus did not make a claim for benefits, or who after January 1st, 2013 made a claim for benefits which was denied due in whole or in part to the assertion that the policy had lapsed or terminated before the expiration of a sixty (60) day grace period  pursuant to the provisions of California Insurance Code § 10113.71 (a).

48.   Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Denied Beneficiary Class – No 30-Day Notice," consisting of:

All beneficiaries of every life insurance policy issued or delivered by AMERICAN GENERAL LIFE INSURANCE COMPANY at any time in the State of California which were as of January 1st, 2013 in force, not pending lapse or termination, who after January 1st, 2013 who was advised, learned or understood that the policy had lapse or terminated for non payment prior to their insured's death and thus did not make a claim for benefits, or who made a claim for benefits which was denied due in whole by  AMERICAN GENERAL LIFE INSURANCE COMPANY and which were lapsed or terminated without strict mandatory compliance with the notice of lapse and termination provisions of California Insurance Code § 10113.71 (b)(1)(3) and Ins. Code § 10113.72(c).

49. Plaintiff, in her individual capacity and in her capacity as representative of the Estate of Heron D. Moriarty, brings this action on behalf of all members of the proposed "Denied Beneficiary Class – No Designation Process," consisting of:

> All beneficiaries of every life insurance policy issued or delivered by AMERICAN GENERAL LIFE INSURANCE COMPANY at any time in the State of California which were as of January 1st, 2013 in force, not pending lapse or termination, who after January 1st, 2013 who was advised, learned or understood that the policy had lapse or terminated for non payment prior to their insured's death and thus did not make a claim for benefits, or who made a claim for benefits which was denied due in whole by  AMERICAN GENERAL LIFE INSURANCE COMPANY and which were lapsed or terminated without strict mandatory compliance with the provisions regarding a Right to Designate under Insurance Code § 10113.72(b).

50. The Policy Holder Class - No Sixty-Day Grace Period Provided or Advised; the Policy Holder Class – No Notice of Right to Designate; the Policy Holder Class – Restatements Arising from AGLI's Failure to Comply with Insurance Code § 10113.71 and/or § 10113.72; the Denied Beneficiary Class – No 60-Day Grace Period; Denied Beneficiary Class – No 30-Day Notice; and the Denied Beneficiary Class – No Designation Process, will be collectively referred to as the "Classes."

51. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the proposed Classes are Defendants, their  officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them, the Judge assigned to this action, and any member of the Judge's immediate family.

52.     Defendants' conduct has imposed a common injury on the members of the Classes. Defendants have acted, and have refused to act, on grounds generally applicable to the Classes, which makes final injunctive relief with respect to each claim as a whole appropriate.

53.     Plaintiff will and does faithfully represent, and is a member of, each of the Classes.

54.     ***Numerosity.***  The members of the Classes, together and separately, are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain hundreds and perhaps thousands of members.  The precise number of members in each Class is unknown to Plaintiff.   The true number of Class members is known by the Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

55.     ***Existence and Predominance of Common Questions and Answers of Law and Fact***.  There is a well-defined community of interest in the questions and answers of law and fact involved affecting the members of the Classes.  The questions and answers of law and fact common to the Classes predominate over questions and answers affecting only individual class members, including, but not limited to, the following:

(a)     Since January 1, 2013, has AGLIC failed to provide any policy owner of individual policies issued or delivered prior to January 1, 2013, any of the protections from lapse or termination afforded by any provisions of California Insurance Code Section 10113.71 or Section 10113.72?

(b)     Does AGLIC continue to refuse to begin providing the protections for lapse or termination afforded by any provisions of California Insurance Code Section 10113.71 or Section 10113.72?

(c)     Have numerous life insurance policies issued or delivered by AGLIC prior to January 1, 2013, but still in force and not pending lapse or termination as

of January 1, 2013, ineffectively lapsed or terminated or subsequently been unnecessarily modified through reinstatement by AGLIC?

(d) Is AGLIC's refusal to begin providing notices to policy holders of the right to designate individuals to receive such notices unlawful under the Insurance Code?

(e) Is AGLIC required to provide grace periods, timely and proper written notices of pending lapse or pending termination, and provide policy holders of their right to designate set forth in California Insurance Code Section 10113.72?

(f) Should the Court invalidate improper lapses, terminations and/or reinstatements of policies that resulted from AGLIC's failure to comply with the California Insurance Code?

(g) Should AGLIC be required to make payments to beneficiaries who were denied payment of policy proceeds arising from AGLIC's wrongful lapse or termination of coverage?

56.    ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the respective Classes because Plaintiff and each member of the Classes were victims of the same statutory violations.  Further, Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendants' unlawful violations of California Insurance Code Sections 10113.71 and 10113.72.

57.    ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair business practices, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no interest adverse or antagonistic to that of the Classes.

58.    ***Superiority*** (to the extent required).  A class action is a superior method for the fair and efficient adjudication of this controversy.  The damages or other

financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendants. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

59. In the alternative, the Classes may also be certified because:

(a) The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b) The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

(c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

60. Unless the Classes are certified, Defendants will retain monies received as a result of their conduct taken against the members of the Classes and the Plaintiff.

FIRST AMENDED CLASS ACTION COMPLAINT

1  Unless a Class-wide injunction is issued, Defendants will continue to commit the

2  violations alleged and members of the Classes will continue to be harmed.

3       61.    Plaintiff knows of no difficulty likely to be encountered in the

4  management of this litigation that would preclude its maintenance as a Class Action.

5  Because the action is brought as a California Class Action, the Court need only apply

6  a single set of California laws as they relate to Defendants' violation of California

7  Insurance Code Sections 10113.71 and 10113.72.

8       62.    Plaintiff has incurred, and will incur, expenses for attorney's fees and

9  costs in bringing this action.  These attorney's fees and costs are necessary for the

10  prosecution of this action and will result in a benefit to each of the members of the

11  Classes.

12       63.    Plaintiff is informed and believes, and based thereon alleges, that certain

13  members of the Classes are "senior citizens" or "disabled persons", as defined in

14  California Civil Code Section 1761(f) and (g), and therefore are entitled to treble

15  damages under California Civil Code Section 3345.

16  **VI.    FIRST CAUSE OF ACTION**

17  **BY PLAINTIFF, INDIVIDUALLY AND ON BEHALF OF**
**THE ESTATE OF HERON D. MORIARTY AND THE CLASSES**

18  **AGAINST AGLIC AND DOES 1 THRU 5**
**(Declaratory Relief)**

19

20       64.    Plaintiff incorporates by reference each and every allegation contained

21  above.

22       65.    Plaintiff MORIARTY, in her individual capacity, as well as in her

23  representative capacity for the Estate of Heron D. Moriarty, brings this action on

24  behalf of all members of the Classes.

25      **A.    Basis for Relief**

26       66.    On January 1, 2013, the California Insurance Code was amended by

27  Insurance Code Sections 10113.71 and 10113.72.

28

67.   Section 10113.71, as enacted, read in full as follows:

§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement

(a)  Every life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid.  However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Section 10113.72 reads in full as follows:

§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

These provisions went into effect on January 1, 2013. No language in the statutes regarding policy holders indicates the statutes only apply to newly issued or newly delivered policies.

68.     The provisions stated that the mandated 60-day grace period applied to every life insurance policy issued or delivered in this state and the statute contains no language that limits the application of this provision to policies solely issued or delivered in the state after January 1, 2013. Subsequent to January 1, 2013, the statute was amended by replacement of the word "every" with "each".

69.     The provisions are explicit that, "[a] notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium." There is no language in the provisions that limits application of these provisions to life insurance policies issued after January 1, 2013.

70.     Regarding the notice of a right to designate, the statute is clear that every year the policy owner must be provided notice of a right to change a designation. There is no language holding that this obligation only applies to newly issued or delivered policies.

71.     To the extent any legislative intent is evidenced from other provisions in the California Insurance Code, Plaintiff alleges that California legislative intent to limit mandated policy provisions to newly issued or delivered policies is done

explicitly with language demonstrating an express intent to do so, similar to the language of California Insurance Code Section 10113.5, which mandates that life insurance policies contain two-year contestability provisions.  *See* Cal. Ins. Code § 10113.5(a).  Section 10113.5(a), enacted on January 1, 1974, included subsection (d), which reads:  "This section shall not apply to individual life insurance policies delivered or issued on or before December 31, 1973."  This is how the Legislature limits a mandate to only newly issued or delivered policies.  California Insurance Code Sections 10113.71 and 10113.72 contain no qualifiers as to time.  The clarity that the statute applies to the AGLIC policy is evident because Section 10113.71(c) actually defines the term "life insurance policy."  "For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided."  Cal. Ins. Code § 10113.71(c).  No time limitation is specified in Subsection (c).  In construing a statute, the court's function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or to omit what has been inserted.  Cal. Civ. Proc. Code § 1858.

72.    At all times herein, the law of the state of California provides that forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and the law of the state of California disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture."  *Ins. Co. v. Norton* (1978) 96 U.S. 234, 242.  "Forfeiture of a policy will be avoided on any reasonable showing."  *Klotz v. Old Line Life Ins. Co. of Amer.* (N.D. Cal. 1996) 955 F. Supp. 1183, 1188.

## B.    Declaration of Rights and Obligations

73.    An actual controversy has arisen and now exists, between Plaintiff and the Classes of insureds and the beneficiaries she represents, and Defendants concerning their respective rights and duties.  Plaintiff contends the provisions of

California Insurance Code Sections 10113.71 and 10113.72 apply to all life insurance policies issued or delivered in the state of California and in force as of January 1, 2013.  Plaintiff also contends these statutes govern the manner and procedure in which life insurance policies could legally be lapsed or terminated as of January 1, 2013, and thereafter.   Defendants contend the provisions of California Insurance Code Sections 10113.71 and10113.72 do not apply to policies issued or delivered prior to January 1, 2013.

74.   Plaintiff, on her behalf and on behalf of the Classes of policy holders and beneficiaries she represents, desires a judicial determination of her rights and duties and the Class members' rights and duties, and a declaration to the effect that California Insurance Code Sections 10113.71 and 10113.72 applied as of January 1, 2013, to policies issued or delivered prior to January 1, 2013.

75.   A judicial declaration would advise insureds and their beneficiaries of their rights, and would advise AGLIC of its duties to Plaintiff and to Class members concerning policy holders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of and the ability to properly utilize the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## VII.   SECOND CAUSE OF ACTION

**BY PLAINTIFF, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF HERON D. MORIARTY AND THE CLASSES AGAINST AGLIC AND DOES 1 THRU 5**
**(Breach of Contract)**

76.   Plaintiff incorporates by reference each and every allegation contained above.

77.     Prior to January 1, 2013, AGLIC issued or delivered policies in the state of California, which were in force on January 1, 2013, to Class policy holders and which named beneficiaries identified in the Class.

78.     AGLIC breached and continues to breach the express terms of such policies, as well as the statutory mandates regarding such policies, by, amongst other things:

    (a)    Failing to include in such policies and failing to utilize a sixty (60) day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

    (b)    Failing to include in such policies and failing to utilize a thirty-day written notice of pending lapse or termination, consistent with the provisions of California Insurance Code Sections 10113.71 and 10113.72;

    (c)    Failing to provide proper notice to policy holders on an annual basis of the policy holders' right to designate individuals to receive notices of pending lapse or termination;

    (d)    Failing to provide prompt and timely notice to policy holders of the application of California Insurance Code Sections 10113.71 and 10113.72 and the mandatory inclusion in policies of these terms and provisions;

    (e)    Lapsing or terminating policies without complying with the terms of the policies which incorporate the provisions of California Insurance Code Sections 10113.71 and 10113.72;

    (f)    Refusing payment of benefits to beneficiaries, despite knowledge and information that AGLIC had not strictly complied with the mandatory provisions of California Insurance Code Sections 10113.71 and 10113.72, including provision of sixty (60) day

grace periods, thirty-day notices of pending lapse, and a right to notices to designate;

(g)     Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement due to AGLIC's violation of the forfeiture provisions of California Insurance Code Sections 10113.71 and 10113.72; and

(h)     Otherwise failing to fully comply with the provisions of California Insurance Code Sections 10113.71 and 10113.72 on or after January 1, 2013.

79.     All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policies.  To the extent any contractual obligations, duties, or conditions are imposed on policy holders or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to the material breaches of AGLIC.

80.     To the extent any policy holders and/or beneficiaries have failed to comply with any conditions to payment or continuation of insurance, AGLIC is estopped to assert such conditions due to its conduct and material breaches heretofore described.  Yet, AGLIC has done so with respect to Plaintiff and members of the Classes.

81.     As a legal result of the conduct described herein, the Classes have suffered direct and foreseeable economic damages and loss of policy benefits in a nature and amount to be proven at the time of trial.

[*rest of page intentionally left blank*]

FIRST AMENDED CLASS ACTION COMPLAINT

# VIII.  THIRD CAUSE OF ACTION

**BY PLAINTIFF, INDIVIDUALLY AGAINST DEFENDANTS AMERICAN GENERAL LIFE INSURANCE COMPANY AND DOES 1 THRU 5**
**(Bad Faith)**

82.    Plaintiff incorporates by reference each and every allegation contained above.

83.    From September 20, 2013, through September 20, 2016, the Policy was renewed annually.  At all times herein, Plaintiff MORIARTY was the wife of the insured, the primary express beneficiary of the Policy, and the individual from whom benefits of the Policy have been wrongfully withheld.  Upon Decedent's death, Plaintiff MORIARTY became contractually entitled to benefits under the Policy and was to be treated as an insured under the express and implied terms of the Policy and the laws of the state of California.  She was also, at all times during any breach of the Policy, the primary, express beneficiary of the Policy.

84.    At all times mentioned herein, Defendants AGLIC and DOES 1 thru 5 owed Plaintiff MORIARTY and Decedent an obligation to perform the express and implied obligations imposed by the Policy, to act in good faith, to deal fairly with Decedent and Plaintiff MORIARTY, and to not interfere with the insured's and Plaintiff MORIARTY's rights to receive the benefits of the Policy.  The obligations and duties described herein have existed from the inception of the Policy and continue through the pendency of this action.

85.    By its conduct described heretofore, AGLIC has materially breached the terms and conditions of the Policy and the statutory mandates of the laws of the state of California by improperly lapsing and terminating the Policy, thereafter refusing to properly advise Plaintiff of her rights and of AGLIC's duties and responsibilities, failing to promptly pay the subject claim, and delaying payment of the claim.

86.     Specifically, AGLIC breached the Policy in 2013, 2014, 2015, and 2016 by failing to advise Plaintiff's Decedent of his right to designate under the provisions of California Insurance Code Sections 10113.71and 10113.72.

87.     Plaintiff alleges that when AGLIC repudiated and unilaterally terminated the Policy, AGLIC was aware the Policy was a valid and enforceable contract and required AGLIC's acknowledgment that the Policy was valid and was not subject to termination of coverage, as asserted by AGLIC.

88.     Defendants, at all times relevant herein and to date, breached the covenant of good faith and fair dealing owed to Plaintiff MORIARTY and Decedent by failing to comply with the terms of the Policy, by asserting Policy provisions which did not apply to preclude coverage, by failing to completely investigate its attempts to cancel the Policy, by failing to abide by the Policy and the law regarding written notice of pending lapse and termination and applicable grace periods, by placing AGLIC's interests above those of its policy holders, by unreasonably asserting Policy provisions without considering the actual facts and the law, by misrepresenting Policy terms and conditions, by misrepresenting and applying the law, and by failing to comply with proper industry standards and customs regarding cancellation of life insurance policies.

89.     Defendant AGLIC knew, prior to January 1, 2013, and has known at least since the supplementation of Plaintiff's claim, that at least one California court of law specifically ruled that the provisions of California Insurance Code Section 10113.71(a) mandate that sixty-day grace periods apply to policies issued or delivered prior to January 1, 2013.  AGLIC has failed to justify its continual assertion that this provision did not apply to Plaintiff's Policy.  Defendant knows, and has been advised, that the courts of the state of California are the sole authority regarding statutory interpretation.  Despite such knowledge, AGLIC refuses, in bad faith and with no good cause, to apply this law to Plaintiff's Policy.

90.     Defendant AGLIC knew, prior to January 1, 2013, and has known at least since the supplementation of Plaintiff's claim, that at least one California court of law specifically ruled that the provisions of California Insurance Code Section 10113.71: (1) mandated that sixty-day grace periods applied to policies issued or delivered prior to January 1, 2013; (2) that California Insurance Code Sections 10113.71(b)(1) and (b)(3) and 10113.72(c) mandated that no lapse or termination is effective unless preceded by timely and proper notices of pending lapse or termination; and (3) that California Insurance Code Section 10113.71(b) mandates that all policy holders annually receive notice of a right to designate. AGLIC has failed to justify its continual assertion that this provision did not apply to Plaintiff's Policy. Defendant knows and has been advised that the courts of the state of California are the sole authority for statutory interpretation and that at all times during all pending claims no California court of law has ruled that the provisions of California Insurance Code Sections 10113.71 and 10113.72 do not apply to policies issued or delivered prior to January 1, 2013. Despite such knowledge, AGLIC refuses in bad faith and with no good cause to apply this law to Plaintiff's Policy and continues to deny payment of Plaintiff's benefits.

91.     Despite knowledge of the applicability of these provisions to policies issued before January 1, 2013, and the impropriety of its actions, AGLIC made the conscious decision, ratified by its managerial agents, officers, and directors, to unilaterally terminate the Policy for life insurance benefits on these improper grounds, denying Decedent and Plaintiff MORIARTY, Decedent's sole beneficiary, the benefits Decedent bargained for and relied on. AGLIC now continues this bad faith denial of benefits without proper cause and in bad faith.

92.     Further, AGLIC, by and through its officers and directors and other managerial agents, consciously ignored the application of the laws of the state of California regarding such notices and instituted a business practice and course of conduct designed to intentionally violate such provisions. Knowing these provisions

were enacted in the state of California to avoid unintended forfeiture of policies, AGLIC, by and through its officers, consciously ignored, and continue to consciously ignore, the obligations imposed on AGLIC in order to avoid payment of claims and to continue to maintain the practice of encouraging unintended lapses of policies, as heretofore described.

93.    These acts of AGLIC all constitute malice, oppression, and fraud. AGLIC and its officers, directors, and managerial agents, have also made repeated intentional misrepresentations and engaged in active concealment, as heretofore discussed, thus constituting deceit and fraud.  In performing these acts, AGLIC and its officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment in order to avoid incurring liabilities and costs associated with compliance with the law.  Such conduct was, in fact, malicious, oppressive, and fraudulent, justifying an award of punitive damages against AGLIC.

94.    Plaintiff MORIARTY has suffered and will continue to suffer injuries and damages legally caused by Defendants' past and ongoing failure to uphold the terms of the Policy.  Plaintiff has also suffered and will continue to suffer consequential economic injuries in a nature and amount to be proven at the time of the trial.  These injuries include emotional distress, concern, anger, and worry concerning the loss of benefits.  Plaintiff has also been required to retain legal counsel and has and will continue to incur attorney's fees and expenses in the pursuit of the Policy benefits.  Defendants' conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiff seeks compensation in an amount within the jurisdiction of this Court to be proven at the time of trial.  Plaintiff thus seeks full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the Policy.

# IX.    FOURTH CAUSE OF ACTION

### BY PLAINTIFF, INDIVIDUALLY AGAINST BAYSIDE AND DOES 15 THRU 20
#### (Negligence)

95.    Plaintiff incorporates by reference each and every allegation contained above.

96.    Plaintiff MORIARTY, individually on her on behalf and on behalf of the Estate, alleges that Defendant BAYSIDE, and DOES 15 thru 20, were guilty of either professional negligence or negligent misrepresentation.  As a result, Defendant BAYSIDE was a legal cause of Plaintiff's damages arising from the denial of benefits owed to Plaintiff.  Despite requests, BAYSIDE has refused to provide any records or documents concerning the services it performed for Plaintiff's family.   Plaintiff reserves the right to amend and modify the following allegations in the future:

97.    Between 2012 and until sometime in 2016, BAYSIDE and its agents, representatives, and employees, provided advice and counsel to the Moriarty family regarding various forms of insurance, including life insurance.   BAYSIDE was responsible for the selection and purchase of the Policy, which is the subject of this lawsuit, as well as other policies and other forms of insurance.

98.    Between at least 2012 and until his death, Heron D. Moriarty relied on the express expertise and guidance of BAYSIDE and its agents and representatives regarding various forms of insurance.   After Mr. Moriarty's death, Plaintiff MORIARTY relied on BAYSIDE's advice and recommendations.  During this time, BAYSIDE held itself out as an expert on insurance products through its advertisements, conduct, and its general communications with the Moriarty family and others similarly situated.

99.    On April 25, 2016, Plaintiff MORIARTY contacted BAYSIDE agents to request instructions of what steps to take to prevent loss of Plaintiff's insurance.  At this time, Plaintiff MORIARTY was without any information regarding the Policy, other than that she believed a premium payment may not have been made.

Plaintiff is informed and believes BAYSIDE in fact had received some form of notice of pending lapse or termination of the Policy.

100.   On April 26, 2016, BAYSIDE advised Plaintiff MORIARTY that it would contact AGLIC and then inform Plaintiff of what action to take to keep the Policy in effect.  Plaintiff is informed and believes BAYSIDE failed to take any steps or conduct any investigation into the status of the Policy and that BAYSIDE's assertion that it would contact AGLIC was false.

101.   After April 26, 2016, there is no evidence BAYSIDE took any steps or performed any investigation into the status of the Policy and then failed to take any steps to advise Plaintiff of the status of the Policy or what Plaintiff could do  to avoid a lapse or termination of the Policy.

102.   Plaintiff MORIARTY relied on BAYSIDE's statements that it would inquire on her behalf and thereafter advise her of the steps and actions available to keep the Policy in effect.  BAYSIDE specifically asserted that it held special expertise or knowledge concerning insurance and held itself as an expert on insurance issues and that it was qualified and competent to provide proper advice and counsel to Plaintiff.

103.   Based on Plaintiff's family's longtime reliance on the expertise of BAYSIDE, the specific statements BAYSIDE made to Plaintiff, BAYSIDE's special and unique access to AGLIC and the status of the Policy, BAYSIDE assumed a general and special duty of care to investigate the status of the Policy and its potential forfeiture and to fully and promptly communicate to Plaintiff MORIARTY what actions and steps could and should be taken to avoid termination of the Policy.

104.   BAYSIDE negligently failed to comply with this duty and failed to investigate the status of the Policy or advise Plaintiff MORIARTY of what steps or actions could be taken to keep the Policy from terminating or lapsing.

105.   As a legal result of this misconduct, Plaintiff MORIARTY has suffered damages, including, but not limited to, the loss of Policy benefits, attorney's fees

incurred attempting to obtain such benefits, and other economic losses arising from the lapse, termination and/or denial of benefits under the subject Policy.

## X.   FOURTH CAUSE OF ACTION
### BY PLAINTIFF, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF HERON D. MORIARTY AND THE CLASSES AGAINST ALL DEFENDANTS
### (Violation of California Business & Professions Code, §§ 17200, *et seq.*)
### Individual Action and Class Action Under Fed. R. Civ. P. Rule 23

106.   Plaintiff incorporates by reference each and every allegation contained above.

107.   Plaintiff MORIARTY, in her individual capacity, as well as in her representative capacity for the Estate of Heron D. Moriarty, brings this action on behalf of all members of the Classes.

108.   California Business and Professions Code Sections 17200, *et seq.* ("UCL") prohibits any unlawful, unfair, deceptive, or fraudulent business practice.

109.   Defendants committed and continue to commit business practices in violation of California's UCL, including, but not limited to failing to comply with California Insurance Code Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and, further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage.

110.   The unlawful business practices described above have proximately caused monetary damages to Plaintiff and to the general public.

111.   Pursuant to California's UCL, Plaintiff, in her individual capacity, as well as in her representative capacity for the Estate of Heron D. Moriarty, and the members of the Classes are entitled to restitution of money or property acquired by Defendants by means of such business practices, in amounts not yet known, but to be ascertained at trial.

112.   Pursuant to California's UCL, Plaintiff, in her individual capacity, as well as in her representative capacity for the Estate of Heron D. Moriarty, the members of the Classes, and the general public are entitled to injunctive relief against Defendants' ongoing continuation of such business practices.

113.   If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiff, in her individual capacity, as well as in her representative capacity for the Estate of Heron D. Moriarty, the members of the Classes, and the general public will be irreparably injured, to the exact extent, nature, and amount of such injury being impossible to ascertain.

114.   Plaintiff in her individual capacity, as well as in her representative capacity for the Estate of Heron D. Moriarty, and the members of the Classes have no plain, speedy, and adequate remedy at law.

115.   Defendants, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the Classes, and the general public.

116.   Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

117.   Private enforcement of these rights is necessary as no public agency has pursued enforcement.  There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action.  Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XI.   <u>DEMAND FOR JURY TRIAL</u>

118.   Plaintiff hereby requests a trial by jury.

FIRST AMENDED CLASS ACTION COMPLAINT

## XII.   PRAYER FOR RELIEF

Plaintiff prays for relief against Defendants, and each of them, as follows:

1.   For certification of this action as a Class Action;

2.   A declaration of Plaintiff's and the Classes' rights pursuant to the insurance policies issued by AGLIC;

3.   For an injunction to issue against Defendant AGLIC;

4.   For the Classes, economic damages according to proof;

5.   For Plaintiff individually, economic and noneconomic damages, punitive and exemplary damages as to Defendant AGLIC;

6.   For attorneys' fees and all litigation costs and expenses; and

7.   For such other and further relief as this Court deems just and proper.

Respectfully submitted:

Dated:  October 19, 2017                         **NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Alex Tomasevic*
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email:  cnicholas@nicholaslaw.org
Email:  atomasevic@nicholaslaw.org
Email:  smarkley@nicholaslaw.org

Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
**WINTERS & ASSOCIATES**
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: (619) 234-9000
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff