UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, et al., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Case No.: 17-CV-1709-BTM-WVG <br><br> **ORDER GRANTING DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION TO STRIKE** |

## **I. <u>INTRODUCTION</u>**

Plaintiff Michelle Moriarty was deposed on June 7, 2018 by defendants Bayside Insurance Co ("Bayside") and American General Life Insurance Co. ("AmGen"). Thereafter, Plaintiff submitted an errata sheet to which Defendant American General objected. Having reviewed the papers submitted by the parties and all of the exhibits, the Court **GRANTS** AmGen's motion and **STRIKES** Plaintiff's errata sheet.

///
///
///
///
///

## II. DISPUTED ERRATA SHEET

Plaintiff submitted the following twelve errata to her deposition, all of which Defendant objects[1]:

**1**:[2] Question: What do you mean maybe it was a week before?

Answer: It was somewhere in the time period of that time in my life where he was sick and died. It's, like, a big black hole to me.

Change: "It was somewhere in the time period of that time in my life where he was sick and died. It's like a big black hole to me" to "It was after he died"

(Mot., Ex. 1 at 7.)

**2**. Question: So at some point either before or after your husband's death, you found the American General policy, along with, potentially, other policies in the closet in your home; is that right?

Answer: Yes

Change: "Yes" to "Yes. I found the American General Policy after Heron died."

(*Id.* at 8.)

**3**. Question: And you don't recall if that was after his death or sometime right before his death?

Answer: Correct

Change: "Correct" to "It was after he died."

(*Id.*)

**4**. Question: Were you looking for documents like life insurance

---

[1] Plaintiff's counsel lodged objections to the questions below during the deposition. However, none of the objections appear to have a direct relation to the errata and neither parties makes such an argument.

[2] The Court will assign each change a number, for clarity purposes only.

policies and those sorts of things because of all that was going on and the events in your life with your husband's sickness and having a restraining order on him and all that was happening with you?

Answer: I don't remember why I was in there, honestly.

Change: "I don't remember why I was in there, honestly" to "I found the policy after Heron died when I went onto the property."

(*Id.*)

**5**. Question: So at some point, and we're not sure when, either after your husband's death or in the time period before he died, you found this American General policy in your closet with other document, correct?

Answer: Correct.

Change: "Correct" to "I found the policy after he died."

(*Id.*)

**6**. Question: My question is, again, this is a document that you gave to your lawyers.

Answer: Okay

Change: "Okay" to "No."

(*Id.* at 12.)

**7**. Question: […] You have no way of knowing when you did that, when you found it or when you gave it to them, correct?

Answer: I gave it to him months after my husband died, if I gave it to him, with the other letter. Because that's when I gave him the other letters.

Change: "I gave it to him months after my husband died, if I gave it to him, with the other letter. Because that's when I gave him the other letter" to "I did not give this document to my lawyer."

3

(*Id.*)

**8**. Question: But you don't – you don't have a specific recollection of that? That's my question. Of when you gave him this document Exhibit 8. You can't say? Right?

Answer: Months after my husband died. I do not remember the month.

Change: "Months after my husband died. I do not remember the month." to "I did not give this document to my lawyer."

(*Id.*)

**9**. Question: Again, this is a document that has your stamp on the bottom that it was produced from your lawyers to us. Do you know when you would have given this document to your lawyers?

Answer: No.

Change: "No" to "I did not give this document to my lawyer."

(*Id.*)

**10**. Question: So whenever you gave it to your lawyers, you didn't look at it at the time, when you did that?

Answer: No.

Change: "No" to "I did not give this document to my lawyer."

(*Id.*)

**11**. Question: You didn't - - before you gave this document over to your lawyers at some point - - and the first question is. You don't recall when that was, right - -

Answer: No.

4

Change: "No" to "I did not give this document to my lawyer."

(*Id*. at 14.)

**12**. Question: When you gave it - - or before you gave the document, you don't ever recall looking at it, right?

Answer: Correct.

Change: "Correct" to "I did not give this document to my lawyer. I do not recall ever seeing it."

(*Id*.)

### III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure ("Rule") 30(e) provides a means by which a deponent may review and make changes to her testimony. Rule 30(e) allows a deponent to "review the transcript or recording" and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e). However, "Rule 30(e) is to be used for corrective, and not contradictory, changes." *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005.) "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses." *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002). "A deposition is not a take home examination." *Id*. Given this, Rule 30(e) is limited to "corrections of stenographic errors, whether those corrections are of form or substance, and that Rule 30(e) is not properly used to alter deposition testimony provided under oath and correctly transcribed." *ViaSat, Inc. v. Acacia Communications*, No. 16-CV-463-BEN-WVG, 2018 WL 899250, at *4, 2018 U.S. Dist. LEXIS 25357, at *10 (S.D. Cal. Feb. 15, 2018).

Rule 30(e) requires that any changes to deposition testimony be accompanied by a statement of reasons which explains the changes. Fed. R. Civ. P. 30(e). Strict compliance with Rule 30(e)'s technical requirements, including the requirement of a statement of

reason, is mandated. *See Hambleton Bros.*, 397 F.3d 1224-26; *see also Tourgeman v. Collins Financial Services, Inc.*, No. 8-CV-1392-JLS-NLS, 2010 WL 4817990, at *2, 2010 U.S. Dist. LEXIS 123683, at *7-8 (S.D. Cal. Nov. 22, 2010).

## IV. DISCUSSION

AmGen argues Plaintiff is impermissibly attempting to alter her deposition testimony by designating multiple contradictory changes to her sworn testimony, and not simply correcting stenographic mistakes. (Mot. at 3:1-4.) AmGen argues that Plaintiff's reasoning for correcting much of her testimony is unavailing. For many of the changes, Plaintiff now asserts the questions had incorrect assumptions. However, AmGen argues that Plaintiff demonstrated her ability to clarify such assumptions.

Plaintiff contends that her requested changes clarify "ambiguous testimony," "are not contradictory, were provided in a timely manner, and are consistent with FRCP 30(e) and the parties' understanding in all depositions allowing substantive changes."[3] (Mot. at 5:21-26.) Plaintiff's arguments in opposition to AmGen's motion to strike are unavailing.

Having thoroughly examined Plaintiff's errata, it appears that each one violates Rule 30(e)'s bar on contradictory changes. While each change does not explicitly modify an answer from a 'yes' to a 'no,' each change modifies an answer from one in which Plaintiff provides an answer that expresses uncertainty about specific events to answers that express certainty.

### A. Stipulation

First, Plaintiff argues that opposing counsel agreed to allow Plaintiff to make any change she felt was necessary. (Mot. at 6:3-5.) Importantly, Plaintiff claims this agreement included contradictory changes. (*Id.* at 6:8.) The following discussion and admonition occurred at the start of the deposition:

> Counsel for Bayside: You understand - - just the last thing I'll say. You understand that once - - when the deposition is

---

[3] The timeliness of Plaintiff's errata is not at issue. Accordingly, the Court will not address this argument.

6

> concluded, you will get a booklet. I assume you got a booklet of your deposition testimony in the county case. Is that right?
>
> Plaintiff: I did not.
>
> Counsel for Bayside: Okay. Well, in this case, you will. You'll get a booklet, it will be a script, a word by word of everything that was said today. You will have a chance to review your testimony, to make any changes that you feel are necessary to your testimony.
>
> Plaintiff: Okay.

(Mot., Ex. 1 at 3-4.) Plaintiff seizes on the phrase stating she will be able to "make any changes that [she] feel[s] are necessary" to demonstrate a stipulation was created between the parties that unlimited changes may be made to the deposition transcript.[4] (Mot. at 6:3-6.) When viewed in a vacuum, it *may* appear that counsel for Bayside had consented to carte blanche modifications to the deposition transcript.[5] When viewed as a whole, a different picture emerges. The following dialogue next occurred:

> Counsel for Bayside: You can change the spelling of a word, alter the grammar, whatever you want to do to the transcript. The only thing I want to caution you is, that if you make a substantive change - - for example, if I asked you was the light green or red and you said green in your deposition and then said red when you read your transcript, that would be the kind of substantive change

---

[4] Plaintiff evidently believed she could also make unlimited changes without explanation because "[t]here was no understanding that [Plaintiff] was required to provide explanations for her changes[.]" (Mot., Ex. A at 2.) Failing to provide an explanation for the changes is in direct violation of Rule 30(e) and is alone grounds to strike the errata. *See Tourgeman*, 2010 WL 4817990, at *2 (*citing Blackthorne v. Posner*, 883 F.Supp 1443, 1454 n. 16 (D. Or. 1995)). However, Plaintiff did provide reasons for her requested changes after being challenged by AmGen. (*See* Mot. at Ex. A.) The presence or absence of reasoning is not central to the present dispute, however, and the parties make no such argument.

[5] It is critical to note that counsel for Bayside provided the admonishment that Plaintiff now claims AmGen is bound by.

7

> that I or another lawyer could comment upon should the case go to trial to suggest that your testimony today wasn't truthful. It's a long way of saying that it's important for you to give us your best testimony today and that you understand that. Are you with me?
>
> Plaintiff: I do. Yeah, I understand.

(Mot., Ex. 1 at 3-4.) The examples provided of the types of changes allowed – the spelling of a word or to alter grammar – indicate the changes contemplated were limited to the types of changes permitted by the Rule and not wholesale changes to the entire deposition transcript. However, the first example describing non-substantive changes was quickly followed by an example that suggests Bayside's counsel condoned substantive errata changes; i.e. red light to green light.

When examining the entire admonition, Plaintiff's argument that the admonition allowed substantive changes to the deposition transcript are not persuasive. A stipulation is "akin to a contract." *U.S. v. Morales*, 684 F.3d 749, 754-55 (8th Cir. 2012) (citing *Rathborne Land Co., L.L.C. v. Ascent Energy, Inc.*, 610 F.3d 249, 262 (5th Cir. 2010)). Accordingly, to form a stipulation there must be a "meeting of the minds" between the parties. *Rivera v. Farmers New World Life Ins. Co.*, No. 14-CV-10-L-DHB, 2015 WL 11254691 at *2, 2015 U.S. Dist. LEXIS 185213, at *5-6 (S.D. Cal. Sept. 11, 2015) (citing *Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App 4th 348, 357-58 (1998)). Here, there is, at best, ambiguity as to whether a meeting of the minds occurred such that a stipulation existed where Plaintiff could make contradictory substantive changes to her deposition.

While it is plausible the intent of Bayside's counsel was to inform Plaintiff she could make wholesale changes to her deposition, it is equally plausible that counsel for Bayside was informing Plaintiff that if she were to change her testimony at trial, her credibility would be questioned when reading back her original transcript. While the admonition may have been inartfully phrased, it was far from the "express understanding" Plaintiff claims existed. (Mot. at 6:11-15.) Such an agreement would set aside a large body of case law

8

within this District and Ninth Circuit binding precedent. *See, e.g.*, *Hambleton Bros.*, 397 F.3d 1224-26; *Blair v. CBE Grp., Inc.*, Case No. 13–cv–00134–MMA-WVG, 2015 WL 3397629, at *10, 2015 U.S. Dist. LEXIS 67920, at *25-28 (S.D. Cal. May 26, 2015); *Azco Biotech Inc. v. Qiagen, N.V.*, Case No. 12–cv–2599–BEN-DHB, 2015 WL 350567, *4, 2015 U.S. Dist. LEXIS 8113, at *12-13 (S.D. Cal. Jan. 23, 2015); *Tourgeman*, 2010 WL 4817990, at *2. If Plaintiff's counsel was under the impression that opposing counsel was suggesting such a radical departure, Plaintiff's counsel should have sought clarification before further proceeding with the deposition.

Plaintiff argues that, pursuant to Rule 29, the parties may modify discovery procedures without formality, citing *Wells Fargo Bank, N.A. v. Lasalle Bank Nat'l Ass'n*, 2011 WL 13102001, 2011 U.S. Dist. LEXIS 160059 (W.D. Okla. Jan. 4, 2011).[6] (Mot. at 6:1-3.) In *Wells Fargo Bank*, the question was whether there was an agreement that each deponent requested the opportunity to submit an errata sheet, pursuant to Rule 30(e), ahead of their respective depositions or whether each needed to make the request formally on the record.[7] *Wells Fargo Bank*, 2011 WL 13102001, at *1. The court in *Wells Fargo Bank* found the email evidence submitted demonstrated that "both parties' counsel were aware of and agreed to [the defendant] submitting an errata sheet." *Id.* at *2. Critically, the court found the parties could stipulate to the means by which they could comply with Rule 30(e), not that the parties could stipulate to work outside the bounds of the Rule, as Plaintiff suggests.

However, even if the parties had unequivocally agreed to allow the changes Plaintiff suggests, "the parties are bound by existing legal doctrine anchored in statutes, rules, and case law" notwithstanding Rule 29. *H.I.S.C., Inc. v. Franmar Int'l Imps., Ltd.*, No. 16-CV-480-BEN-WVG, 2018 WL 2095738, at * 3, 2018 U.S. Dist. LEXIS 76879, at *9 (S.D. Cal.

---

[6] Rule 29 provides, in relevant part, that the parties may stipulate to the modification of "procedures governing or limiting discovery[.]" Fed. R. Civ. P. 29(b).
[7] Rule 30(e) an allows errata sheet submission "[o]n request by the deponent or a party before the deposition is completed[.]" Fed. R. Civ. P. 30(e)(1).

May 7, 2018). Accordingly, the Court finds the parties did not stipulate to allow Plaintiff to make any and all changes she desired to the transcript. To find otherwise would eviscerate the purpose of the deposition and render it a take home examination.

**B. Contradictory And Ambiguous Changes**

Plaintiff claims that her changes are not contradictory because she provided other testimony consistent with her corrected responses. (Mot. at 7:8-11.) The bar on contradictory errata prevents a deponent from modifying an answer from one question to a contradictory answer. "Changing 'yes' to 'no' and 'correct' to 'no not correct' are paradigmatic examples of contradiction, rather than correction." *Tourgeman,* 2010 WL 4817990, at *2 . The bar on contradictory changes applies even where the change is to make the deponent's testimony congruent. This is particularly so in this case where each of Plaintiff's proposed changes is the equivalent from changing her response from 'yes' to 'no.' Indeed, one of the core purposes of a deposition is to identify any potential inconsistencies in the deponent's testimony while under the scrutiny of examination.

Plaintiff also claims that many of her changes were done to clarify ambiguous testimony. Plaintiff claims her changes made to questions six through twelve were done because she "noticed that the deposition testimony could be interpreted to suggest that certain documents were provided by [her] to [her] attorneys." (Mot., Ex A at 7-10.) While Plaintiff's answer to question seven may be ambiguous, the remaining questions are certainly not.

Perhaps recognizing the potentially ambiguous answer, AmGen's counsel asked several follow-up questions regarding when Plaintiff provided her attorney with the documents in question. During these follow-up questions, Plaintiff unambiguously stated she did not recall when she provided the document to her attorney. In any event, attempting to clarify ambiguity does not allow a deponent to make impermissible changes to her deposition transcript. Any ambiguity should have been rectified during the deposition by any one of the attorneys at the deposition, which appears to be what occurred at certain points of the deposition. At least one time during the deposition, Plaintiff's counsel warned

Plaintiff to use caution when answering questions. (*See* Mot., Ex. 1 at 8) ("I want you to listen to him carefully and think before you answer. Okay?"). Additionally, where Plaintiff disagreed with the premise of a question, she voiced her disagreement when answering. (*See* Mot., Ex. E at 2.)

**C. Sham Purpose**

Plaintiff claims that because her changes are not done for sham purposes, they are permitted under Ninth Circuit precedent, citing *Hambleton*. Contrary to Plaintiff's assertion, *Hambleton* does not read such that any changes are allowable so long as they are not for sham purposes. Rather, *Hambleton* mandates that the purpose of the changes not be done solely to create a material issue of fact to evade summary judgment *in addition to* the bar on contradictory changes. *Hambleton*, 397 F.3d at 1224-26. "In short, the Ninth Circuit explained that Rule 30(e) changes (1) must have a legitimate purpose, (2) must not be used as a sham solely to create a material issue of fact to evade summary judgment, *and* (3) must not be used to alter what was actually said under oath. *Ashcraft v. Welk Resort Group, Corp.*, No 16-CV-02978-JAD-NJK, 2017 WL 5180421 at *3, 2017 U.S. Dist. LEXIS 185470, at *6 (D. Nev. Nov. 8, 2017) (citing *Hambleton*, 397 F.3d at 1226) (emphasis added). As such, "[e]ven where changes to a deposition transcript are not used as a sham to create an issue of fact, Rule 30(e) may only be used for corrective, and not contradictory changes." *Lewis v. The CCPOA Benefit Trust Fund*, No. C-08-03228-VRW-DMR, 2010 WL 3398521, at * 3, 2010 U.S. Dist. LEXIS 95739, at *9 (N.D. Cal. Aug. 27, 2010) (citing *Hambleton*, 397 F.3d at 1225-26).

**D. Corrective Purpose**

Plaintiff argues her changes are "corrective in nature" because she spoke with her cousin after the deposition and was reminded of when the documents were discovered. (Mot. at 7:3-7.) Plaintiff grossly misinterprets the meaning of 'corrective' in terms of Rule 30(e). As already stated, Rule 30(e) corrections are limited to corrections of stenographic errors, not errors of memory. Corrections based on memory lapses or forgetfulness are not appropriate errata changes. Changes such as this are precisely the sort that are barred as

they permit the deponent and counsel to investigate and confer after hearing the questions, effectively turning the deposition question into an interrogatory.

**E. Irreparable Harm**

Lastly, Plaintiff claims, without any explanation, she will be irreparably harmed if AmGen's motion is granted. (Mot. at 6:10-11.) Critically, striking an improper Rule 30(e) errata sheet does not foreclose Plaintiff from utilizing other means to explain or correct the deposition. Plaintiff may, *inter alia*, file an affidavit that contradicts her testimony with a motion for summary judgment or may testify at trial and offer the jury a reason for the contradicting testimony. Without providing any explanation for the irreparable harm, it is difficult for the Court to find this argument persuasive.

## V. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** AmGen's motion and **STRIKES** Plaintiff's errata.

**IT IS SO ORDERED**.

Dated: September 27, 2018

Hon. William V. Gallo
United States Magistrate Judge