MICHAEL D. MULVANEY (*pro hac vice*)
CHRISTOPHER C. FROST (SBN 315932)
NICHOLAS J. BOOS (SBN 233399)
mmulvaney@maynardcooper.com
cfrost@maynardcooper.com
nboos@maynardcooper.com
MAYNARD, COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 646-4700
Facsimile:  (205) 254-1999

Attorneys for Defendant
AMERICAN GENERAL LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, Individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class,<br><br>            Plaintiff,<br><br>      vs.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, a Texas corporation; BAYSIDE INSURANCE ASSOCIATES, INC. a California Corporation; and Does 1-20, Inclusive<br><br>            Defendants**.** | Case No. 3:17-cv-1709-BTM-WVG<br><br>**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46** |

# TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................... 5

II. RELEVANT BACKGROUND .................................................................. 8

III. LEGAL STANDARD ............................................................................. 11

IV. ARGUMENT ......................................................................................... 12

    A.    The Kumatz deposition. ............................................................ 12

        1.    The Kumatz deposition is cumulative and
            duplicative. ................................................................ 14

        2.    The Kumatz deposition seeks evidence that is
            protected by    the attorney client privilege or
            work product doctrine ............................................... 15

        3.    Any additional non-privileged information
            sought by the    Kumatz deposition can be
            obtained through less    burdensome means of
            discovery ................................................................... 17

        4.    Under these circumstances, testimony from
            Attorney    Kumatz regarding implementation
            and application of the    statutes is improper. ..................... 17

    B.    Categories 43 and 44: the "implementation and
        application" deposition ................................................................. 20

    C.    In the alternative, if the Court allows the Kumatz
        deposition or the "implementation and application"
        deposition, it should limit the scope of the questioning ............... 21

    D.    Categories 45 and 46: the "Exhibit of Life Insurance"
        deposition. .................................................................................. 21

        1.    The "Exhibit of Life Insurance" deposition seeks
            evidence    that is irrelevant. ............................................. 22

        2.    The "Exhibit of Life Insurance" deposition seeks
            evidence    that is cumulative and duplicative ................... 24

i

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.    Alternative request for leave from January 4, 2019
       deadline to complete depositions. ................................................. 25

V. CONCLUSION .................................................................................. 27

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

**Cases**

*Carrera v. First Am. Home Buyers Protection Co.*,
    No. 13cv1585-BAS (JLB), 2014 WL 3695403 (S.D. Cal. July 23, 2014)
    ..................................................................................................12, 24

*Jones v. Hernandez*,
    No. 16-CV-1986-W(WVG), 2018 WL 539082 (S.D. Cal. Jan. 23, 2018) .......15

*Leeds LP v. United States of Am.*,
    Nos. 08cv100-BTM (BLM), 08cv110-BTM (BLM), 2009 WL 10672061 (S.D.
    Cal. Aug. 5, 2009) ..................................................................................15, 20

*LF Centennial Limited v. Z-Line Designs, Inc.*,
    No. 16cv929 JM (NLS), 2017 WL 1281803 (April 6, 2017) .........................19

*Monolithic Power Systems, Inc. v. Intersil Corporation*,
    No. 5:18-mc-80060-HRL, 2018 WL 1993537 (N.D. Cal. April 27, 2018)......18

*Oakley, Inc. v. Neff, LLC*,
    No. 15cv148-BAS (DHB), 2015 WL 4479424 (S.D. Cal. July 21, 2015)
    ..................................................................................................................18

*Vermeran v. Eastland*,
    No. 07cv1976 H (AJB), 2009 WL 10671930 (April 20, 2009)......................12

**Statutes**

California Insurance Code §§ 10113.71 and 10113.72 ..........................................8

DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46

# I. INTRODUCTION

Defendant American General Life Insurance Company, pursuant to Federal Rule of Civil Procedure 26(c), hereby moves this Honorable Court for a protective order as to certain depositions set out herein. Specifically, American General respectfully seeks a protective order from this Court to prohibit (or limit) three depositions:[1]

- A deposition of a so-called percipient witness, David Kumatz, whose role at American General is an Assistant General Counsel in its Consumer Claims and Operations area.
  - Plaintiff already knows American General's legal position on the implementation and application of the statutes through the deposition already taken of another Senior Attorney in American General's legal department. And because Mr. Kumatz's sole role and capacity at American General is to provide legal analysis and advice, all of his involvement with the "implementation and application" of the statutes—aside from facts Plaintiff already has—is obviously privileged.
- A 30(b)(6) deposition on the so-called "implementation and application" of the statutes at issue in this case.

---

[1] American General acknowledges the Court's order (D.E. 104) overruling its objections to these depositions following the parties' "Joint Report" and resulting phone conference the Court held on December 10, 2018. In that order, the Court provided that "[a]ny motion for protective order shall be filed on or before **December 17, 2018**." (D.E. 104 at 7:9). While the context in the Court's order could suggest such a motion only as to the deposition of David Kumatz, American General files this motion as to all three depositions at issue as that entitlement is provided for in FED. R. CIV. P. 26(c). American General submits this motion respectfully in order to make a proper record of its dispute under the federal rules and in follow up to its mention to the Court in the "Joint Report" (D.E. 102 at n.3) that, "[g]iven the burden at stake, American General requests the opportunity to be heard on a Rule 26(c) motion for protective order should that be necessary."

- o Plaintiff already knows—through written and testimonial discovery—that American General did not "implement" or "apply" these statutes to life insurance policies at issue in this action: those issued and delivered prior to the statutes' effective date of January 1, 2013. Any further testimony on the "what" of that topic would be a cumulative fishing expedition for irrelevant information and any questions beyond the "what" would implicate the "why" of that topic, all of which involves the analysis and application of a statute and is obviously privileged.
- A 30(b)(6) deposition on the "Exhibit of Life Insurance" section of American General's Annual Statements for the years 2013 to the present.
  - o Plaintiff already has—furnished by American General following a significant data extraction project—detailed data requested on American General's records as to California-specific policies over the period of years at issue in this putative class action and American General has agreed to provide a follow-up deposition relating to that data production. American General's Annual Statement has national aggregate data on a vast amount of statistical categories that do not implicate any "claim or defense" at issue in this action, making such a deposition a fishing expedition for irrelevant information.

American General has offered potential solutions to avoid the impropriety of these depositions while still providing some of the (cumulative and irrelevant) information sought, including the offer to stipulate to certain testimony of its already-deposed Senior Attorney as binding under Rule 30(b)(6) and the offer to provide answers to written discovery on these topics that would likewise bind American General. Plaintiff—despite contrary representations to this Court—has rejected these efforts and offers.

As to the "implementation and application" deposition, Plaintiff has

DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46

already acknowledged the marginal relevance and ministerial nature of its desire to obtain further information on this topic in its recent representations to the Court that this topic could be completed by a few Requests for Admission asking "admit that you didn't do this, admit that you didn't do that." The Court's equation of American General's representations about providing deposition witnesses months ago *before* substantial discovery had begun, on the one hand, to Plaintiff's representations **to this Court** *after* a substantial amount of discovery was complete, on the other hand, respectfully, is not accurate. While American General understands that Plaintiff's representation to the Court on this topic is not necessarily *dispositive*, it is *indicative* of the true state of affairs through *Plaintiff's* perspective, with which American General agrees: there is not much, if anything, left to be done on this topic that a few simple RFAs cannot handle.

To the extent the Court allows any of these depositions, American General asks that the Court remove the January 4, 2018 deadline it included in its order [Doc. 104] overruling American General's objections. No motion to compel was before the Court, nor had Plaintiff requested through any procedural vehicle to shorten the time in which to complete depositions beyond the Court's current discovery cut-off deadline of January 31, 2019. The Court's January 4, 2019 deadline within the current schedule, should it remain, would require significant work during the Christmas/New Year's week that will conflict with previously scheduled holiday, family and travel plans for all involved, attorneys and employees. American General respectfully requests that this Court remove the newly-imposed January 4 deadline in favor of the currently scheduled discovery cut-off of January 31, 2019. To that end, Plaintiff and American General have been conferring in good faith on an agreed, alternate schedule for two of the three depositions at issue here and will, subject to the Court's approval, submit a stipulation to that effect in the near future that would schedule the depositions (should they go forward) at a time later in January but before the current

1 discovery cut-off date.

2 American General respectfully urges the Court to consider the arguments

3 and evidence submitted herein anew and grant its motion for a protective order.

## II.  RELEVANT BACKGROUND

5 Plaintiff brought this putative class action against American General

6 alleging that it failed to apply the provisions of California Insurance Code §§

7 10113.71 and 10113.72 (the "statutes") to an insurance policy insuring the life of

8 her husband, Heron Moriarty. (*See generally* D.E. 18). The statutes, which

9 became effective on January 1, 2013, contain three requirements at issue in this

10 lawsuit: (1) the provision of a 60-day grace period following a missed premium

11 payment, (2) the provision of a 30-notice of impending lapse for non-payment of

12 premium, and (3) notice of the right to designate a secondary addressee to receive

13 notice of lapse for non-payment of premium. *See* Cal. Ins. Code §§ 10113.71 and

14 10113.72.

15 The policy insuring the life of Heron Moriarty was issued in September

16 2012 (D.E. 18 at ¶ 2), prior to the statutes' effective date of January 1, 2013.

17 Plaintiff alleges that American General did not apply the statutes' requirements to

18 that policy and others issued prior to January 1, 2013. (*See generally* D.E. 18; *see*

19 D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106,

20 109).

21 American General asserted an affirmative defense to Plaintiff's allegations

22 stating that the statutes do not apply retroactively to policies issued prior to the

23 statutes' effective date of January 1, 2013. (D.E. 31 at twenty-fifth defense).

24 Consistent with its affirmative defense, discovery has demonstrated that

25 American General implemented the statutes in a prospective manner, applying

26 them to policies issued on or after their effective date, not in a retroactive manner

27 to policies issued before January 1, 2013. *See infra*. Thus, a core issue in this

28 litigation is a legal question: whether the statutes apply retroactively to policies

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR
PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

issued prior to their effective date of January 1, 2013. Either they do, and Plaintiff is right, or they do not, and American General is right. Either way, *how* American General implemented the statutes is not at issue in this litigation.

Despite the legal, rather than factual, nature of this case, Plaintiff has engaged in voluminous discovery resulting in documents, data, and testimony that already has provided her exactly the evidence she seeks from American General's in-house counsel and corporate representatives.

Importantly, on June 27, 2018, Plaintiff deposed—over American General's objection—Jeanette Roch, a Senior Attorney in American General's legal department. Contrary to Plaintiff's representation to the Court that American General has "avoided" having a single witness under oath explain the company's implementation of the statutes (D.E. 102 at 4:10), Attorney Roch offered precisely that testimony. Specifically, Attorney Roch confirmed that letters she and Claim Manager Angela Butler (also a deponent) wrote to Plaintiff's counsel which purported to state the "company's position" indeed stated American General's position. *See* Exhibit 1 at 57, 67–68; *see also* Exhibits 2 (February 21, 2017 letter from Claim Manager Butler to Winters & Associates), 3 (March 17, 2017 letter from Attorney Roch to Jack Winters), and 4 (April 12, 2017 letter from Attorney Roch to Jack Winters). Attorney Roch's March 17, 2017 letter stated that it "is the company's position that sections 10113.71 and 10113.72 do not apply to [Heron Moriarty's policy]." Exhibit 1 at 67:3–5; *see also* Exhibit 3. Attorney Roch further testified that is the case because Heron Moriarty's policy was issued prior to January 1, 2013 and that American General has taken that position as to *all* policies issued before January 1, 2013. *See* Exhibit 1 at 67:8–19. She even testified regarding application of this position to policies other than Heron Moriarty's. *Id.* at 68:12–23, 84:20–85:16. Attorney Roch reiterated numerous times that her detailed letters stated the company's position. *Id.* at 68:9–11, 76:25–77:21. Thus Plaintiff already has extensive testimony from a

1   Senior Attorney in American General's legal department on American General's
2   implementation and application of the statutes.

3        Despite (1) obtaining detailed deposition testimony from Attorney Roch on
4   American General's implementation and application of the statutes, (2) obtaining
5   the letters written by Attorney Roch and Claim Manager Butler which state the
6   facts relating to American General's implementation and application of the
7   statutes, and (3) obtaining American General's communications with its
8   producers regarding implementation and application of the statutes,[2] Plaintiff
9   recently noticed the deposition of David Kumatz—an Assistant General Counsel
10  of American General—as a percipient witness, presumably to question him on
11  these topics. *See* Exhibit 6. American General promptly objected on the grounds
12  that Attorney Kumatz does not have any personal knowledge relevant to the
13  lawsuit that is not covered by the attorney-client privilege or work product
14  doctrine, Attorney Kumatz does not have any personal knowledge relevant to the
15  lawsuit that is not cumulative and duplicative of evidence already obtained by
16  Plaintiff in this case, and Attorney Kumatz does not have any personal knowledge
17  relevant to the lawsuit that is not cumulative and duplicative of evidence Plaintiff
18  seeks to obtain via the deposition of American General's corporate representative.
19  *See* Exhibit 7.

20       To that end, Plaintiff also noticed the deposition of American General
21  Categories 43 and 44, which seek to obtain testimony regarding American
22  General's "implementation and application" of the statutes. *See* Exhibit 8.
23  American General promptly objected on the grounds that Categories 43 and 44
24  (the "implementation and application" deposition) seek to elicit testimony
25  protected by the attorney-client privilege or work product doctrine, seek to elicit
26  testimony that is cumulative and duplicative or evidence already produced in
27  discovery, and seek to elicit testimony that can be obtained through less

28
---
[2] *See* Exhibit 5 at Response to Request for Production No. 22

6

burdensome means of discovery. *See* Exhibit 9.

On September 28, 2018, following months of data extraction, American General served detailed responses to Plaintiff's Interrogatories that sought information related to life insurance policies issued by American General in California which were in force on January 1, 2013: the very policies Plaintiff contends fall into the purported classes alleged. *See* Exhibit 10. This data provided Plaintiff "the very specific targeted answer that [she] needed, basically for the numerosity prong of class certification[.]" Exhibit 11 at 18:1–18:3; *see also id.* at 18:1–18:12 (confirming Plaintiff received what she expected from these interrogatories).

Despite obtaining this data tailored to her purported classes, Plaintiff also noticed the deposition of American General Categories 45 and 46, which seek to obtain testimony regarding to the data contained in American General's Annual Statements filed with the California Department of Insurance from 2013 through the present and the "compilation and provision" of that data. *See* Exhibit 8. American General promptly objected on the grounds that Categories 45 and 46 (the "Exhibit of Life Insurance" deposition) are unduly burdensome and not proportional to the needs of the case because there are no pending claims or defenses relating to the "Exhibit of Life Insurance" topics (i.e., the Categories present an undue burden because the information sought is *irrelevant*), seek to elicit testimony that is cumulative and duplicative, and seek to elicit testimony protected by the attorney-client privilege or work product doctrine. *See* Exhibit 9.

## III.  LEGAL STANDARD

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" FED. R. CIV. P. 26(c)(1).[3] The court may, for good cause, issue an order protecting a party from

---

[3] Prior to filing a motion pursuant to Federal Rule of Civil Procedure 26, counsel for the parties must participate in an informal teleconference with the Court. *See* Honorable William V. Gallo Chambers Rules at 7. Participation in the mandatory

improper discovery, including forbidding a deposition. *See* FED. R. CIV. P. 26(c)(1)(A). The party seeking the protective order bears the burden to show good cause by demonstrating the harm or prejudice that will result from the discovery. *Carrera v. First Am. Home Buyers Protection Co.*, No. 13cv1585-BAS (JLB), 2014 WL 3695403, at *1 (S.D. Cal. July 23, 2014) (citation omitted). This burden can be met by showing that the discovery sought subjects the resisting party to undue burden or expense,[4] is privileged,[5] or is irrelevant.[6]

## IV.  ARGUMENT

### A.      The Kumatz deposition.

As early as May 2018, counsel for American General explained to Plaintiff that the topic of "implementation and application" of the statutes is broad and necessarily implicates both attorney-client privileged communications and attorney work product. *See* Exhibit 12 (objecting to a corporate representative deposition regarding implementation and application of the statutes). Plaintiff's seeking Attorney Kumatz as a percipient witness, presumably on this topic, and Attorney Roch's deposition testimony demonstrate this apparency. Notwithstanding this potential landmine, American General permitted Plaintiff to depose Attorney Roch who offered testimony regarding *how* American General implemented the statutes with regard to policies issued prior to the statutes'

---

informal teleconference does not waive a party's right to file a motion for protective order pursuant to Rule 26. Indeed, judges in the Southern District of California have recognized that a protective order is necessary to preserve a party's objections to discovery. *See Rembrandt Diagnostics, LP*, 2018 WL 692259, at *3 ("[T]he proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order.").

[4] FED. R. CIV. P. 26(c)(1).

[5] *Vermeran v. Eastland*, No. 07cv1976 H (AJB), 2009 WL 10671930, at *2 n.2 (April 20, 2009).

[6] *Carrera*, 2014 WL 3695403, at *1.

effective date of January 1, 2013—the only policies at issue in Plaintiff's First Amended Complaint. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109). Thus, the Kumatz deposition is now cumulative and duplicative as well. Further, any additional, non-privileged information regarding American General's implementation and application of the statutes can be obtained through less burdensome means of discovery. Plaintiff's very suggestion about the use of requests for admission in lieu of depositions is the first and best example.[7] Another approach would be to designate the testimony Plaintiff already has from a senior attorney in American General's legal

---

[7] At the October 22, 2018, hearing on the parties' Joint Discovery Plan, counsel for Plaintiff represented to the Court that the discovery Plaintiff outlined in the Joint Discovery Plan could be significantly pared down. Specifically, counsel for Plaintiff represented as follows:

> [L]et me just, for the record, tell you exactly what I think we need to do to finish the case in the next 90 days, or at least get it ready for motion for classification [sic]. It's basically the two depositions that were already on schedule and on the calendar before we had this – this recent stay. It's a – it's finishing one of the 30(b)(6) topics on an issue of reporting to the Department of Insurance, ***and it's finishing a PMK of, well, how did you, if at all, implement the statutes at issue? In fact, I think that one may even be foregone or avoided entirely just by three requests for admissions; admit that you didn't (inaudible), admit that you didn't do this, admit that you didn't do that***. And then finally, as far as written discovery is concerned, what we basically want is for them to answer the contention interrogatories that we posed a long time ago that you said were not yet ripe, but some time has passed, discovery has been done, and we think they're ripe now, and just answer. Well, to the extent you disagree that the case should be certified, tell us why. And once that's done – and I think 90 days is more than enough time to do that – we're ready to file a motion for class certification[.]

Exhibit 11 at 5:25–6:21 (emphasis added). Thus, *counsel for Plaintiff* represented that the topic of implementation and application could be addressed via three (3) RFAs.

department as corporate testimony binding under Rule 30(b)(6). American General has offered to meet and confer on these potential solutions, but Plaintiff has refused.

### 1.   The Kumatz deposition is cumulative and duplicative.

To be clear: Plaintiff has obtained evidence regarding *how* American General implemented the statutes at issue in this litigation with regard to policies issued prior to the statutes' effective date of January 1, 2013. American General determined that the statutes do not apply to those policies. Attorney Roch's March 17, 2017 letter stated that it "is the company's position that sections 10113.71 and 10113.72 do not apply to [Heron Moriarty's policy]." Exhibit 1 at 67:3–5; *see also* Exhibit 3. Attorney Roch further testified that is the case because Heron Moriarty's policy was issued prior to January 1, 2013 and that American General has taken that position as to *all* policies issued before January 1, 2013. *See* Exhibit 1 at 67:8–19. She even testified regarding application of this position to policies other than Heron Moriarty's. *Id.* at 68:12–23, 84:20–85:16. Attorney Roch reiterated numerous times that her detailed letters stated the company's position. *Id.* at 68:9–11, 76:25–77:21. And, again, Plaintiff's claims are limited to the policies about which Attorney Roch testified. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109). Therefore, Plaintiff has the information she seeks regarding *how* American General implemented the statutes to the policies at issue in Plaintiff's claims. Period.

Any testimony from Attorney Kumatz regarding *how* American General implemented the statutes to policies issued before January 1, 2013 would be cumulative and duplicative.[8] *See Jones v. Hernandez*, No. 16-CV-1986-

---

[8] And any testimony regarding how American General implemented the statutes to policies issued *after* January 1, 2013 would be irrelevant and thus outside the scope of discovery. *See* FED. R. CIV. P. 26(b)(1) (limiting discovery to nonprivileged matters that are relevant to a claim or defense).

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

W(WVG), 2018 WL 539082 (S.D. Cal. Jan. 23, 2018) (granting request for protective order); *Leeds LP v. United States of Am.*, Nos. 08cv100-BTM (BLM), 08cv110-BTM (BLM), 2009 WL 10672061 (S.D. Cal. Aug. 5, 2009) (same). In *Jones*, the plaintiff in a tort case against a United States Border Patrol Agent served a 30(b)(6) deposition notice covering fourteen (14) topics. Topics nine (9) through eleven (11) sought information on the "'operation, maintenance, and data retention of any camera controlled by the USA' and how two specific video files were created, stored, retrieved, and edited." *Jones*, 2018 WL 539082, at *4. This Court stated that it was "unclear why Plaintiff [sought] the information in Topics 9–11 through a Rule 30(b)(6) deposition" because "[s]everal border patrol personnel have provided sworn declarations stating that the equipment used to record the underlying events in this case was working properly and that none of the videos or audio recordings were edited, deleted, or 'doctored' in any way." *Id.* at *5. The Court concluded that "[a]ny marginal value a deposition may have is heavily outweighed by the burden it will impose." *Id.* The Court's analysis is instructive here. It is unclear why Plaintiff seeks information regarding *how* the statutes were implemented when Attorney Roch's letters and sworn testimony regarding those letters provide exactly that information. Any additional testimony would be duplicative and have marginal value, at best.

### 2. The Kumatz deposition seeks evidence that is protected by the attorney client privilege or work product doctrine.

Because Plaintiff already has evidence regarding *how* American General implemented the statutes as to policies issued prior to January 1, 2013, the only remaining questions relate to *why* American General implemented the statutes the way it did, which is privileged information. *Id.* This Court's decision in *Leeds LP* offers guidance on this issue. In *Leeds LP* the plaintiff sought a 30(b)(6) deposition to question the Internal Revenue Service about certain evidence on which it intended to rely in the litigation. The defendant sought a protective order arguing that any information plaintiff sought from the noticed deposition had

11

already been obtained by plaintiff as defendant had identified the evidence supporting its contentions in response to contention interrogatories making questioning about those facts redundant. Defendant also argued that to the extent the questioning would not be about only the facts, the information requested would be privileged. The Court determined that if it were truly the case that plaintiff wanted to question the IRS only about the facts on which the IRS relied (and not about mental impressions, conclusions, or legal analysis) then the 30(b)(6) deposition was unnecessary because defendant had already provided plaintiff with interrogatory responses outlining which evidence it believed supported its contentions. The court concluded that the only remaining inquiries would concern Defendant's interpretation of the evidence, which would be protected by the work product doctrine. So too here.

If it is true that Plaintiff wants to question Attorney Kumatz only about *how* American General implemented the statutes to policies issued prior to January 1, 2013 (the only policies at issue in this litigation), then his deposition is unnecessary because American General has already provided Plaintiff with the information she seeks and is willing to provide further information in response to RFAs, as suggested by Plaintiff's counsel during the October 22, 2018, hearing on the parties' Joint Discovery Plan. The only remaining inquiries concern *why* American General implemented the statutes the way it did, which necessarily concerns American General's counsel's mental impressions, legal analysis, and legal conclusions, all of which is privileged information. To be sure, Attorney Kumatz analyzed the statutes in his capacity as Assistant General Counsel and provided American General legal analysis and advice: this was precisely the scope of his duties as an attorney employed by American General. *See* Exhibit 13. "All of [his] work relating to [the statutes] was done in [his] capacity as Assistant General Counsel and was done for the purpose of providing legal advice and analysis to [American General] regarding implementation and compliance, which

was performed in anticipation of future litigation relating to the statutes." *Id*. at ¶ 5. Any testimony Plaintiff seeks on this topic is protected by the attorney-client privilege and work product doctrine.

### 3. Any additional non-privileged information sought by the Kumatz deposition can be obtained through less burdensome means of discovery.

To the extent that Plaintiff seeks additional information regarding *how* American General implemented the statutes to policies issued before January 1, 2013, that information can be obtained through less burdensome means of discovery. As counsel for Plaintiff previously represented to the Court, the questions to be asked are straightforward: "admit that you didn't do this, admit that you didn't do that." Exhibit 11 at 6:11–12. This Court should require Plaintiff to explore less burdensome means of discovery prior to ordering American General to produce its in-house counsel to testify regarding implementation and application of the statutes.

### 4. Under these circumstances, testimony from Attorney Kumatz regarding implementation and application of the statutes is improper.

Even if the Court determines that further testimony regarding American General's implementation and application of the statutes to policies issued prior to January 1, 2013 is warranted, that testimony should not be provided by Attorney Kumatz for two reasons.

First, Plaintiff cannot meet her burden of demonstrating that a deposition of American General's in-house counsel is warranted. Any additional testimony regarding *how* American General implemented the statutes to policies issued before January 1, 2013 would be cumulative and duplicative,[9] any testimony

---

[9] In addition to the letters authored by Claim Manager Butler and Attorney Roch and the testimony provided by Attorney Roch, Plaintiff already has evidence from Attorney Kumatz, in the form of emails he authored, regarding *how* American General implemented the statutes. Indeed, Plaintiff relies on these very emails to argue that Attorney Kumatz is a percipient witness in this case. *See* Exhibit 6. But

13

1   regarding *why* American General implemented the statutes the way it did would
2   be privileged, and there are less burdensome means by which Plaintiff can obtain
3   additional information regarding *how* American General implemented the
4   statutes. California courts are clear that under such a factual scenario the
5   deposition of a party's in-house attorney should not be permitted.

6       In *Monolithic Power Systems, Inc. v. Intersil Corporation*, No. 5:18-mc-
7   80060-HRL, 2018 WL 1993537 (N.D. Cal. April 27, 2018) ("*MPS*", the
8   defendant, Intersil, sought to depose Monolithic Power Systems, Inc.'s ("MPS")
9   in-house attorney who was involved in negotiating a "renewal" (according to
10  MPS) non-disclosure agreement entered between MPS and its customer and who
11  prepared presentations on non-disclosure agreements used to train MPS
12  employees on confidentiality issues. Intersil contended MPS's non-disclosure
13  agreement was not a "renewal" and that the attorney's testimony regarding her
14  negotiations with MPS's client was crucial for this reason. MPS argued Intersil
15  had not shown that the attorney's deposition was warranted. The court granted
16  MPS's motion to quash stating "[a]lthough there is no absolute prohibition
17  against deposing an opposing party's counsel, such examinations 'should be
18  permitted only where the party seeking the deposition shows that (1) no other
19  means exist to obtain the information, (2) the information sought is relevant and
20  nonprivileged, and (3) the information is crucial to the preparation of the case.'"[10]

---

22  because testimony regarding *why* American General implemented the statues they
23  way it did would be privileged, Attorney Kumatz could testify only regarding
    *how* American General implemented the statues, which would result in nothing
24  more than testimony duplicating his emails and reiterating American General's
    well-documented position on the application of these statutes.

25  [10] Similarly, this Court recognizes the "tremendous potential for abuse or
26  harassment" when corporate executives are deposed and therefore limits "apex
    depositions" by considering whether the deponent has "unique first-hand, non-
27  repetitive knowledge" and whether the "party requesting the deposition has
    exhausted other less intrusive discovery methods." *Oakley, Inc. v. Neff, LLC*, No.
28  15cv148-BAS (DHB), 2015 WL 4479424, at *2 (S.D. Cal. July 21, 2015)

*MPS*, 2018 WL 1993537, at \*2 (citation omitted). The court recognized that although the communications between MPS's in-house attorney and MPS's client were not privileged, MPS contended that the communications occurred by email which MPS produced. As to the presentations the attorney created, MPS had produced the slides and had denied (via interrogatory response) that the presentations were company "policies" and MPS had produced actual policies none of which were authored by the attorney. The court concluded that "Inntersil ha[d] not convincingly demonstrated that [the attorney] ha[d] any unique or personal knowledge relevant to the issues that cannot be obtained from other sources" and therefore granted MPS's motion to quash. *Id.* at \*3.

Here, Attorney Kumatz does not have any non-privileged, unique or personal knowledge relevant to the issues that cannot be obtained from other sources. Plaintiff has already obtained information regarding American General's implementation and application of the statutes with regard to policies issued prior to January 1, 2013, and her counsel conceded that RFAs could be used to obtain additional information to clarify and conclude discovery on that point. Thus, Plaintiff cannot meet her burden of establishing that no other means exists to obtain information regarding *how* American General implemented the statutes. As to *why* American General implemented the statutes the way it did, Attorney Kumatz could answer that question only by explaining his mental impressions, legal analysis, and legal conclusions. Attorney Kumatz analyzed the statutes in his capacity as Assistant General Counsel and provided American General legal analysis and advice. *See* Exhibit 13. "All of [his] work relating to [the statutes] was done in [his] capacity as Assistant General Counsel and was done for the purpose of providing legal advice and analysis to [American General] regarding

(citations omitted). *See also LF Centennial Limited v. Z-Line Designs, Inc.*, No. 16cv929 JM (NLS), 2017 WL 1281803, at \*2–3 (April 6, 2017) (applying the analysis for apex depositions to a notice of deposition of a company's in-house counsel).

implementation and compliance, which was performed in anticipation of future litigation relating to the statutes." *Id.* at ¶ 5. Any testimony Plaintiff seeks on this topic is protected by the attorney-client privilege and work product doctrine.

Second, Plaintiff noticed the deposition of Attorney Kumatz only when she learned that he would not be the corporate representative for the "implementation and application" deposition. But American General has the right to designate its own corporate representative. And Attorney Kumatz's deposition would be repetitive to the extent it covers the same information addressed in the 30(b)(6) "implementation and application" deposition, and that deposition "is a less intrusive discovery method for this same information." *LF Centennial Limited*, 2017 WL 1281803, at *3 (prohibiting deposition of in-house counsel as percipient witness on topics to be covered by 30(b)(6) witness).

**B.     Categories 43 and 44: the "implementation and application" deposition.**

As previously set out, any testimony regarding *how* American General implemented the statutes to policies issued before January 1, 2013 would be cumulative and duplicative, any testimony regarding *why* American General implemented the statutes the way it did would be privileged, and there are less burdensome means by which Plaintiff can obtain additional information regarding *how* American General implemented the statutes. Preparing and presenting a witness on this topic—in light of the record already made on the issue, the privileged nature of the topic, and the less burdensome means for discovering additional non-privileged information—turns the time-consuming and expensive task of 30(b)(6) depositions into a wasteful and burdensome task. American General respectfully submits that depositions of its corporate representatives on this topic are not warranted and, given the clear testimony already in the record,

1  are cumulative and harassing.[11]

2  **C.    In the alternative, if the Court allows the Kumatz deposition or the "implementation and application" deposition, it should limit the scope of the questioning.**

4  If the Court allows the Kumatz or "implementation and application" depositions to go forward, it should, at minimum, limit the scope of the questioning. Plaintiff's questions should be limited to *facts* involving *how* American General implemented the statutes for policies issued before January 1, 2013—the only policies at issue in Plaintiff's First Amended Complaint. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109). Plaintiff should be prohibited from questioning American General and Attorney Kumatz regarding *why* American General implemented the statutes the way it did, and Plaintiff should be prohibited from eliciting testimony bearing in any way on American General's legal process involved with its analysis of the statutes and decisions regarding compliance with the statutes. *See* FED. R. CIV. P. 26(b)(1) (limiting discovery to nonprivileged matters).

17  **D.    Categories 45 and 46: the "Exhibit of Life Insurance" deposition.**

18  The "Exhibit of Life Insurance" deposition seeks information relating to the data contained in American General's Annual Statements filed with the California Department of Insurance from 2013 through the present and the "compilation and provision" of that data. Specifically, Plaintiff seeks to depose American General regarding "data and information found in the sections of the Annual Statements entitled 'EXHIBIT OF LIFE INSURANCE', Items 1 through 23 . . . and the sections of the Annual Statement entitled 'SCHEDULE T – PREMIUMS AND ANNUITY CONSIDERATIONS', Items 5 (California) and

27  _____

[11] American General incorporates by reference into this section on the "implementation and application" deposition its arguments and authorities set out in IV.A., *supra*.

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

Items 91 through 95[.]" *See* Exhibit 8; *see* Exhibit 14 for the attachment referenced in Exhibit 8 but which Plaintiff did not attach to Exhibit 8.

### 1.   The "Exhibit of Life Insurance" deposition seeks evidence that is irrelevant.

There are no pending claims or defenses relating to the following "EXHIBIT OF LIFE INSURANCE" Items for the years 2013 to the present:

- 2 (policies issued during the year): Again, Plaintiff's claims are limited to policies issued prior to January 1, 2013. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109).

- 3 (reinsurance assumed): Plaintiff has made no claim regarding reinsurance. (*See generally* D.E. 18).

- 4 (revived during year): Plaintiff's purported classes are limited to policies in force on January 1, 2013. (*See* D.E. 18 at ¶ 44, 45, 46, 47, 48, 49).

- 5 (policies increased during the year): Again, Plaintiff's claims are limited to policies issued prior to January 1, 2013. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109).

- 6 (subtotals of items 2 to 5): Plaintiff's claims are limited to policies issued prior to January 1, 2013 and in force on that date and Plaintiff has made no claim regarding reinsurance. (*See generally* D.E. 18).

- 7 (additions by dividends during year): Again, Plaintiff's claims are limited to policies issued prior to January 1, 2013. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73, 74, 77, 78, 89, 90, 106, 109).

- 8 (aggregate write-ins for increase): Again, Plaintiff's claims are limited to policies issued prior to January 1, 2013. (*See generally* D.E. 18; *see* D.E. 18 at ¶ 1, 4, 5, 20, 41, 44, 45, 46, 47, 48, 49, 73,

18

74, 77, 78, 89, 90, 106, 109).

- 9 (totals of items 1 and 5 to 8): Plaintiff's claims are limited to policies issued prior to January 1, 2013 and in force on that date and Plaintiff has made no claim regarding reinsurance. (*See generally* D.E. 18).

- 12 (disability): Plaintiff has made no claim regarding disability insurance. (*See generally* D.E. 18).

- 16 (conversion): Plaintiff has made no claim regarding conversion of policies. (*See generally* D.E. 18).

- 17 (decreased): Plaintiff has made no claim regarding decreased policies. (*See generally* D.E. 18).

- 18 (reinsurance): Plaintiff has made no claim regarding reinsurance. (*See generally* D.E. 18).

- 19 (aggregate write-ins for decreases): Plaintiff has made no claim regarding decreased policies. (*See generally* D.E. 18).

- 20 (totals of items 10 to 19): Plaintiff's claims are limited to policies issued prior to January 1, 2013 and Plaintiff has made no claim regarding disability insurance, conversion of policies, decreased policies, or reinsurance. (*See generally* D.E. 18).

- 21 (in force end of year (item 9 minus item 20)): Plaintiff's claims are limited to policies issued prior to January 1, 2013 and in force on that date and Plaintiff has made no claim regarding reinsurance, disability insurance, conversion of policies, or decreased policies. (*See generally* D.E. 18).

- 22 (reinsurance ceded end of year): Plaintiff has made no claim regarding reinsurance. (*See generally* D.E. 18).

- 23 (item 21 minus item 22): Plaintiff's claims are limited to policies issued prior to January 1, 2013 and Plaintiff has made no claim

19

1  regarding reinsurance, disability insurance, conversion of policies,
2  or decreased policies. (*See generally* D.E. 18).

3  *See* Exhibit 14 at MMID-1400. There are also no pending claims or defenses
4  relating to Item 1 (in force end of prior year) for the years 2014 to the present
5  because Plaintiff's purported classes are limited to policies in force on January 1,
6  2013. (*See* D.E. 18 at ¶ 44, 45, 46, 47, 48, 49). Because there are no pending
7  claims or defenses relating to the information contained in those EXHIBIT OF
8  LIFE INSURANCE Items, testimony on those matters is irrelevant, unduly
9  burdensome, and not discoverable. *See* FED. R. CIV. P. 26(b)(1) (limiting
10  discovery to nonprivileged matters that are relevant to a claim or defense);
11  *Carrera*, 2014 WL 3695403, at *1 ("Discovery requests seeking irrelevant
12  information are inherently undue and burdensome[.]" (citation omitted)).
13  SCHEDULE T – PREMIUMS AND ANNUITY CONSIDERATIONS Items 5
14  and 91 through 95 contain California and nationwide premium information,
15  respectively. *See* Exhibit 14 at MMID-1403. Plaintiff's claims are limited to
16  California policies. (*See generally* D.E. 18). Because there are no claims or
17  defenses relating to non-California policies, testimony regarding premiums
18  related to such policies is irrelevant, unduly burdensome, and not discoverable.
19  FED. R. CIV. P. 26(b)(1), *Carrera*, 2014 WL 3695403, at *1. There are also no
20  claims and defenses relating to premiums earned on California policies. (*See*
21  *generally* D.E. 18). To the extent that Plaintiff seeks that information for damages
22  purposes, that information is more appropriately obtained at a later time, as
23  counsel has agreed to do with regard to other depositions regarding American
24  General's financial condition. *See* Exhibit 15.

25  **2.    The "Exhibit of Life Insurance" deposition seeks evidence**
26  **that is cumulative and duplicative.**

27  To the extent that Item 1 (in force end of prior year) listed on the
   "EXHIBIT OF LIFE INSURANCE" for the year 2013 and that Items 10 (death),
28  11 (maturity), 13 (expiry), 14 (surrender), and 15 (lapse) listed on the "EXHIBIT

20

OF LIFE INSURANCE" for the years 2013 through present contain relevant information, that information that is duplicative of information already provided to Plaintiff. In response to Interrogatory No. 1, American General provided Plaintiff an estimate of the number of individual life insurance policies in force in California as of January 1, 2013. *See* Exhibit 16. In response to Request for Production Set 6 No. 2, American General provided Plaintiff an estimate of the number of individual life insurance policies in force in California as of January 1, 2013 that were no longer in force (i.e., that terminated due to death of the insured, reached a maturity date, reached an expiry date, where voluntary surrendered, lapsed, or were otherwise no longer in force) as of July 31, 2017. *See* Exhibit 17. And in response to Interrogatory No. 5, American General provided plaintiff an estimate of the number of individual life insurance policies in force in California as of January 1, 2013 that thereafter lapsed for nonpayment of premium. *See* Exhibit 10. Thus, Plaintiff has the specific data she seeks regarding the policies at issue in her complaint. And, on November 2, 2018, Plaintiff noticed 30(b)(6) Categories 40 through 42 pertaining to the data included in American General's interrogatory responses. *See* Exhibit 18. American General has agreed over its objections to produce a witness for these Categories, as modified by the parties' meet and confer efforts. Any testimony regarding the Exhibit of Life Insurance and its data would, therefore, be doubly duplicative.

\*       \*       \*

Given the irrelevant nature of most of the topics to be covered in the Exhibit of Life Insurance" deposition and the duplicative nature of the remaining topics, preparing and presenting a witness on Categories 45 and 46 is nothing short of wasteful, burdensome, and harassing.

**E.    Alternative request for leave from January 4, 2019 deadline to complete depositions.**

If the Court requires American General to produce a witness to testify regarding these duplicative, privileged, and irrelevant topics, American General

21

requests that the deadline for those depositions coincide with the close of discovery on January 31, 2019. The Court recently ordered production of these witnesses by January 4, 2019. (D.E. 104). Discovery does not close until January 31, 2019. (D.E. 98). Because discovery remains open until January 31, 2019, there is no reason to complete these depositions by January 4 2019, especially in light of the federal holidays on December 25, 2018 and January 1, 2019.

In an effort to comply with the current order to produce witnesses by January 4, 2019, American General offered to produce witnesses on January 3 and 4, 2019. In response, counsel for Plaintiff refused to depose any witnesses on those dates and demanded that the 30(b)(6) "implementation and application" deposition occur on December 27, 2018 and that the 30(b)(6) "Exhibit of Life Insurance" deposition occur on December 28, 2018, citing his own schedule as the reason for that demand. *See* Exhibit 8. Counsel's demand is wholly unreasonable in light of the upcoming federal holidays and the Court's Order to complete the depositions by January 4, 2019. American General offered reasonable solutions to the scheduling issues in addition to the dates it offered within the Court's current January 4, 2019 deadline, including simply asking the Court to remove its newly-imposed January 4, 2019 deadline and simply adhere to the January 31, 2019 discovery cutoff. American General pointed out that these options are viable because the parties are not briefing dispositive motions until April. To that end, Plaintiff and American General have been conferring in good faith on an agreed, alternate schedule for two of the three depositions at issue here and will, subject to the Court's approval, submit a stipulation to that effect in the near future that would schedule the depositions (should they go forward) at a time later in January but before the current discovery cut-off date.

To provide all counsel and American General—who can only testify through human witnesses who celebrate Christmas and New Year's—the opportunity to complete any required depositions within the current discovery

1 period without disrupting previously-scheduled holiday, travel, and family plans,

2 American General requests that the deadline for the depositions at issue in this

3 motion—if ordered to be completed—coincide with the close of discovery on

4 January 31, 2019.

5 ### V.  CONCLUSION

6 American General respectfully requests this Court enter a protective order

7 prohibiting the deposition of Attorney Kumatz and the depositions of its corporate

8 representatives on Categories 43 through 46. In the alternative, if ordered to

9 complete these depositions, American General requests that the deadline for

10 completion coincide with the close of discovery on January 31, 2019.

11 DATED: December 17, 2018                    MAYNARD, COOPER & GALE, LLP

12

13 _____

14                                           Nicholas J. Boos
                                             Attorney for Defendant
15                                           American General Life
                                             Insurance Company
16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of San Francisco State of California. I am over the age of eighteen years and not a party to this action. My business address is 600 Montgomery Street, Suite 2600, San Francisco, CA 94111. On December 17, 2018, I served a copy of the following documents:

**DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION CATEGORIES 43 THROUGH 46**

**[X]  BY CM/ECF ELECTRONIC SERVICE:** The interested party(ies) set forth below are registered CM/ECF users with the Court, and have consented to service through the Court's automatic transmission of a notice of filing.

Alex M Tomasevic
Craig McKenzie Nicholas
Shaun A. Markley
Nicholas and Tomasevic LLP
225 Broadway 19th Floor
San Diego , CA  92101
alex@nicholaslaw.org
cnicholas@nicholaslaw.org
smarkley@nicholaslaw.org

Jack B Winters , Jr
Sarah D. Ball
Georg Capielo
Law Offices of Winters and Associates
8489 La Mesa Boulevard
La Mesa, CA  91942
jackbwinters@earthlink.net
sball@einsurelaw.com
gcapielo@einsurelaw.com

Attorneys for Plaintiff
MICHELLE L. MORIARTY

Jeffrey Mark Byer

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sandler Lasry Laube Byer and Valdez
402 West Broadway Suite 1700
San Diego , CA  92101-3542
jbyer@sllbv.com

Attorney for Defendant
BAYSIDE INSURANCE ASSOCIATES, INC.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

   Executed on December 17, 2018 at San Francisco, California.

_____
                                Rachel Ouk