UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, et al.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.: 17-CV-1709-BTM-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS** |

## I. INTRODUCTION

Presently before the Court is Plaintiff Michelle Moriarty's ("Plaintiff") Motion Pursuant to Federal Rule of Civil Procedure ("Rule") 37 seeking numerous discovery sanctions against Defendant American General Life Insurance Company ("Defendant"). (Mot., ECF No. 123.) The Court has considered Plaintiff's Motion, Defendant's Opposition, (Opp'n, ECF No. 124,) and the oral argument presented to the Court on March 22, 2019. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

## II. RELEVANT BACKGROUND

Plaintiff Michelle Moriarty brought this putative class action alleging that Defendant American General Life Insurance Company ("Defendant") failed to properly apply

California Insurance Code Sections 10113.71 and 10113.72 ("Subject Statutes"), which became effective January 1, 2013. (*See generally* FAC, ECF No. 18.) Plaintiff alleges that Defendant did not apply the standards set forth in the subject statutes retroactively to policies issued before January 1, 2013. (*See e.g.*, FAC at ¶¶ 66-74.) Additionally, Plaintiff alleges that Defendant continues to breach the express terms of policies that were issued prior to January 1, 2013 and are presently in effect by continuing to violate, *inter alia*, the subject statutes. (*See id.* at ¶ 78.)

**A. Rule 30(b)(6) Deposition**

On November 5, 2018, Plaintiff noticed the deposition of Defendant's representative pursuant to Rule 30(b)(6), providing numerous topic categories. (*See* ECF No. 102-15.) Category 43 sought Defendant's testimony regarding Defendant's "implementation and application of the provisions of Cal. Ins. Code Sections 10113.71 and 10113.72." (*See id.* at 3.) Defendant objected to Category 43, as well as other categories in the deposition notice, on the grounds that it sought information protected by the attorney-client privilege or work product doctrine, was vague and ambiguous, overly broad, unduly burdensome, disproportionate to the needs of the case, and sought proprietary information. (*See* ECF No. 104 at 5:9-17.) This issue came before the Court and after considering both parties' briefing and hearing oral argument, the Court issued an order on December 12, 2018 overruling each of Defendant's objections and ordered Defendant to "provide a witness or witnesses sufficient to testify on the" identified categories. (*See id.* at 7:5-7.)

On December 17, 2018, Defendant moved for a protective order that would prohibit or limit a Rule "30(b)(6) deposition on the so-called 'implementation and application' of the statutes at issue in this case" as described in Category 43. (*See* ECF No. 107 at 5.) Defendant again argued such a deposition would be cumulative and duplicative, unduly burdensome, and would seek privileged information. (*Id.* at 20:14-21:1.) On December 31, 2018, the Court denied Defendant's motion for a protective order because it was nothing more than "a thinly veiled motion for reconsideration." (ECF No. 117 at 13:5-6.)

On January 3, 2019, Defendant produced Ms. Michelle Miller as its designated

witness pursuant to Rule 30(b)(6). (Mot. at 5:7-10.)

**B. 2012 Memorandum**

On or about April 16, 2018, Plaintiff served on Defendant her request for production of documents set 2. (*See* Opp'n at Ex. 1.) On April 24, 2018, Defendant served its initial privilege log that identified 87 documents. (*See id*. at Ex 2.) Two documents, log ID 68 and 70, are identified as "Legal memorandum re: CA AB 1747 (attachment to Privilege Log ID 67/69)" (hereafter the "2012 Memo") and were withheld on the basis of attorney-client privilege.[1] (*Id*. at Ex. 2 at 26.) On or about May 1, 2018, Plaintiff sent a letter to Defendant objecting to the privilege log because it did "not provide sufficient detail to determine whether the documents referenced [had] been appropriately withheld on the basis of the claimed privilege." (*Id*. at Ex. 3.) Defendant submitted an amended privilege log on May 15, 2018. (*Id*. at Ex. 4.) The 2012 Memo was listed as Log ID 68 and 70 with and further described as an "[a]ttachment to email regarding California Market Conduct Exam audit responses." (*Id*.) On May 18, 2018, Plaintiff sent a letter now objecting only to Log ID Nos. 1 and 2. (*See id.* at Ex. 7.) Plaintiff raised no objection to any other entry on the privilege log and requested Defendant confirm that the privilege log was exhaustive of all withheld documents. (*Id*.)

On January 10, 2019, Defendant served on Plaintiff an amended privilege log that identified that the 2012 Memo was drafted on October 18, 2012, was authored by David Kumatz, an attorney employed by Defendant, and indicated it was sent to twenty-eight different people. (*See id.* at Ex. 11.)

**C. Present Motion**

On January 23, 2019, the parties jointly notified the Court of a discovery dispute regarding the deposition of Miller as well as the production of the 2012 Memo. Plaintiff

---

[1] Log ID No. 68 states it is an attachment to an email documented as Log ID 67. Log ID No. 70 states it is an attachment to an email documented as Log ID 69. (*See* Opp'n at Ex. 2 at 26.)

sought leave to file a motion for sanctions pursuant to Rule 37, which the Court granted. On January 31, 2019, Plaintiff timely filed her motion seeking relief pursuant to Rule 37(b)(1), (b)(2)(B), and (d)(1).[2] Defendant timely filed its Opposition on February 8, 2019.[3] The Court held a hearing on March 22, 2019 and submitted the Motion for consideration thereafter.

## III. DISCUSSION

### A. Rule 30(b)(6) Deposition

#### i. Argument

Plaintiff contends that Michelle Miller, Defendant's designated PMK witness is a "non-managerial employee of [Defendant], whose sole involvement" was to reprogram Defendant's "computer programs to address technical specifics of how the [subject statutes] were implemented." (Mot. at 5:7-10.) Plaintiff claims that Miller was "unprepared to speak on [Defendant's] behalf regarding many relevant issues" because she "did not review the Complaint, any discovery, or [Defendant's] responses to document demands." (*Id.* at 11-17.) Plaintiff argues that Defendant was wholly aware of the scope of information sought given Defendant's extensive motion work aimed at limiting or altogether preventing a deposition on Category 43. (*Id.* at 6:7-13.) Plaintiff now seeks an order precluding Defendant from using evidence regarding the questions posed or, in the alternative, an order requiring Defendant provide a fully competent witness to answer all questions posed at the deposition. (*Id.* at 7:15-21.)[4]

---

[2] Rule 37(b)(1) provides relief through the court "where the discovery is taken…" Fed. R. Civ. P. 37(b)(1). Since the deposition took place in Nashville, Tennessee, the United States District Court for the Middle District of Tennessee is the appropriate court to grant relief pursuant to Rule 37(b)(1). Similarly, Rule 37(b)(2)(B) allows sanction when a party fails to comply with an order under Rule 35(e), which has not occurred in this case. Accordingly, sanctions pursuant to Rule 37(b)(1) and (b)(2)(B) are **DENIED**.

[3] Defendant filed a motion to file documents under seal concurrently with its Opposition. (ECF No. 125.) The Court **GRANTS** the motion.

[4] At the motion hearing, Plaintiff articulated that taking additional discovery at this time is unacceptable as dispositive motions are due imminently.

Defendant argues it sufficiently complied with Rule 30(b)(6) by presenting "a 40-year veteran of the company who was on the implementation project team to testify about" Defendant's implementation and application of the Subject Statutes. (Opp'n at 2:25-3:3.) Defendant contends that Miller "was on the project team that implemented the provisions of the [Subject Statutes] into" Defendant's "computer systems." (*Id*. at 6:26-27.) Defendant argues that Plaintiff received the 30(b)(6) that she requested; one that implemented and applied the Subject Statutes for Defendant. Defendant notes that 'implementation' is defined as "the process of making something active or effective" and that 'application' is defined as "an act of applying," citing Merriam-Webster Dictionary. (*Id*. at 7 n.7.) Given these definitions and the language of Plaintiff's deposition notice, the questions Plaintiff asked at the deposition of Miller were simply outside the scope of the noticed topic. (*Id*. at 7:9-18.) In sum, it is Defendant's contention that any questioning beyond the actual 'implementation' and 'application,' as it defines those terms, of the Subject Statutes into a Defendant's system is beyond the scope of the notice.

### ii. Legal Standard

Rule 30 requires a corporation to designate a deponent sufficiently knowledgeable to testify on the corporation's behalf "about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. *Id*. "However, the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *ChriMar Systems Inc. v. Cisco Systems Inc.*, 312 F.R.D. 560, 563 (N.D. Cal. 2016). "The 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Id*. "Thus, the corporation must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledge[able], and binding answers on behalf of the corporation." *Id*. "However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *Id*.

When choosing a deponent, "companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Sprint Comm. Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan 2006). "[T]he purpose underlying Rule 30(b)(6) would be frustrated if a corporate party produces a witness who is unable or unwilling to provide the necessary factual information on the entity's behalf." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015). Thus, "[i]f an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 540 (D. Nev. 2008).

### iii. Analysis

The Court finds that Miller was not adequately prepared or sufficiently knowledgeable to testify as a Rule 30(b)(6) witness regarding the implementation and application of the Subject Statutes.[5] When asked very basic questions at the outset of the deposition, Miller often answered that she was either unaware of the answer or had very limited information. As an example, Miller testified as follows:

> Q: Are you prepared to testify as to when the company first learned of the provisions of [the Subject Statutes]?
> A: I am not aware of that part.

(Mot. at Ex. 1 23:8-11; Opp'n at 125.) Later, Miller effectively testified that Defendant had never seen the Subject Statutes:

> Q: This is a two-page exhibit. It's actually a copy of the bill number 1747,[6] and it has dated in full the provisions of the statutes as initially enacted. Have you ever seen this before?

---

[5] At the start of the deposition, Miller testified that she understood she was designated to testify on behalf of Defendant on the category of implementation and application of the Subject Statutes. (*See* Mot. at Ex. 1 13:19-22.)

[6] The Subject Statutes were enacted as a result of California Assembly Bill 1747.

A: No, I have not.

(*Id.* at Ex 1 48:15-20.) Certainly, Defendant at some point learned of the Subject Statues and read them. Had it not, it could not have implemented and applied the Subject Statutes as it claims it did. However, Miller was not prepared to respond to these questions seeking the most basic information. Miller's inability to answer such foundational questions at the outset of the deposition should have immediately put Defendant on notice that it had "a duty to designate an additional knowledgeable deponent." *Great Am. Ins. Co. of New York*, 251 F.R.D. at 540. Defendant failed to do so.

When asked more detailed questions, Miller again failed to provide satisfactory answers:

> Q: Do you – are you prepared in any fashion to testify as to who was assigned or undertook the evaluation of the statute to determine how it would be implemented and applied?
> [Objection to form, foundation, and that the question is beyond the scope of the notice.]
> A: Yeah, no, I don't know that information.

(Mot. at Ex. 1 41:23-42:3.)

> Q: Do you know what, if any, attorney for the company actually evaluated the statutes before any implementation/application was made?
> [Same objection]
> A: No, I'm not aware of that.
> Q: Can you in any fashion testify as to how or whether the company made any contact with any other insurance companies to determine how they were applying the statutes?
> [Same objection]
> A: Not aware.
> Q: Can you in any fashion testify today as to whether or not the company made any kind of economic or financial evaluation of the statute before determining how it would be applied?
> [Same objection]
> A: I'm not aware.

(*Id.* at 43:9-44:3.)[7] It is well settled that the testimony of Rule 30(b)(6) witnesses "is not

---

[7] At the March 22, 2019 oral argument, counsel for Defendant argued Plaintiff was not entitled to information such as "who did it and who made the decision" because this

7

limited to matters within their personal knowledge, but extends to matters known or reasonably available to the party designating the witness." *Nutramax Labs, Inc. v. Twin Labs, Inc.*, 183 F.R.D. 458, 469 (D. Md. 1998). If Miller was unprepared with the appropriate answers prior to the deposition, it was incumbent on Defendant to ensure Miller acquired all reasonably available information regarding the implementation and application of the Subject Statutes. *See Federal Trade Commission v. Directv, Inc.*, 2016 WL4154851, at *4 (S.D. Cal. 2016) (An "organization has an affirmative duty to educate and prepare the designated representative for the deposition"); *ChriMar Systems Inc.*, 312 F.R.D. at 563 (the corporation must not only designate someone to testify "but more importantly, prepare them so that they may give complete, knowledge, and binding answers on behalf of the corporation"); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36 (D. Mass. 2001) ("Indeed, the law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation") (collecting cases). Each of the above questions are well within the topic on which Miller was designated to testify and are areas of inquiry the Court would expect Defendant to be aware.

It is clear that Miller did not adequately prepare for the deposition not only because of the areas of inquiry of which she could offer no answer, but also because of the admitted amount of time she had taken to prepare for the deposition. This is likely not Miller's fault, however, as she only learned she had been designated as Defendant's 30(b)(6) witness the day before the deposition at 11:30 A.M. (Mot. at Ex. 1 20:11-20.) While there is no set time that a 30(b)(6) witness must spend preparing for a deposition, there must be a

---

information is protected by the attorney-client privilege. (Tr. at 64:16-18.) This is simply wrong. "Factual questions as to whether there has been any fact gathering; who did it; when it was done; where it is reported, if at all; how it was conducted; what inquiry was made and of whom; why the inquiry has taken so long; and the like" are appropriate deposition questions that "do not reveal mental impressions or opinions that could be subject to privilege." *Federal Trade Commission v. Directv, Inc.*, 2016 WL 4154851, at *2 (N.D.Cal., 2016) (internal quotation omitted).

sufficient amount of time to allow the deponent to become familiar with all matters that are established in the deposition notice. It is clear Defendant did not allow a sufficient amount of time to properly prepare Miller for her deposition.[8]

Moreover, it is obvious Miller did not fully understand what her role was as the 30(b)(6) witness notwithstanding her testifying just the opposite.[9] When asked certain questions, she would state often that she was unsure, but that Defendant would provide her the information should she need it. As an example, Miller testified:

> Q: Okay. Well, to your knowledge, is the company in any fashion applying or implementing, as you defined it, the statutes to renewals?
> A: I mean, the company would have to make that decision, but I'm – if you ask me my personal opinion, I don't believe so.

(*Id*. at Ex. 1 33:19-24.)

> Q: What department or divisions were involved in making the decisions as to how the statutes would be implemented?
> [Objection]
> A: I'm not really 100 percent sure. As I said previously, I'm sure the legal and compliance department were consulted, as far as what the statute would read or interpret. But I don't know – you know, we were given the information in that document.

(*Id*. at Ex. 1 at 39:22-40:7.) The deposition transcript provided to the Court is littered with similar answers where Miller either did not know, offered her own opinion, stated "the company" would have that information, or any combination of the three.

---

[8] Defendant cannot claim that it did not have sufficient time to prepare an adequate witness. Defendant was served with the deposition notice on November 5, 2018 and was ordered on December 12, 2018 to provide a witness no later than January 4, 2019 providing Defendant nearly a month to prepare.

[9] At the start of the deposition, Miller testified that she understood she was designated to testify on behalf of Defendant. (*See* Mot. at Ex. 1 13:19-22.) Possibly sensing an issue with Miller's testimony, counsel for Plaintiff verified that Miller knew her role from time to time during the deposition. An example follows:
> Q: Okay. You're here on behalf of the company today. Do you understand that?
> A: I do.

(*Id*. at 41:2-4.)

Miller was prepared to testify on the implementation and application of the Subject Statutes into Defendant's computer system.[10] Yet the deposition notice was not written so narrowly. Nowhere in the noticed category is there a limitation to implementation and application of the Subject Statutes into a computer system. Live by the sword; die by the sword. If Defendant wants to engage in hyper-technical word games to sanctify its selection of Miller as the appropriate 30(b)(6) witness on Category 43, then it must be prepared to defend its decision using the same definitions. Using Defendant's definition of 'implementation,' the process of making something active or effective, the term 'process' can be greatly expanded beyond the physical entry of a new company policy into a computer system as envisioned by Defendant. A process has a start, and likely a conclusion. The process of making something active or effective must, necessarily, begin when an entity first becomes aware of the need for something to change. In this case, that change came about because of a new statute. Thus, the implementation process first began when Defendant became aware of the statute.

A broader reading of 'implementation' and 'application' is clearly warranted here. A broader, more appropriate, and reasonable reading of Plaintiff's topic would interpret the process as everything from the first time the statute is read by someone at American

---

[10] Miller offered the following testimony:
> Q: Now, what is your understanding of your role here today?
> A: Company representative to discuss the implementation of the California statute *into the applicable systems*.
> Q: Do you understand it was to deal with the application of the statute as well?
> A: The implementation and application *into the systems*.

(Mot. at Ex. 1 22:13-21) (emphasis added).
> Miller again qualified that she was prepared to testify about system changes only:
> Q: Are you prepared to testify about any changes to the implementation and application of those statutes to any American General Life Insurance policies?
> A: *Changes to the system*, yes.

(*Id*. at Ex. 1 23:21-25) (emphasis added). Indeed, Miller's role within the company "was only specifically to implement the requirements into the system." (*Id*. at 25:2-5.)

General until and through the entry of the new company policy into a computer system.[11]

Defendant can hardly claim it was not aware of the scope of information sought. As Plaintiff points out, Defendant fought tooth and nail to narrow or completely bar a deposition on this topic, raising objections that any testimony provided would be duplicative of the depositions of two previously deposed attorneys, that it would seek information protected by the attorney-client privilege and attorney work product doctrines, that the noticed topic was overbroad, among others. Indeed, Defendant argued "the topic of 'implementation' of the statutes is broad and necessarily implicates both attorney-client privileged communications and attorney work product." (ECF No. 102 at 10:12-15.) Defendant further indicated that preparing such a witness "on such a sensitive topic" would be "time-consuming and expensive" to the point it would be "wasteful and burdensome." *Id*. at 10:17-19.) In its subsequent motion for protective order, Defendant reiterated that "the topic of 'implementation and application' of the statutes is broad and necessarily implicates both attorney-client privileged communications and attorney work product." (ECF No. 107 at 10-13.) Curiously and conveniently, Defendant now justifies its selection of Miller as being appropriate because the topic of implementation and application "is very narrow." (Tr. at 65:11-14.) Such an argument cannot be sustained given the past claims made by Defendant. Certainly, Defendant did not expend a great deal of time preparing Miller for the deposition, as discussed above.

If Defendant believes that it put Miller up in good faith, then each of the past arguments regarding this topic were brought in bad faith. Defendant cannot have it both ways. Defendant cannot, on the one hand argue that Category 43 was so broad and vague as to make it nearly impossible to identify and prepare an appropriate witness, and then on the other hand contend it is so narrow in scope that the testimony of Miller describing her

---

[11] This finding is supported in part by the testimony of Mr. Kumatz. During his deposition, Mr. Kumatz referred to the "group that was charged with implementing the statute" as the group of decision makers that would determine how to implement the statute, not simply a person entering the information into a system. (*See* Mot. at Ex. 2 127:18-128-8.)

ministerial task of inputting data into a computer completely and totally satisfied Defendant's obligation. Defendant's inconsistent arguments demonstrate the lack of merit in Defendant's position, either one of them, and exposes Defendant's true intent: to prevent the deposition of any 30(b)(6) witness on Category 43 at any and all cost. As far as the Court is aware, the attorneys previously deposed did not provide any information on Defendant's computer systems that would have rendered Miller's testimony duplicative and cumulative, as was argued at great length. Moreover, not once during the deposition, at least according to the portions the Court has been provided, is there an objection citing attorney client or work product as the basis.

The Court recognizes that Miller was able to testify about certain areas discussed by Plaintiff's counsel. However, it remains clear Miller was unable to answer some of the most basic questions asked by Plaintiff's counsel. Miller was a sham witness who was offered by Defendant in a last ditch desperate attempt to avoid its unmistakable obligation to provide a 30(b)(6) witness on Category 43 as contemplated by Plaintiff, and certainly well understood by Defendant. Given the extensive background of this 30(b)(6) witness topic and the actions of Defendant to date, the Court finds that Defendant selected Miller as its Rule 30(b)(6) witness in bad faith.

**iv. Sanctions**

Pursuant to Rule 37(d)(1), the "court where the action is pending may, on motion, order sanctions if … a person designated under Rule 30(b)(6) … fails, after being served with proper notice, to appear for that person's deposition[.]" Fed. R. Civ. P. 37(d)(1)(A)(i). Sanctions may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). "Instead of or in addition to" the evidentiary sanctions, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses paid unjust." Fed. R. Civ. P. 37(d)(2)(C) (emphasis added).

"Producing an unprepared witness is tantamount to a failure to appear at a deposition." *Fabiano Shoe Co., Inc.*, 201 F.R.D. at 39; *see also Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3rd Cir. 2000) ("if a Rule 30(b)(6) witness is unable to give useful information, he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it"); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197-98 (5th Cir. 1993) (same). Miller was clearly unprepared, and the Court finds this amounted to a failure to appear as previously ordered. (*See* ECF Nos. 104 at 7, 114 at ¶ 5.)

"[I]n a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation." *Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) (citing *Rosenruist–Gestao E Servicos LDA v. Virgin Enter. Ltd.*, 511 F.3d 437, 445 (4th Cir. 2007)). Defendant selected Miller to be its representative. This is a decision Defendant must stand by. The Court **GRANTS** Plaintiff's Motion for sanctions pursuant to Rule 30(d)(1). Accordingly, the Court hereby **BINDS** Defendant to all testimony offered by Miller during her deposition as a 30(b)(6) witness. Additionally, the Court **BARS** Defendant from offering any contradictory or alternative evidence to any testimony offered by Miller. Such a sanction is warranted to prevent Defendant from benefiting from its manipulation of the discovery process. *See Tyco Intern. Ltd.*, 253 F.R.D. at 526 (citing *Fabiano Shoe Co.*, Inc., 201 F.R.D. at 36) (purpose of having knowledgeable deponent is to prevent a party from "conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.") Given the Court's conclusion that the scope of Category 43 was not as restricted as Defendant now argues, all objections made by Defendant as to scope are **OVERRULED**.

Rule 37 mandates the offending party pay reasonable fees and costs "unless the failure was substantially justified or other circumstances make an award of expenses unjust" notwithstanding that Plaintiff has not moved for such a sanction. Fed. R. Civ. P. 37(d)(2)(C). The Court finds that an award of fees and costs is warranted here. Defendant's

present argument that the topic was suddenly narrow, rendering Miller an appropriate deponent, falls woefully short of substantial justification. The Court is also unaware of any circumstance that would render a sanction of attorney's fees and costs unjust. Thus, the Court **ORDERS** Defendant pay for Plaintiff's "reasonable expenses, including attorney's fees, caused by the failure" to appear as ordered, as articulated further below. Fed. R. Civ. P. 37(b)(2)(C).

### B. 2012 Memorandum

#### i. Argument

Plaintiff argues Defendant has waived any privilege that may be asserted over the 2012 Memo because Defendant is utilizing reliance of counsel as a defense to Plaintiff's bad faith claims, citing *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 279 Cal. Rptr. 116 (Cal. Ct. App. 1991).[12] (Mot. at 9:22-10:4.) Plaintiff claims the "evidence establishes that [Defendant] relied on the memo to determine how to apply the" Subject Statutes. (*Id.* at 10:5-7.) Plaintiff directs the Court to the deposition of Mr. Kumatz, where he describes locating the 2012 Memo. (*Id.* at 9:6-17.) Plaintiff also argues the 2012 Memo should be produced because Defendant's privilege logs were misleading and did not comply with court orders. (*Id.* at 8:2-9:20.)

Defendant argues that Plaintiff has waived any objection she may have to Defendant's privilege claims regarding the 2012 Memo because her time to do so has long passed. Defendant asserts that because the 2012 Memo first appeared in its initial privilege log served on Plaintiff on April 24, 2018, Plaintiff had 30 days to bring the issue of the 2012 Memo to the Court's attention, citing the undersigned's Chambers Rules. (Opp'n at 9:21-10:4.) Since Plaintiff has waited nearly seven months after being first alerted to the 2012 Memo and the declared privilege, any objection to that designation is untimely.

---

[12] Plaintiff asserts that the 2012 Memo is not protected by the work product doctrine. (Mot. at 10:5.) However, Defendant did not cite the work product doctrine. Rather, Defendant claimed the document was protected by the attorney-client privilege. (*See* Opp'n at Ex. 2.)

Defendant argues, in the alternative, that it "has not asserted advice of counsel as an affirmative defense" in this matter and thus any waiver based on that defense is inapplicable. (*Id.* at 10:11-15.) Lastly, Defendant argues that even if the privilege log entries were deficient, no waiver results citing *Catalina Island Yacht Club v. Superior Court*, 195 Cal. Rptr.3d 694 (Cal. Ct. App. 2015).

### ii. Legal Standard

In a federal action in which state law supplies the rule of decision, such as this case, state law governs privilege claims. Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993). The attorney-client privilege attaches to "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid. Code § 952; *Moeller v. Superior Court*, 69 Cal. Rptr.2d 317, 320 (Cal. Ct. App. 1997). "The defense of advice of counsel generally waives the attorney-client privilege as to communications and documents relating to the advice." *State Farm Mut. Auto Ins. Co.*, 279 Cal. Rptr. at 119. "[A]n insurer is not required to affirmatively allege advice of counsel as a defense to allegations" in an insurance bad faith action. *Id.* "However, an insurer does not waive the attorney-client privilege where it is not defending itself on the basis of the advice it received." *Transamerica Title Ins. Co. v. Superior Court*, 233 Cal. Rptr. 825, 829 (Cal. Ct. App. 1987).

In California, a "court may not impose a waiver of the attorney-client privilege or work product doctrine as a sanction for failing to provide … an adequate privilege log." *Catalina Yacht Club*, 195 Cal. Rptr.3d at 702. Available sanctions are monetary, "evidence, issue, and even terminating sanctions[.]" *Id.*

### iii. Analysis

Plaintiff's objection over the privilege designation is timely notwithstanding the 2012 Memo first appearing on a privilege log in April of 2018. Plaintiff was first made aware of the 2012 Memo and its privilege designation in April of 2018. The 2012 Memo was identified as "Legal memorandum re: CA AB 1747" as attached to two separate emails

drafted in 2016. (*See* Opp'n at Ex 2.) On May 1, 2018, Plaintiff timely objected to the entire privilege log as being insufficient. (*See id*. at Ex. 3.) On May 15, 2018, Defendant lodged amended privilege logs with Plaintiff. (*See id*. at Ex 4.) This amended privilege log clarified that the "legal memorandum" was attached to an email about a "California Market Conduct Exam" audit response. (*Id*. at 41-42.) On May 16, 2018, counsel for Plaintiff sent an email to counsel for Defendant requesting clarification on several items other than the 2012 Memo. (*See id*. at Ex. 6.) The email makes no mention of the log entry for the 2012 Memo.

On May 18, 2018, Plaintiff sent correspondence to Defendant articulating that she believed the documents identified on the amended privilege log as numbers one and two ought to be produced. (*See id*. at Ex. 7.) Plaintiff stated that she saw "no need to file a motion to compel production" at that time regarding the remaining log items, including the 2012 Memo entries. (*See id*. at 2.) At oral argument, Plaintiff's counsel explained this was so because it is understood that California market examinations are rather routine, are "quasi-regulatory," and that documents related to such examinations are "clearly privileged."[13] (Tr. at 5:8-6:16.) Given the information provided to her, Plaintiff reasonably believed the "legal memorandum" was drafted in 2016 in response to a contemporaneous California market examination, and properly logged as privileged and thus made no further inquiry. Pursuant to the undersigned's chambers rules, and under normal circumstances, Plaintiff had thirty days, until June 14, 2018, to bring to the Court's attention a dispute regarding the 2012 Memo's production.

On January 10, 2019, Defendant served an amended privilege log that dramatically altered the entries of the 2012 Memo.[14] The log entry now identified Mr. Kumatz as the author of the 2012 Memo, identified that it was drafted on October 18, 2012, and identified

---

[13] Also at oral argument, Defendant agreed largely with Plaintiff's representation of California market examinations. (*See* Tr. at 34:2-10.)

[14] During the January 23, 2019 conference call, counsel for Defendant claimed that "absolutely nothing" had been changed regarding the 2012 Memo entries "from then until now," which is completely false.

that it was received by twenty-eight people. (*See* Opp'n at Ex. 11 at 82.) This dramatically alters the nature of the entries and puts it squarely at issue in the present litigation. Given the newly available information, Plaintiff had from January 10, 2019 to bring this issue to the Court's attention, rendering the issue timely.

In any event, the relief sought by Plaintiff, compelled production of the 2012 Memo, is unavailable because in California a "court may not impose a waiver of the attorney-client privilege or work product doctrine as a sanction for failing to provide … an adequate privilege log." *Catalina Yacht Club*, 195 Cal. Rptr.3d at 702. Available sanctions are monetary, "evidence, issue, and even terminating sanctions[.]" *Id*.

Moving on to Plaintiff's second argument, Plaintiff repeatedly states that Defendant "relied on the advice of its counsel as a defense to claims that it failed to apply" the Subject Statutes. Given this, Plaintiff asserts the 2012 Memo is no longer protected by the attorney-client privilege. (Mot. at 9:24-25; 10:11-12; 10:13-15; 10:22-11:1.) However, Plaintiff provides no evidence to support this assertion outside of the citation to the Mr. Kumatz deposition, which is unhelpful. Mr. Kumatz's testimony, as cited by Plaintiff, went as follows:

> Q: Okay. Did you find any written memorandum that you had done? Anything in writing?
> A: Yes.
> …
> Q: Okay. And what things – can you tell me any more specifically? You found e-mails and some kind of writings, some kind of – would it be fair to call them legal memorandum?
> A: Yes.
> …
> Q: Okay. And can you give me some indication as to when those e-mails and when that legal memorandum were, in fact, created?
> A: Yes.
> Q: Okay. When?
> A: The memorandum was in the second half of 2012, I believe. And the e-mails, I believe, were in 2016.

(Mot. at Ex. 2 117:10-118:6.) The portion of the transcript provided to the Court merely demonstrates that Mr. Kumatz was aware of the 2012 Memo and when it was created. The

cited testimony does not, in any way, demonstrate that Defendant has asserted an advice of counsel defense. Without substantially more evidence demonstrating that Defendant is attempting to assert the advice of counsel defense, the Court cannot so find.

Accordingly, the Court **DENIES** Plaintiff's motion to compel production of the 2012 Memo.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion. Accordingly, the Court **ORDERS** as follows:

(1) Defendant is **BOUND** to all testimony offered by Miller during her deposition as a 30(b)(6) witness;

(2) Defendant is **BARRED** from offering any contradictory or alternative evidence to any testimony offered by Miller;

(3) On or before **April 17, 2019**, Plaintiff shall file an accounting of all fees and costs associated with the Miller deposition; and

(4) Defendant may file an objection to Plaintiff's fees and costs on or before **April 24, 2019**.

**IT IS SO ORDERED**.

Dated: April 10, 2019

Hon. William V. Gallo
United States Magistrate Judge