1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE L. MORIARTY, as
Successor-In-Interest to Heron D.
Moriarty, Decedent, on Behalf of
the Estate of Heron D. Moriarty,
and on Behalf of the Class,

                          Plaintiff,

v.

AMERICAN GENERAL LIFE
INSURANCE COMPANY, et al.,

                          Defendants.

Case No.:  3:17-cv-1709-BTM-WVG

**ORDER**

**[ECF Nos. 134, 135, 136, 145]**

Before the Court is Plaintiff's motion for summary judgment (ECF No. 134 ("Pl.'s MSJ")), Defendant American General Life Insurance Company's motion for summary judgment (ECF No. 135 ("Def.'s MSJ")), American General's motion to stay the ruling on class certification pending a ruling on its motion for summary judgment (ECF No. 136), and American General's objections to Magistrate Judge Gallo's sanctions order (ECF No. 145).   For the reasons discussed below, Plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, American General's motion for summary judgment is **GRANTED IN PART**

**AND DENIED IN PART**, American General's motion to stay is **DENIED AS MOOT**, and American General's objections are **OVERRULED**.

## I.  BACKGROUND

### A.  Undisputed Facts

In September 2012, the decedent, Heron D. Moriarty ("Mr. Moriarty"), took out a term life insurance policy with American General.  (ECF No. 18 ("FAC"), ¶ 15; Def.'s MSJ, 2:3–6.)  American General did not provide Mr. Moriarty with the right to designate someone other than himself to receive notices of pending lapses in his policy.  On March 24, 2016, American General was unable to process Mr. Moriarty's automatic monthly payment because the associated bank account was closed.  (FAC ¶ 27; Def.'s MSJ, 2:23–3:2.)  On May 22, 2016, American General terminated the policy as of the date of the lapsed payment: March 20, 2016.  (Def.'s MSJ, Exh. 13.)  Mr. Moriarty passed away on May 31, 2016.  (*Id.* at Exh. 14.)  Plaintiff submitted a claim on Mr. Moriarty's life insurance policy on June 22, 2016.  (*Id.* at Exh. 16.)  American General denied the claim on July 6, 2016 because the policy had terminated as of March 20, 2016, which was prior to his death.  (*Id.* at Exh. 17.)

### B.  Disputed Facts

American General contends that it sent a letter to Mr. Moriarty and Plaintiff (his wife) on March 24, 2016, notifying them of the unsuccessful automatic payment.  (*Id.* at 2:2–6.)  The letter also warned Mr. Moriarty and Plaintiff that the policy could lapse if a new payment was not made.  (*Id.* at Exh. 8.)  It explained that Mr. Moriarty could apply to reinstate the policy by remitting the missing monthly payment.  (*Id.*)  Plaintiff disputes that either she or Mr. Moriarty received this letter.  (Pl.'s MSJ at 6:3–4; ECF No. 134 ("Pl.'s Decl."), ¶ 8; Def.'s MSJ, Exh. 7, 153:9–19, 154:13–18.)  Plaintiff contends that she was not aware of any unpaid policy premiums but started to suspect that some bills might be unpaid in April 2016.  (Pl.'s Decl., ¶ 9.)

## C.  California Insurance Code

This case boils down to whether two provisions of the California Insurance Code, §§ 10113.71 and 10113.72, apply to Mr. Moriarty's policy.  These code sections went into effect January 1, 2013, after Mr. Moriarty's policy was issued. The provisions guarantee a 60-day grace period after nonpayment of a premium, § 10113.71(a), the right to designate someone to receive notices of lapsed payments, § 10113.72(a)–(b), and a 30-day notice of a lapsed payment to both the policy owner and aforementioned designee before the policy may be terminated for nonpayment, §§ 10113.71(b), 10113.72(c).  Plaintiff argues that these provisions apply to Mr. Moriarty's policy and American General argues they do not.

## D.  Procedural Posture

Plaintiff, individually, on behalf of Mr. Moriarty's estate, and on behalf of the proposed class, sues American General for various claims stemming out of its purported violation of California Insurance Code §§ 10113.71 and 10113.72.[1] Plaintiff brought suit in San Diego Superior Court and the case was later removed to this Court.  Plaintiff and American General filed cross-motions for summary judgment based on their respective perspectives of the applicability of the insurance code provisions.  American General filed a motion to stay the ruling on class certification until this Court rules on its motion for summary judgment. American General also filed objections to Judge Gallo's sanctions order.

## II.  SUMMARY JUDGMENT: STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby,*

---

[1] Plaintiff also sued Bayside Insurance Associates, Inc. for negligence.

*Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).   A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial.   *Id.* at 322–23.   Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains.   *Celotex*, 477 U.S. at 314.   When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  SUMMARY JUDGMENT: DISCUSSION

Plaintiff argues that summary judgment is proper because California Insurance Code §§ 10113.71 and 10113.72 apply to Mr. Moriarty's policy and American General violated those provisions.   Plaintiff argues first that the statutes apply to all policies in force in 2013.   (Pl.'s MSJ, 8:25–11:28; 14:4–22:15.)   Plaintiff argues, in the alternative, that even if the statutes are not applicable retroactively, they are nevertheless applicable because Mr. Moriarty renewed his policy after the statutes became effective.   (*Id.* at 12:1–14:3.)   The Court agrees with the latter argument.

### A. Retroactive Theory

The California Supreme Court recently decided to review the issue of retroactivity in *McHugh v. Protective Life Insurance*, No. S259215.   (*See* ECF No.

176, Exhs. 1–2.)  The California Supreme Court will decide whether the Legislature intended for "the provisions of Insurance Code sections 10113.71 and 10113.72 . . . to apply, in whole or in part, to life insurance policies in force as of January 1, 2013, regardless of the original date of issuance of those policies." (*Id.* at Exh. 2.)   Given the pending and conclusive answer to the question of retroactivity, this Court will not decide whether §§ 10113.71 and 10113.72 apply to preexisting policies.

## B. Renewal Theory

Plaintiff presents an alternative theory: that Mr. Moriarty's policy renewed after the statutes' effective date and therefore incorporated all provisions of existing insurance law.  This renewal theory is not involved in *McHugh*.  *See McHugh v. Protective Life Ins.*, 40 Cal. App. 5th 1166 (2019).   Persuasive precedent and the plain language of Mr. Moriarty's policy both support the conclusion that the policy was renewed after January 2013.

It is settled law in California that a life insurance policy incorporates into its terms all existing law.  *Interinsurance Exch. of Auto. Club. of S. Cal. v. Ohio Cas. Ins. Co.*, 58 Cal. 2d 142, 148–49 (1962).  Similarly, a renewed life insurance policy will incorporate existing law as of the date of renewal into its terms.  *Stephan v. Unum Life Ins. Co. of Am.*, 691 F.3d 917, 927 (9th Cir. 2012).   Federal courts interpreting California appellate decisions have concluded that a term life insurance policy is renewed at every premium payment.  *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1027 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723, 735–36 (C.D. Cal. Feb. 21, 2019); *Siino v. Foresters Life Ins. & Annuity Co.*, No. 20-cv-02904-JST, at 9 (N.D. Cal. Sept. 1, 2020).[2]  American General rejects these interpretations.

_____

[2] These cases analyzed *Argonaut Ins. Co. v. Colonial Ins. Co.*, 70 Cal. App. 3d 608 (1977) and *Modglin v. State Farm Mut. Auto. Ins. Co.*, 273 Cal. App. 2d 693 (1969).

The Court finds the *Thomas*, *Bentley*, and *Siino* decisions on incorporation of §§ 10113.71 and 10113.72 through policy renewal persuasive and adopts them. Additionally, the plain text of Mr. Moriarty's policy says the policy renewed annually.

It is undisputed that Mr. Moriarty made all monthly payments from the policy's issuance in September 2012 until the period preceding March 20, 2016.  American General argues that these monthly payments were not "renewals" because the policy could not be renewed until after its "Initial Expiry Date" of September 20, 2037.  (Def.'s MSJ, 2:6–13, Exh. 3, p. 14.)  But that assertion is belied by the plain language of Mr. Moriarty's policy, which provides for "annual renewal premiums" that were to be made on every anniversary of the policy's issuance.  (*Id.* at Exh. 3, pp. 14–15, 18.)  American General drafted this policy, which, by its very terms, refers to "annual renewal premiums."  (*Id.* at Exh. 3, p. 14.)

When Mr. Moriarty paid his "annual renewal premium" in 2013,[3] the policy renewed on the anniversary of its issuance (September 20, 2013) and thus incorporated the protections of §§ 10113.71 and 10113.72, which became effective earlier that year.  The life insurance policy in this case is indistinguishable from the policy in *Siino*.  There, the defendant life insurance company raised the same arguments American General does here as to why the renewal principle is inapplicable.  I reject those arguments for the same reasons expressed by Judge Tigar in his well-reasoned opinion in *Siino*.  No. 20-cv-02904-JST, at 9–11.  In short, I agree with my colleagues in the Southern, Central, and Northern Districts of California that §§ 10113.71 and 10113.72 are incorporated into term life insurance policies upon the policies' renewal.  American General was thus obligated to provide Mr. Moriarty (1) a 60-day grace period from the unpaid

---

[3] The fact that the annual renewal premium was paid in monthly installments does not change the Court's analysis.  *See Thomas*, 2019 WL 6728262, at *8.

premium's due date, (2) the right to designate someone to receive notices of lapse or termination of the policy, and (3) a notice to the policy holder and his designee of pending lapses before terminating the policy for nonpayment of a premium.

### 1. 60-Day Grace Period

Under § 10113.71(a), a 60-day grace period runs from the date of an unpaid premium's due date.  There is no dispute over the date of Mr. Moriarty's missed premium payment (March 20, 2016) and the date American General decided to terminate the policy (May 22, 2016).  More than 60 days elapsed between these two dates and the policy appears to have remained in force during this grace period.  Though American General terminated the policy effective as of the date of the missed payment, American General waited over 60 days to enforce that termination, which is precisely what a grace period is.  Accordingly, the Court **GRANTS** American General's motion for summary judgment on the fact that American General complied with § 10113.71(a).  Plaintiff's contrary motion on this fact is **DENIED**.

### 2. Right to Designate

Section 10113.72 requires that every life insurance policy "applicant . . . [be] given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium." § 10113.72(a).  The insurer must "provide each applicant with a form to make the designation."  *Id.*  The insurer must also "notify the policy owner annually of the right to change the written designation or designate one or more persons."  § 10113.72(b).  The policy cannot lapse or terminate for nonpayment without proper notice to the policy owner and the designees of the pending lapse.  § 10113.72(c).

It is undisputed that American General never provided Mr. Moriarty with the right to designate someone to receive notices of pending lapses in his policy. American General argues that this provision applies only to "subsequently-issued" policies and not Mr. Moriarty's policy because Mr. Moriarty was not an "applicant"

for life insurance when § 10113.72 took effect.  (Def.'s MSJ, 10:2–19.)  This is uncompelling because subsection (b) covers this precise situation: "The insurer shall notify the policy owner annually of the right to . . . designate one or more persons."  § 10113.72(b).  A policy owner is thus entitled to be informed annually of the right to designate another person to receive the relevant notices.

American General was obligated to provide this notice to Mr. Moriarty annually and failed to do so.  Plaintiff's motion for summary judgment is **GRANTED** on the fact that American General violated § 10113.72(b).  American General's motion for summary judgment is **DENIED** as to that fact.

### 3. 30-Day Notice of Pending Lapse

Section 10113.71(b)(1) requires that the insurer give notice to the policy holder, the aforementioned designee, and "a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium."  This notice must be given by "first-class United States mail."  § 10113.71(b)(3).  Section 10113.72(c) reiterates the same, prohibiting termination for nonpayment of premium "unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated" by first-class United States mail.  It is undisputed that American General terminated Mr. Moriarty's policy for nonpayment of premium.

American General asserts that on March 24, 2016, it mailed Mr. Moriarty a letter notifying him that the March 20, 2016 premium payment had been unsuccessful because the bank account for the payment had been closed.  (Def.'s MSJ, 18:24–19:1, Exh. 8.)  This letter was also addressed to Plaintiff.  (*Id.* at Exh. 8.)  Plaintiff asserts that she never received this letter and suspects that Mr. Moriarty did not receive it either.  (Pl.'s MSJ 6:3–4; Pl.'s Decl., ¶ 8; Def.'s MSJ, Exh. 7, 153:9–19, 154:13–18.)  American General does not provide any evidence showing the letter was properly mailed through first-class United States mail.

Whether American General properly notified Mr. Moriarty thus remains a dispute of material fact and summary judgment would be improper.

Even if the Court accepts American General's version of events — that it properly mailed a notice of lapsed payment on March 24, 2016 to who would be Mr. Moriarty's designee — American General breached §§ 10113.71(b) and 10113.72(c). These provisions mandate that the policy's effective termination date be at least 30 days after the notice is mailed. American General's May 22, 2016 decision letter terminated Mr. Moriarty's policy as of March 20, 2016. This termination is void under these provisions because it became effective prior to April 23, 2016, or 30 days after the March 24, 2016 letter. American General's effective termination date was in violation of §§ 10113.71(b)(1),(3) and 10113.72(c).

## C. First Cause of Action: Declaratory Relief

Plaintiff seeks a declaratory judgment "to the effect that California Insurance Code Sections 10113.71 and 10113.72 applied as of January 1, 2013 to policies issued or delivered prior to January 1, 2013." (FAC, ¶ 74.) Given the California Supreme Court's pending answer on this exact question, the Court **DENIES WITHOUT PREJUDICE** both parties' motions for summary judgment on this cause of action.

## D. Second Cause of Action: Breach of Contract

Breach of contract requires demonstrating the "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted). "Implicit" in the damages requirement is that "the defendant's breach *caused* the plaintiff's damage." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352 (2009). American General argues that Plaintiff was not damaged by American General's breach because

///

///

Plaintiff and Mr. Moriarty "received the benefits" of the statutes' protections. (Def.'s MSJ, 18:20–19:1.)

First, as discussed above, even in the most favorable light to American General, it violated the 30-day pre-termination notice requirement of §§ 10113.71(b) and 10113.72 by imposing an effective policy termination date fewer than 30 days after it mailed the March 24, 2016 letter.  Whether this violation actually caused damage to Plaintiff need not be decided now.  Disputes of material fact exist as to whether American General actually properly mailed the March 24, 2016 letter and whether Plaintiff would have been Mr. Moriarty's designee.  (Pl.'s MSJ, 6:3–4; Pl.'s Decl., ¶ 8; Def.'s MSJ, Exh. 7, 153:9–19, 154:13–18.)  Given the disputes of material fact, summary judgment would not be proper here.  The Court **DENIES** summary judgment for both parties on the breach of contract claim for violations of §§ 10113.71(b) and 10113.72.

Second, American General complied with § 10113.71(a)'s 60-day grace period requirement.   The Court **GRANTS** summary judgment for American General and **DENIES** it for Plaintiff on the breach of contract claim for violation of § 10113.71(a).

Finally, while American General breached its obligation to give Mr. Moriarty the right to establish designees under § 10113.72, it argues that Plaintiff still had actual notice of the lapse such that American General did not cause her damage. (Def.'s MSJ, 19:14–17.)  But a dispute of material fact exists as to when Plaintiff received actual notice of the lapse.  Plaintiff asserts that she never received the March 24, 2016 letter.  She also states she never received the May 22, 2016 termination letter because she was not living at the address where it was sent.  (*Id.* at Exh. 7, 203:14–25.)  American General argues that Plaintiff had actual notice of the lapsed payment on April 25, 2016 when she emailed her insurance broker with the following: "Can you please give me the information on our life insurance.  I need to pay it before it expires.  I didn't realize it was connected to an account that

we closed." (*Id.* at Exh 12.)  But Plaintiff explained in her deposition that she knew the bank account associated with the life insurance automatic payments was closed but was not sure whether Mr. Moriarty had paid the premium payment from another source.  (*Id.* at Exh. 7, 172:15–173:19.)  Under Plaintiff's version of events, she may not have received actual notice of the missed payment until just prior to July 1, 2016 when an American General representative told her that the policy had terminated for nonpayment.  (*Id.* at Exh. 15; *see also id.* at Exh. 16.)  And though American General asserts that Plaintiff would have been Mr. Moriarty's § 10113.72 designee, (*id.* at 19:19–28), Plaintiff contends that Mr. Moriarty would have designated Plaintiff's mother instead, (*id.* at Exh. 7, 277:11–22).

Disputes of material fact thus exist as to whether Plaintiff would have been Mr. Moriarty's § 10113.72 designee and if she had actual notice of the March 20, 2016 lapsed payment.  Accordingly, both motions for summary judgment are **DENIED** with respect to breach of contract under the § 10113.72(a)–(b) provisions.

### E. Third Cause of Action: Bad Faith

A bad faith claim asserts a breach of the implied covenant of good faith and fair dealing that proximately caused actual damages.  *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161, 1164 (9th Cir. 2002).  This implied covenant imposes a duty on the insurer "not to withhold unreasonably payments due under a policy."  *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 920 (1978) (citation omitted).  American General argues that it must win on summary judgment because it "acted reasonably" given the uncertainty of applicability of the relevant insurance code provisions to pre-2013 life insurance policies.  (Def.'s MSJ, 20:21–25.)  A "mistaken withholding of policy benefits" cannot serve as the basis of a bad faith claim "if reasonable or if based on a legitimate dispute a[s] to the insurer's liability under California law."  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1280–81 (1994).

///

The California Court of Appeal's *McHugh* opinion and the California Supreme Court's 2020 decision to review it supports American General's position. Also, American General may have been reasonable under a renewal theory since "the California Department of Insurance . . . and the California insurance industry had taken the position that the Statutes did not apply to policies in force prior to the Statutes' effective date, even if renewed after the effective date." *Bentley v. United of Omaha Life Ins. Co.*, 2020 WL 3978090 (C.D. Cal. Mar. 13, 2020). However, given the prejudice to Plaintiff in light of the failed Rule 30(b)(6) deposition of Ms. Miller — as discussed in Judge Gallo's sanction order analyzed *infra* — American General's motion for summary judgment on bad faith is **DENIED** without prejudice.

## F. Final Cause of Action: UCL

Plaintiff's final cause of action is for violation of California's Unfair Competition Law ("UCL"), which prohibits unlawful and unfair business practices. Cal. Bus. & Profs. Code §§ 17200, et seq. "An unfair business practice is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)). "[V]irtually any state, federal, or local law can serve as the predicate" for a UCL claim. *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (quoting *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508 (2002)). The predicate violations of law complained of here are of §§ 10113.71–72. (FAC, ¶ 109.) Plaintiff requests injunctive relief and restitution. (*Id.* at ¶¶ 111–12.)

American General argues that Plaintiff does not have standing. Standing requires that Plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The injury must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

With respect to injunctive relief, American General argues that Plaintiff does not have standing because she cannot show "a sufficient likelihood that [s]he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983); Def.'s MSJ, 22:15–26. Plaintiff does not appear to have other pre-2013 policies with American General such that she could be wronged again in a similar way. The UCL provides for "public injunctive relief," which "is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (citation omitted). American General argues that public injunctive relief is unavailable because Plaintiff does not meet the Article III standing threshold. (ECF No. 151, 9:25–10:6.) The Court agrees that while Plaintiff may have general standing under California law, she does not have Article III standing that would give this Court jurisdiction over the UCL claim for an injunction. But that does not mean that the Court should dismiss this claim. Plaintiff originally filed her case in state court where there was standing and jurisdiction to issue an injunction. American General removed the case to federal court. It strikes the Court as patently unfair for American General, though technically correct, to now seek dismissal on the issue of Article III standing and the lack of jurisdiction. *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115–16 (9th Cir. 2017), *superseded on other grounds by Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (en banc). Where a party removes a case and there is no jurisdiction, the case is remanded. 28 U.S.C. § 1447(c); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). The parties are to show cause at the end of this case why the UCL claim for an injunction should not be remanded.

With respect to restitution, California expressly authorizes restitution as a remedy for a UCL claim where "any money or property . . . may have been acquired

by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.  Restitution can be either an equitable or legal remedy depending on the nature of the underlying claim. *Great-West Life & Annuity Inc. Co. v. Knudson*, 534 U.S. 204, 21213 (2002).   Plaintiff seeks "restitution of money or property acquired by Defendants by means of [the unfair] business practices." (FAC, ¶ 111.)  But Plaintiff does not allege that American General's failure to comply with the insurance statutes — the unfair business practices alleged here — induced Mr. Moriarty to remit the monthly premium payments.  Because Plaintiff has failed to allege that American General "acquired" the premium payments "by means of such unfair competition," Plaintiff has not established a basis for restitutionary relief. *See Kwikset Corp. v. Super. Court*, 51 Cal. 4th 310, 336 (2011)).  The restitutionary claim must thus be dismissed.  American General is **GRANTED** and Plaintiff is **DENIED** summary judgment on the UCL restitution claims.   Both parties are **DENIED** summary judgment on the UCL injunction claims.

### G. Plaintiff's Request for Judicial Notice

In her opposition to American General's motion for summary judgment, Plaintiff requests the Court to take judicial notice of a filing made by the California Department of Insurance (CDI) in a Northern District of California case.  (ECF No. 148-1.)  The request is **DENIED WITHOUT PREJUDICE** because the California Supreme Court's pending decision in *McHugh* may render it moot.

## IV.  AMERICAN GENERAL'S OBJECTIONS

On April 10, 2019, Magistrate Judge Gallo issued an order granting in part and denying in part Plaintiff's Fed. R. Civ. P. 37 motion requesting discovery sanctions against American General.  (ECF No. 138 ("Order").)  On April 24, 2019, American General, pursuant to Fed. R. Civ. P. 72, filed objections to the Order. (ECF No. 145 ("Objections").)  The Court **OVERRULES** the objections.

### A. Background

The order centers on American General's conduct relating to the deposition

of Michelle Miller, American General's Rule 30(b)(6) witness on the topic of "implementation and application" of the above-discussed California Insurance Code provisions.  On April 3, 2018, Plaintiff noticed a deposition for American General's person most knowledgeable on the "implementation and application" topic.[4]  (ECF No. 146 ("Pl.'s Opp."), Exh. A.)  On November 5, 2018, Plaintiff noticed several depositions, including one on the same topic.[5]  (Objections, Exh. 3.)  American General objected to the latter notice, arguing that the topic was "vague and ambiguous" and would elicit "cumulative and/or duplicative" testimony.  (*Id.* at Exh. 9.)  Judge Gallo overruled American General's objections and ordered the "implementation and application" deposition to move forward.  (ECF No. 104.)

American General later sought a protective order as to this deposition, asserting that "[p]reparing and presenting a witness on this topic . . . turns the time-consuming and expensive task of 30(b)(6) depositions into a wasteful and burdensome task."  (ECF No. 107, 16:19–24.)  It argued that this deposition would be "cumulative and harassing."  (*Id.* at 16:24–17:1.)  Judge Gallo denied American General's motion for a protective order, calling it a "thinly veiled motion for reconsideration."  (ECF No. 117, 13:5–6.)

The deposition took place on January 3, 2019.  (Objections, Exh. 11.)  American General chose Ms. Miller as its person most knowledgeable on implementation.  She had worked at American General for around 40 years and her present role was as a "director in the customer service system support team." (*Id.* at Exh. 11, 28:1–12.)  She learned about the deposition the day before it took place and prepared for eight hours.  (*Id.* at Exh. 11, 36:11–23.)  Ms. Miller lacked the requisite knowledge to answer many of Plaintiff's questions.  American General frequently objected that Plaintiff's questioning exceeded the scope of the

---

[4] "Category 6."
[5] "Category 43."

1  deposition.

2       Plaintiff, finding Ms. Miller's knowledge and preparation inadequate, moved

3  for sanctions under Rule 37.  (ECF No. 123.)  She asked Judge Gallo to either

4  "overrule the scope objections preserving [American General's] testimony on these

5  subjects as established and issue a preclusion order prohibiting any further

6  evidence by [American General] on the questions posed" or the opportunity to

7  depose an adequate 30(b)(6) witness on the same topic.  (*Id.* at 7:15–21.)

8  American General opposed the motion, arguing that Ms. Miller was prepared for

9  and adequately answered questions about how the company "implemented the

10  provisions of the Statutes into [American General's] . . . computer systems," which

11  was the extent of the scope of this deposition.  (ECF No. 124, 5:26–6:6.)

12       Judge Gallo granted in part and denied in part Plaintiff's motion for

13  sanctions.[6]   He found that "Miller was not adequately prepared or sufficiently

14  knowledgeable to testify as a Rule 30(b)(6) witness regarding the implementation

15  and application of the Subject Statutes."  (Order, 6:14–16.)  Judge Gallo compared

16  American General's narrow definition of "implementation" after the deposition to its

17  previous contrary assertion that "implementation" was a vague and broad topic.

18  (*Id.* at 10:1–11:19.)  He concluded that American General's inconsistent positions

19  were indicative of its bad faith, that the topic of the deposition was not as narrow

20  as American General argued, and that Ms. Miller was a sham witness.  (*Id.* at

21  11:20–12:17, 13:22–23.)

22       Judge Gallo ordered that American General would be bound by Ms. Miller's

23  deposition testimony.  (*Id.* at 13:14–16.)  He also barred American General "from

24  offering any contradictory or alternative evidence to any testimony offered by

25  Miller," so that American General would not benefit[] from its manipulation of the

---

[6] Plaintiff sought sanctions on other discovery matters as well, which the Court does not address since neither party objected to Judge Gallo's rulings on them.

discovery process." (*Id.* at 13:16–19.)   American General objects to the Order. (Objections.)

## B. Standard of Review

Upon an objection to a magistrate judge's ruling on a nondispositive pretrial matter, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  The "contrary to law" standard applies to a magistrate judge's purely legal determinations.  *Comput. Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999).  The "clearly erroneous" standard applies to factual determinations and discretionary decisions.  *Id.*; *see also Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993) (". . . [R]eview under the 'clearly erroneous' standard is significantly deferential, 'requiring a definite and firm conviction that a mistake has been committed.'").

## C. Discussion

The Court finds no clear error in Judge Gallo's Order.  First, Judge Gallo did not "fail[] to find the requisite prejudice to Plaintiff necessary to impose a preclusion sanction."  (*See* Objections, 10:6–18.)   Judge Gallo's Order addresses the prejudice to Plaintiff had sanctions not be granted.  (Order, 4:27–28 ("Plaintiff articulated that taking additional discovery at this time is unacceptable as dispositive motions are due imminently."); *id.* at 13:17–19 ("Such a sanction is warranted to prevent Defendant from benefiting from its manipulation of the discovery process.").)  Further, the Court agrees with Plaintiff's contention that a finding of prejudice to Plaintiff was "implicit" in Judge Gallo's Order.  (ECF No. 146, 14:20–21.)  Plaintiff would soon be facing American General's motion for summary judgment on the bad faith claim.

Second, Judge Gallo was not required to address a series of factors from *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997), as American General claims.  (*See* Objections, 10:19–12:9.)  These factors are required only

when the "sanction amount[s] to dismissal of a claim." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).  The testimony to which American General was bound by Judge Gallo did not effectively decide any claim in this case.

Third, the Court rejects the argument that the "standard of preparedness to which [Judge Gallo] held American General and Miller is contrary to law." (*See* Objections, 16:20–20:15.)  This argument is belied by American General's original assertion that preparing a witness for this deposition would be time-intensive and burdensome and Ms. Miller's subsequent admission that she had been selected as the 30(b)(6) witness just the day before the deposition and prepared only eight hours for it.  Further, as described in the order, Ms. Miller's deposition transcript is rife with instances where she was unable to answer questions that were within the scope of the testimony and for which she should have been prepared.  (Order, 6:16–9:28.)  Ms. Miller was unprepared.  The standard of preparedness to which Judge Gallo held American General was not contrary to law.

Fourth, the Court disagrees that Judge Gallo "imposed [his] own, unspoken interpretation of [implementation and application] after the deposition." (*See* Objections, 1:4–5.)  American General offered the *Merriam-Webster Dictionary* definitions of these terms to support its narrow interpretation that implementation and application of the relevant statutes concerned only how American General incorporated statutory changes into its computer systems.  (ECF No. 124, 6:21–28.)  Such a narrow interpretation contravenes common sense and completely deviates from the broad interpretation American General initially asserted.  (*See* Objections, Exh. 9; ECF No. 107, 16:19–17:1.)  Judge Gallo's interpretation of "implementation" and "application" was reasonable because it accorded with American General's own initial interpretation and a common sense understanding of these terms.

1   Finally, while "much less severe alternatives" might have been available,
2   (Objections, 1:5–6), the Court finds no clear error in Judge Gallo's decision to
3   impose the sanctions here.  Accordingly, the objections are **OVERRULED**.

4   This Court adds the following to Judge Gallo's order.  The Court finds
5   American General's actions in regard to the Rule 30(b)(6) deposition of Ms. Miller
6   to be intolerable.  Ms. Miller was only notified the day before the deposition that
7   she would be the witness.  The circumstances support a strong inference that this
8   was a bad faith attempt by American General to subvert Plaintiff's legitimate efforts
9   to discover relevant evidence.  American General chose this forum by removing
10  the case.  The Court expects parties to proceed in good faith in their chosen forum.
11  Given the sanctions imposed, the Court need not, at this time, parse fault and
12  responsibility between the defendant and its counsel, including whether
13  professional discipline is appropriate.  *See* CivLR 2.1, 2.2.  However, if American
14  General violates the Federal Rules of Civil Procedure, our Court's Local Rules, an
15  order of this Court, or an applicable procedural precedent of the Supreme Court or
16  the Ninth Circuit, this Court will order the Chief Executive Officer of American
17  General to personally appear before this Court and explain why American General
18  has not complied with the law.

19  With that said, given the unavoidable delays imposed by the COVID-19
20  pandemic and the California Supreme Court's consideration of *McHugh*, trial is
21  unable to move forward as scheduled.  The prejudice to Plaintiff is thus no longer
22  as acute as it was when Judge Gallo ordered these sanctions.  Accordingly, the
23  Court will allow American General to submit a Rule 30(b)(6) witness for Plaintiff to
24  re-depose.  This Court will preside at the deposition in its courtroom and will not
25  tolerate frivolous objections.  Within 10 days of entry of this Order, Plaintiff shall
26  serve a new 30(b)(6) notice.  The cost and fees incurred by Plaintiff in preparing
27  for and taking the deposition shall be paid by American General.  At the conclusion
28  of the deposition, the Court will decide whether to vacate Judge Gallo's preclusion

order.

## V.  CONCLUSION

Plaintiff's motion for summary judgment (ECF No. 134) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. **DENIED** on the fact that American General failed to comply with § 10113.71(a).

2. **GRANTED** on the fact that American General violated § 10113.72(b) by failing to annually notify Mr. Moriarty of the right to designate a person to receive notices.

3. **DENIED WITHOUT PREJUDICE** on the claim for declaratory judgment.

4. **DENIED** on the breach of contract claim.

5. **DENIED** on the bad faith claim.

6. **DENIED** on the UCL claim.

American General's motion for summary judgment (ECF No. 135) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. **GRANTED** on the fact that American General complied with § 10113.71(a) by providing a 60-day grace period before terminating Mr. Moriarty's policy.

2. **DENIED** on the fact that American General complied with § 10113.72(b).

3. **DENIED** on the fact that American General complied with §§ 10113.71(b)(1),(3) and 10113.72(c).

4. **DENIED WITHOUT PREJUDICE** on the claim for declaratory judgment.

5. <u>Breach of contract claim</u>: **DENIED** with respect to violations of §§ 10113.71(b) and 10113.72(a)–(b) and **GRANTED** with respect to the alleged violation of § 10113.71(a).

6. **DENIED** on the bad faith claim.

7. **GRANTED** on the UCL restitution claims.

8.    **DENIED** on the UCL injunction claims.

Plaintiff's request for judicial notice (ECF No. 148-1) is **DENIED WITHOUT PREJUDICE**.   American General's motion to stay a ruling on class certification pending the resolution of its motion for summary judgment (ECF No. 136) is **DENIED AS MOOT**.

American General's objections to Magistrate Judge Gallo's sanctions order (ECF No. 145) are **OVERRULED**.  Plaintiff shall serve a new 30(b)(6) deposition notice on American General within 10 days of entry of this Order.  The parties may obtain dates in November or December 2020 from the Court for this deposition. The Court **ORDERS** that the parties abstain from frivolous objections.   Judge Gallo's order as to payment of fees and costs is **AFFIRMED**.  The Court shall set a schedule for the fees and cost motion after the deposition.

**IT IS SO ORDERED**.

Dated:  October 1, 2020

Honorable Barry Ted Moskowitz
United States District Judge

3:17-cv-1709-BTM-WVG