UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.: 3:17-cv-1709-BTM-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING AMERICAN GENERAL'S MOTION TO EXCLUDE CLASS MEMBERS**<br><br>**[ECF Nos. 132, 137]** |

Before the Court is Plaintiff's motion for class certification (ECF No. 132 ("Mot.")) and Defendant American General Life Insurance Company's motion to exclude certain people from the class (ECF No. 137). For the reasons discussed below, Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE** and American General's motion to exclude is **DENIED WITHOUT PREJUDICE**.

## I.  BACKGROUND

This case centers on whether three California Insurance Code provisions apply to life insurance policies issued prior to the provisions' enactment. They

guarantee a 60-day grace period after nonpayment of a premium, Cal. Ins. Code § 10113.71(a), the right to designate someone to receive notices of lapsed payments, *id.* § 10113.72(a)–(b), and a 30-day notice of a lapsed payment to both the policy owner and aforementioned designee before the policy may be terminated for nonpayment, *id.* §§ 10113.71(b), 10113.72(c). These code sections went into effect on January 1, 2013.

Heron D. Moriarty ("Mr. Moriarty"), the decedent, took out a term life insurance policy with American General in 2012. (ECF No. 18 ("FAC"), ¶ 15.; ECF No. 135 ("Def.'s MSJ"), 2:3–6.) American General did not provide Mr. Moriarty with the right to designate someone other than himself to receive notices of pending lapses in his policy. (FAC ¶ 25.) On March 24, 2016, American General was unable to process Mr. Moriarty's automatic monthly payment because the associated bank account was closed. (FAC ¶ 27; Def.'s MSJ, 2:23–3:2.) On May 22, 2016, American General terminated the policy as of the date of the lapsed payment: March 20, 2016. (Def.'s MSJ, Exh. 13.) Mr. Moriarty passed away on May 31, 2016. (*Id.* at Exh. 14.) Plaintiff submitted a claim on Mr. Moriarty's life insurance policy on June 22, 2016. (*Id.* at Exh. 16.) American General denied the claim on July 6, 2016 because the policy had terminated as of March 20, 2016, which was prior to Mr. Moriarty's death. (*Id.* at Exh. 17.)

Plaintiff sues on behalf of herself and a purported class of similarly situated individuals, alleging two remaining class action causes of action against American General: (1) declaratory relief, and (2) breach of contract.[1] (FAC ¶¶ 64–81.) On October 2, 2020, the Court denied summary judgment for both parties on the

---

[1] Plaintiff also alleged a class action cause of action for violation of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Profs. Code §§ 17200, *et seq.*, against both American General and Bayside Insurance Associates, Inc. (FAC ¶¶ 106–117.) On October 2, 2020, the Court dismissed Plaintiff's UCL restitution claim against American General and reserved Plaintiff's UCL injunction claim against American General for remand at the end of this case. (ECF No. 184 at 13–14.) On March 27, 2020, the Court dismissed Plaintiff's UCL claims against Bayside Insurance Associates, Inc. (ECF No. 180 at 6.)

1  declaratory relief claim.  (ECF No. 184 at 9).  The Court also denied summary
2  judgment for both parties on the breach of contract claim for violations of §§
3  10113.71(b) and 10113.72 and granted summary judgment for American General
4  that it complied with § 10113.71(a)'s 60-day grace period requirement.  (*Id.* at 10.)

## II.  DISCUSSION

Plaintiff moves for class certification on her claims for declaratory relief and breach of contract against American General.  Plaintiff seeks certification of the following class:

> All owners, or beneficiaries upon a death of the insured, of Defendant's individual life insurance policies that were renewed, issued, or delivered by Defendant in California, and in force on January 1, 2013, and which underwent or will undergo lapse or termination for the non-payment of premium without Defendant first providing all of the notices, grace periods, and offers of designation required by Insurance Code Sections 10113.71 and 10113.72.

(Mot. 2:12–16.)

The party seeking class certification bears the burden of establishing that each of the four requirements of Fed. R. Civ. P. 23(a) and at least one requirement of Rule 23(b) have been met.  *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019).  Plaintiff relies on Rule 23(b)(2) and (3).

With regard to Rule 23(a)(2)'s requirement that there be "questions of law or fact common to the class," Plaintiff asserts that the most important legal question in this case is a common one: whether the California Insurance Code provisions at issue "apply to policies issued prior to 2013 but remaining in effect after the start of 2013." (Mot. 12:9–11.)  A federal district court may interpret state law but is "bound by decisions of the state's highest court."  *Ariz. Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995).  "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue" or certify it to the state's highest court.  *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990).  Here, the state's highest court is already in the process of deciding this

issue. *McHugh v. Protective Life Ins.*, No. S259215 (reviewing whether "the provisions of Insurance Code sections 10113.71 and 10113.72 . . . apply, in whole or in part, to life insurance policies in force as of January 1, 2013, regardless of the original date of issuance of those policies"). This Court must defer to the California Supreme Court's forthcoming decision in *McHugh*. Given the central importance of this question, and its potential effect on the existence of any common questions, the Court finds that it is in the interest of judicial economy to deny without prejudice Plaintiff's motion for class certification without ruling on its merits.

However, the Court notes its concerns about the number of factual issues that may need to be tried for each potential class member. For example, in Plaintiff's case, some of the remaining individual factual issues that will need to be tried include: (1) whether American General properly mailed Mr. Moriarty and Plaintiff a notice of termination letter, and whether Mr. Moriarty or Plaintiff received such a letter, (2) whether American General imposing an effective termination date fewer than 30 days after it mailed the notice of termination letter actually caused damage to Plaintiff, (3) whether Plaintiff had actual notice of a lapsed policy payment, and (4) whether Plaintiff would have been Mr. Moriarty's § 10113.72 designee. Similar individual factual issues will likely be present for each member of the putative class, which the parties estimate to consist of more than 57,000 members. (*See* Mot. 10:20–11:9; Defendant's Opposition to Motion for Class Certification ("Def.'s Opp."), 1:8.) The multiple factual issues that may need to be tried for each of the more than 57,000 class members may affect whether the commonality requirement of Rule 23(a)(2) and predominance and superiority requirements of Rule 23(b)(3) can be met. In light of this concern, the Court notes that issue certification under Fed. R. Civ. P. 23(c)(4) may be more appropriate than certifying a class. The California Supreme Court's forthcoming decision in *McHugh* will clarify what issues might be certified under Rule 23(c)(4).

//

### III.  AMERICAN GENERAL'S MOTION TO EXCLUDE

American General moves to exclude from the purported class, any individuals "who were class members in the nationwide class action settlement in *McNeil v. American General, et al.*, No. 3-99-1157 (M.D. Tenn. Sept. 8, 2000) ('*McNeil*')." (ECF No. 137, American General's Motion to Exclude *McNeil* Class Members ("Def.'s Motion to Exclude"), 1:1–6.)  American General asserts that the *McNeil* settlement's class members, which includes individuals who owned American General's predecessor's industrial life insurance policies during the time period from January 1, 1982 through September 30, 1999, impermissibly overlap with the purported class in the instant action. (*Id.* at 3:5–6; Exh. 2 at 14.)

American General argues that Plaintiff's allegations—that American General failed to comply with Cal. Ins. Code §§ 10113.71 and 10113.72—fall within the *McNeil* settlement's definition of "Released Transactions," which include the "operation," "administration," and "servicing" of American General's life insurance policies. (*Id.* at 4:1–15; Exh. 2 at 54.)  Accordingly, American General argues that, under the terms of the settlement, the *McNeil* class members agreed to resolve any future claims involving the "operation, administration, and servicing" of their industrial life insurance policies, "solely through [the settlement's] ADR process and 'in no other Court, tribunal, arbitration, proceeding or forum.'" (*Id.* at 3:17–21; Exh. 2 at 24.)  American General also points to the *McNeil* court's issuance of a permanent injunction, which "permanently barred" *McNeil* class members from "filing, commencing, prosecuting, intervening in, participating in as class members or otherwise, or receiving any benefits or other relief from, any other lawsuit . . . based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Transactions . . . as to that Policy." (*Id.* at 10:10–19; Exh. 2 at 25-26.)

Plaintiff, in opposition, contends that American General's interpretation of the *McNeil* settlement is overbroad—particularly because the case involved allegedly

discriminatory sales practices against African Americans—and that the *McNeil* parties "never could have intended to release or otherwise shuttle into arbitration claims in another state, brought against another insurer, which would not exist as a matter of California law for another 13 years." (ECF No. 149, Plaintiff's Opposition to American General's Motion to Exclude ("Plaintiff's Opp."), 11:21–25; Def.'s Motion to Exclude, Exh. 2 at 34-35.)

The Court takes note of the *McNeil* Court's retention of jurisdiction, which American General also highlights, in which the *McNeil* court:

> expressly retain[ed] jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement . . . and for any other necessary purpose, including, without limitation, enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement . . . including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this Action are or are not barred by the Final Judgment or Release, etc.

(Def.'s Motion to Exclude, 11:21–12:6; Exh. 2 at 29.) American General's Motion to Exclude requires resolution of the following question: Whether any alleged *McNeil* class members identified by American General would be barred by the settlement from participating in Plaintiff's class claims against American General? The Court finds that this question falls within the *McNeil* court's retained jurisdiction to determine "whether a person or entity is or is not a [*McNeil*] Class Member" or "whether claims or causes of action allegedly related to [the *McNeil*] Action are or are not barred." (*See id.*, Exh. 2 at 29.) American General may move the *McNeil* court for such a determination.

Accordingly, the Court denies American General's Motion to Exclude *McNeil* Class Members without prejudice.

//
//

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Class Certification is **DENIED WITHOUT PREJUDICE** and American General's Motion to Exclude McNeil Class Members is **DENIED WITHOUT PREJUDICE**. The parties may renew these motions after the California Supreme Court renders an opinion in *McHugh* or after the *McNeil* court renders a decision.

**IT IS SO ORDERED**.

Dated: November 25, 2020

Honorable Barry Ted Moskowitz
United States District Judge