UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class, | Case No.: 17-CV-1709-BTM-WVG **ORDER ON THREE DISCOVERY DISPUTES** |
| Plaintiff, | |
| v. | |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

## I.    INTRODUCTION

In the latest season of this five-year litigation, Michelle Moriarty ("Plaintiff") brings three discovery disputes for this Court's resolution. Notably, the disputes arose before fact discovery closed and persisted while the January 26, 2021 stay was in effect. Nevertheless, Plaintiff raised the disputes to this Court on November 10, 2021, more than two weeks after the stay lifted on October 25, 2021. Curiously, Plaintiff's languid approach to her discovery obligations offers a striking contrast to the magnitude and urgency of the discovery she moves this Court to compel. In particular, Plaintiff asks the Court to require

American General Life Insurance Company's ("Defendant") to supplement broad swaths of existing discovery; reopen discovery to obtain additional discovery from Defendant; and order Defendant to produce a document that Plaintiff implicitly acknowledges is privileged. The Court has carefully considered the Parties' respective briefs and supporting exhibits on each of these issues. In doing so, the Court finds no factual or legal basis to grant any of Plaintiff's discovery requests. Accordingly, the Court DENIES Plaintiff's motions for supplementation of Defendant's existing discovery; reopening discovery to take additional discovery from Defendant; and compelling Defendant's production of the Kumatz Memorandum. The Court elaborates below.

## II.  PROCEDURAL HISTORY

This is a bad faith insurance dispute that Defendant removed to this Court on August 23, 2017. (Doc. No. 1.) Plaintiff sought to collect on her late husband's life insurance policy as maintained with Defendant. Defendant denied coverage on the basis that California Insurance Code sections 10113.71 and 10113.72 ("statutes") did not apply to the policy because the statutes became effective on January 1, 2013, after the policy issued. (*See id. generally*.)

Class certification and fact discovery was most recently continued to and closed on January 31, 2019 to permit Plaintiff to take the depositions of David Kumatz, an attorney for Defendant, and Defendant's corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 113.) On January 3, 2021, Plaintiff took the deposition of Michelle Miller, who Defendant designated under Rule 30(b)(6) ("Miller Deposition"). The Miller Deposition was rife with issues, all of which hinged on the fact that Miller could not testify on most categories of designated topics for lack of sufficient knowledge. On January 31, 2019, Plaintiff filed a Motion for Sanctions Pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking (1) discovery sanctions against Defendant for designating Miller as its Rule 30(b)(6) deponent, and (2) an order compelling Defendant to produce a memorandum containing legal advice regarding the insurance statutes' applicability to in-force insurance policies, as written by David Kumatz ("Kumatz

Memorandum"). (Doc. No. 123.) On April 10, 2019, this Court granted in part and denied in part Plaintiff's Motion for Sanctions, sanctioning Defendant for producing a deponent lacking in sufficient knowledge to testify while denying Plaintiff's motion to compel after finding the Kumatz Memorandum privileged. (Doc. No. 138.)

On April 1, 2019, the Parties filed cross-summary judgment motions. (Doc. Nos. 135, 136.) On October 2, 2020, Judge Moskowitz granted in part and denied in part the Parties' cross summary judgment motions. (Doc. No. 184.) In doing so, Judge Moskowitz addressed this Court's April 10, 2019 Sanctions Order, adopted its findings, and ordered Defendant to designate an additional Rule 30(b)(6) witness for deposition. (*Id.*) Defendant complied with Judge Moskowitz's order and designated Kyle Jennings, Defendant's chief compliance officer, for deposition ("Jennings Deposition"). Jennings appeared for deposition on May 6, 2021 and on June 11, 2021. The deposition went forward and concluded without issue.

On December 2, 2020, Defendant filed a Motion to Stay all proceedings, pending resolution of the California Supreme Court's then-pending *McHugh* decision (*McHugh v. Protective Life Insurance*, 12 Cal.5th 213 (2021). (Doc. No. 192.) On January 26, 2021, Judge Moskowitz granted Defendant's Motion to Stay until *McHugh* was decided. (Doc. No. 199.)

On October 25, 2021, Judge Moskowitz lifted the stay in this action following *McHugh*'s resolution and convened a status conference amongst the Parties on that same day. (Doc. No. 211.) During the status conference, Plaintiff's counsel represented to Judge Moskowitz Plaintiff sought limited discovery such that the Parties could be prepared to file dispositive motions within 60 days of the October 25, 2021 status conference. (Doc. No. 216, Exh. 7 at 3:23–4:3; *id.* at 11:5.) During the proceedings, defense counsel noted its objection to any additional discovery being taken.  In relevant part, Judge Moskowitz set a February 7, 2022 deadline to file new class certification and summary judgment motions and a March 7, 2022 hearing date. (*Id.*)

On November 10, 2021, counsel for the Parties jointly contacted this Court's

Chambers to raise the instant three discovery disputes. November 16, 2021 was the earliest date all participating attorneys and Chambers could participate in an informal telephonic conference regarding the dispute. Accordingly, on that date, Chambers convened the conference with counsel to discuss the procedural and factual nature of the discovery disputes, in accordance with this Court's Civil Chambers Rule IV(b). Thereafter, on November 22, 2021, this Court issued its Order Setting Briefing Schedule on Three Discovery Disputes (Doc. No. 213) and, one day later, extended the Parties' filing deadline to December 3, 2021, following the Parties' motion for same. (Doc. No. 215.) Thereafter, the Parties timely filed their discovery briefs. (Doc. Nos. 216, 217.) On December 30, 2021, Defendant lodged in camera a 15-page document produced in discovery to Plaintiff, following the Court's request. The three discovery disputes are now ripe for this Court's adjudication.

## III.   THE THREE DISCOVERY DISPUTES

Plaintiff raises three discovery disputes here. <u>First</u>, Plaintiff moves the Court to order Defendant to supplement its existing discovery concerning certain insurance data and other non-data information. Plaintiff argues she is entitled to updated data information because that discovery is now three years old and "stale." (Doc. No. 217, 2:17-19.) As to non-data information, Plaintiff contends new, material facts from the Jennings deposition and the recent *McHugh* and *Thomas*[1] opinions make existing discovery obsolete and supplementation necessary. Defendant opposes Plaintiff's first discovery request in its entirety. In particular, Defendant rejects the notion Plaintiff is entitled to discovery updates on a rolling basis when the nature of the insurance data information is ever-changing. Defendant additionally attacks Plaintiff's request for supplementation regarding non-data information because none of its prior-served discovery is incomplete or inaccurate, which are the only two bases for supplementation under Rule 26(e) of the Federal Rules of Civil

---

[1] *Thomas v. State Farm Life Ins. Co.*, 2021 WL 4596286 (9th Cir. 2021).

Procedure.

Second, Plaintiff moves the Court to reopen discovery for limited purposes after Plaintiff learned new information from the Jennings deposition and since *McHugh* and *Thomas* issued. (Doc. No. 217, 8:15-19.) In doing so, Plaintiff seeks to propound 10 interrogatories and 10 requests for production of documents and take one additional deposition concerning two broad categories: Defendant's (1) efforts to presently comply with *McHugh* and *Thomas*; and (2) reasons for not yet paying Plaintiff's claim post-*McHugh*. (*Id.*, 8:27-9:4.) Defendant wholly opposes Plaintiff's second discovery request here. Defendant maintains there are at least three reasons to reject reopening discovery for any purpose: (1) Defendant has already provided substantial discovery and any additional discovery efforts would be excessive; (2) the additional discovery Plaintiff seeks is neither factually nor legally relevant to the remaining claims at issue; and (3) Plaintiff was dilatory in raising this request for further discovery in violation of Rule 16(b) of the Federal Rules of Civil Procedure.

Third, and lastly, Plaintiff moves the Court to compel the production of the Kumatz Memorandum and thereby reconsider its April 10, 2019 Order declining to compel production (Doc. No. 138). Plaintiff argues the Memorandum's production is proper because Jennings (1) testified that Defendant relied on the Memorandum "to support its decision to not apply the Statutes to in-force policies;" (2) "disclosed the general contents of the memo without objection," which resulted in waiver of the attorney-client privilege; and (3) admitted to reviewing the document to refresh his recollection prior to his deposition. (Doc. No. 217, 10:4-8.) Defendant outright rejects Plaintiff's request for production and all reasons underlying it. Defendant argues that, since the issuance of this Court's April 10, 2019 Order, nothing has happened that would uncouple the attorney-client privilege from the Memorandum. (Doc. No. 216, 11:4-6.) Defendant underscores it is "not defending itself based on advice it received in the Kumatz Memo" and "Plaintiff can point to nothing in the record indicating that [Defendant] has otherwise argued that defense." (*Id.*, 11:9-12.)

17-CV-1709-BTM-WVG

## IV.  DISCUSSION

### a.  First Dispute: Supplementing Existing Discovery

Plaintiff first moves the Court to order Defendant to supplement its existing discovery. To support her position, Plaintiff argues (1) Defendant's prior-served discovery regarding certain insurance data is now three years old and "stale" and (2) the Jennings deposition unveiled new, material facts that, coupled with recent changes to the applicable law, warrant supplementation on discrete topics identified in Plaintiff's written discovery requests as propounded on Defendant. (Doc. No. 217, 2:17-19; 7:26-8:4.) Defendant counters that no supplementation is warranted. Regarding insurance data, Defendant claims supplementation of discovery that is inherently variable would be a "never-ending" endeavor that defies Rule 26(e) of the Federal Rules of Civil Procedure. (Doc. No. 216, 6:11-12; 7:8-11.) Regarding the non-data discovery for which Plaintiff seeks supplementation, Defendant poses it has nothing to offer because, to date, the discovery remains accurate and complete. (*Id.*, 6:21-24.) The Court agrees with Defendant that supplementation is not warranted here and addresses the data and non-data discovery at issue in turn. To preface this analysis, a survey of Rule 26(e) is in order.

As a foundational matter, Rule 26(a) of the Federal Rules of Civil Procedure provides: "a party must, without awaiting a discovery request, provide to the other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed.R.Civ.P. 26(a)(1)(A)(i). Rule 26(e) adds "[a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response ... in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed.R.Civ.P. 26(e)(1)(A).

At all times, the burden rests with the party seeking to compel additional discovery to bring forth evidence that warrants supplementation. *Campos-Eibeck v. C R Bard Inc.*, 2020 WL 835305, at *5 (S.D. Cal. Feb. 20, 2020). To that end, Rule 26(e) makes clear supplementation is reserved for initial disclosures that are incomplete or inaccurate. Fed. R. Civ. P. 26(e)(1)(A)-(B). Simply because certain discovery is volatile and in flux does not create evidence of inaccurate information that beckons supplementation. This District concluded just that in its 2020 *Campos-Eibeck* decision and emphasized Rule 26(e) was "not intended to create never-ending discovery obligations or continuous rolling discovery." *Id.* (citing *Our Children's Earth v. Leland Stanford Jr. Univ.*, 2015 WL 12964638, at *3 (N.D. Cal. Oct. 29, 2015) and *Kuhns v. City of Allentown*, 2010 WL 4236873, at *3 (E.D. Pa. Oct. 26, 2010)).

The Court declines to usher in endless discovery here. Plaintiff repeatedly frames her request for Defendant's supplementation of its insurance data as a mere "update" but it is far more expansive than that. (Doc. No. 217, 7:26-8:2.) The insurance data Plaintiff seeks concerns "lapsed policies, deaths, claims and implementation of the Statutes to in-force policies." (*Id.*) Such information is incapable of ever reaching a point of permanence because it is subject to the forces of life, death, and the deliberate actions and inadvertent inactions of Defendant's policyholders. For this reason, supplementation would be futile and run counter to Rule 26(e)'s purpose to ensure parties hold accurate and complete information. Plaintiff is not entitled to play-by-plays of ever-changing data and that is what is sought here. The Court will not allow it.

Plaintiff's request for supplementation of non-data information is also denied but for reasons different from those above. Strikingly, Plaintiff moves the Court to order Defendant's supplementation, all without sketching the contours of the discovery sought. To be sure, Plaintiff itemized in her brief the discovery requests for which she seeks supplementation, namely Interrogatory Nos. 3-8, 10-18, 21, 23-27, 32, 34-35, and 43 and Requests for Production Nos. ("RFPs") 12, 22-30, 35-37, and 42-44. (Doc. No. 217, 8:1-4.) Plaintiff also attached Exhibit A to her discovery brief, which consists of excerpts of

Defendant's Responses to Plaintiff's First Set of Interrogatories[2]. Plaintiff did not submit any RFPs for this Court's consideration.

In totality, Plaintiff provided a sampling of the relevant interrogatories and numbered RFPs without more. This was no meager oversight. The interrogatories Plaintiff excerpted in her Exhibit A are broad and far-reaching. Specifically, Plaintiff calls on Defendant to supplement information regarding witnesses and those involved in the following, amongst other undefined matters: the putative class; class certification; Defendant's decision-making and implementation processes; Defendant's denial of benefits; and Defendant's communications with the California Department of Insurance ("DOI"), the American Council of Life Insurers ("ACLI"), and the Association of California Life & Health Insurance Companies. Given the expansive nature of the discovery at issue here, supplementation would be a significant undertaking if Defendant's prior-served discovery was incorrect or incomplete under Rule 26(e). Defendant represents "that is not the situation here" and "there is nothing to fix" and Plaintiff offers no evidence to indicate Defendant's initial disclosures, written discovery responses, or document productions are incomplete or incorrect. (Doc. No. 216, 6:22-24.) Under such circumstances, the Court finds supplementation of Defendant's non-data information is not warranted. Plaintiff's request for such supplementation is, in turn, denied.

### b. Second Dispute: Reopening Discovery for Limited Purposes

Plaintiff next moves the Court to reopen discovery for limited purposes, namely to obtain additional witnesses, documents, and information stemming from meetings Defendant held throughout 2012 regarding the insurance code statutes' applicability to in-force policies. Under Rule 16(b) of the Federal Rules of Civil Procedure, Plaintiff argues multiple grounds in connection with her instant request: (1) trial is not imminent; (2)

---

[2] Plaintiff's Interrogatory Nos. 3-8, 10-12, 32, 34-35, and 43 were omitted from Exhibit A and were not provided elsewhere in connection with Plaintiff's discovery brief.

Defendant will not suffer any prejudice if discovery is reopened; (3) Plaintiff will be prejudiced if she is denied the opportunity to take additional discovery in light of new, material facts the Jennings deposition revealed and recent changes to the applicable law; and (4) Plaintiff was diligent in moving the Court to reopen discovery. Defendant wholly opposes Plaintiff's request here, agreeing trial is not imminent but disputing all of Plaintiff's other supporting reasons. The Court has examined each of the Parties' moving and opposing grounds to reopen discovery and addresses them below.

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides "a district court's scheduling order may be modified upon a showing of 'good cause.'" *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing Fed. R. Civ. P. 16(b)(4) and *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 2012); *Mytee Prod., Inc. v. H.D. Prod.*, Inc., 2007 WL 4105713, at *2 (S.D. Cal. Nov. 16, 2007). "[The] focus of the inquiry is upon the moving party's reasons for seeking modification ... If that party was not diligent, the inquiry should end." *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 187 (S.D. Cal. July 22, 2020) (citing). "Good cause may be found where the moving party shows it assisted the court with creating a workable scheduling order, that it is unable to comply with the scheduling order's deadlines due to matters not reasonably foreseeable at the time the scheduling order issued, and that it was diligent in seeking a modification once it became apparent it could not comply with the scheduling order." *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. Sept. 21, 2012) (citing *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. June 16, 1999)); Fed. R. Civ. P. 16, Advisory Committee's Notes (1983 Amendment); *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 652 (S.D. Cal. July 24, 2015) (same).

Dovetailing the Court's diligence inquiry here is a set of five other factors district courts consider when a party moves to reopen discovery: whether (1) trial is imminent, (2) the request is opposed, (3) the non-movant would be prejudiced, (4) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (5) the likelihood that the discovery will lead to relevant evidence. *City of*

*Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017); *Turner v. San Diego Cent. Jail*, 2017 WL 11607049, at *3 (S.D. Cal. Feb. 7, 2017) (citing *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), vacated on other grounds, *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997) (quoting *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)). Underpinning this factor test is the understanding that Rule 16(b) is to be strictly construed, in contrast with "Rule 15(a)'s liberal amendment policy, which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party." *Turner*, 2017 WL 11607049, at *3 (citing *Johnson*, 975 F.2d at 609). At all times, the Court maintains "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011).

### i.   Imminence of Trial

The Court examines each of the six factors above and begins with the single, undisputed one: trial is not imminent here. No trial date has been set, and the new pre-trial dispositive motions filing cut-off is March 7, 2022. (Doc. No. 212, 11:21-12:3.) Therefore, the lack of imminence of trial weighs in favor of Plaintiff's request.

### ii.   Non-Movant's Opposition to Movant's Request

Obviously, however, the Court's inquiry is far more nuanced than this. Thus, the Court turns to the next factor which is that Plaintiff's request to reopen discovery is emphatically opposed by Defendant. This factor weighs against Plaintiff and in favor of Defendant.

### iii.   Prejudice Posed to the Non-Movant if Discovery Reopens and the Likelihood that Additional Discovery Would Lead to Relevant Evidence

The next factor calls for the Court to weigh the prejudice posed to the non-movant if discovery were to be reopened against the prejudice posed to the movant if discovery remains closed. Plaintiff argues Defendant will suffer no harm if her request is granted

while maintaining she will be prejudiced if she cannot obtain additional discovery on the new, material facts learned from the Jennings deposition and matters that implicate changes in the law, which *McHugh* and *Thomas* have injected. Defendant counters the Jennings deposition has "reveal[ed] no gaps in discovery" and none of Jennings' testimony alters prior discovery or warrants reopening discovery here. (Doc. No. 217, 8:14-15.) Defendant adds *McHugh* and *Thomas* "change[] nothing on bad faith" and Judge Moskowitz's "Summary Judgment Order here already applied the Statutes to a pre-2013 policy," consistent with *McHugh*. (Id., 9:13-14, 21-24; 10:1.) In so arguing, Defendant emphasizes "*McHugh* did not eliminate the need to try [remaining] issues" on summary judgment and Defendant's compliance efforts post-*McHugh* are not at issue before the jury, contrary to Plaintiff's assertions. (*Id*., 9:23-28.)

As an initial matter, the Court rejects Plaintiff's position that Defendant will not be prejudiced if discovery is reopened here. As noted in its discovery brief, Defendant has already undertaken significant discovery efforts in this litigation and amply met its discovery obligations by (1) responding to 186 requests for production of documents and 43 interrogatories; (2) producing more than 7,200 pages of documents; (3) identifying, preparing, and submitting 12 witnesses for deposition, most recently on June 11, 2021 for the Jennings deposition; and (4) engaging in "arduous data-mining of approximately ten discrete administrative systems." (Doc. No. 216, 3:12-23; 4:10-14.) Given the broad scope of topics over which Plaintiff seeks additional discovery, it is inconceivable how Defendant would not be prejudiced if discovery was reopened here.

As to the prejudice Plaintiff will suffer if discovery is not reopened, the matter invokes both factual and legal questions, as well as the additional factor considering whether further discovery would lead to the establishment of relevant evidence. Given this intertwinement, the Court melds its analysis of the prejudice factor with the relevant evidence factor. To this end, and as noted, the factual questions arise from the Jennings deposition testimony and the legal questions arise from the *McHugh* and *Thomas* opinions. The Court first turns to the Jennings deposition.

### 1. Factual Grounds to Reopen Discovery Post-Jennings' Deposition

Plaintiff points to several things learned from the Jennings Deposition to make her case for reopening discovery: (1) what Defendant's "fair reading" of the insurance statutes was; (2) that Defendant's government relations personnel consulted with third parties regarding the statutes' applicability; and that (3) Defendant relied on the Kumatz Memorandum as well as guidance from the California DOI and the ACLI to further assess applicability. (Doc. No. 216, 7:27-7:6.) Defendant argues Plaintiff mischaracterizes Jennings' deposition testimony for relevance purposes. Defendant underscores the Jennings deposition was not revelatory in any sense. For example, Jennings testified to participating in informal meetings throughout 2012 that surveyed proposed legislation across the 50 states. (Doc. No. 216, Exhibit ("Exh.") 3, 176:24-177:3.) In connection with those informal meetings and during the discovery period, Defendant also produced a 15-page document explaining Defendant's various departmental efforts to implement new legislation once it came into effect and identifying more than 30 individuals who were directly involved in Defendant's ongoing, informal discussions. (Doc. No. 216, Exh. 2.) Defendant's position is that Plaintiff was already aware of the existence of these meetings during the class and fact discovery period, and the additional information Jennings provided about those meetings and its participants merely colored, rather than altered, existing discovery.

The Court agrees with Defendant after reviewing the entirety of the Jennings deposition transcript and the 15-page document Defendant lodged *in camera*. Indeed, Plaintiff overstates the significance of Jennings' testimony while framing the testimony as the most compelling basis to reopen discovery. In its April 10, 2019 Order, this Court found Defendant's initial Rule 30(b)(6) witness to be insufficiently prepared on most categories of inquiry and imposed discovery sanctions accordingly. (Doc. No. 138.) On such grounds and on October 2, 2020, Judge Moskowitz allowed Plaintiff to take the deposition of a second witness who could offer testimony under Rule 30(b)(6). (Doc. No. 184.) Defendant

then designated Kyle Jennings for such testimony and produced him for deposition on May 6, 2021. It is undisputed that Jennings was an unexpected, late-stage witness in this case, whose deposition testimony was compelled rather than initially offered by Defendant. Even so, Jennings' testimony does not appear to be nearly as revelatory and groundbreaking as Plaintiff makes it to be.

Plaintiff makes much of the facts surrounding Jennings' role in the company as a chief compliance officer at the time. In his role, Jennings testified he participated in "regular or routine meetings… just so [he] would have a general awareness of proposed and enacted legislation." (Doc. No. 217, Exh. 3, 5:2-10.) Jennings added that no records such as minutes, agendas, or memoranda for those meetings were maintained because "it was just an informal group to meet to talk about the legislation." (*Id.*, 6:6-12; 7:14-20.) Therefore, it is difficult to imagine what sorts of documents, if any at all, Defendant maintains that would be subject to production. Indeed, Defendant contends it has nothing more to offer.

Moreover, in the way of other witnesses Jennings may have identified in deposition, there were four individuals with whom Jennings testified he spoke to refresh his recollection of these 2012 meetings:

- Ted Kennedy, who works for Defendant's Government Relations Team and who maintains relationships with a local California trade association and ACLI. (Doc. No. 217, Exh. 3, 24:1-15.) Jennings stated Kennedy "confirmed what [he] believed about these statutes" and testified to the full extent of his conversation with Kennedy. (Doc. No. 217, Exh. 3, 24:1-15; 26:6-7.);

- Michelle Miller, Defendant's initial 30(b)(6) witness who appeared for deposition on January 3, 2019 during the discovery period. (*Id.*, 16:15-16.);

- David Kumatz, Defendant's former counsel and who was also deposed in this action. (*Id.*, 26:16-17.); and

- Overton Campbell, Defendant's primary in-house counsel managing this litigation, who Jennings believed was not "one of the people that were in these

meetings in 2012 dealing with these statutes." (*Id.*, 16:18-20;19-22.)

Jennings also identified Christine Bennefield as an attendee of the above meetings and specified she is "no longer with the company, [and] probably would have organized those meetings because she had a government relations and regulatory change responsibility." (*Id.*, 28:11-14.) Jennings did not speak to Bennefield in preparation for his deposition. (*Id.*, 29:4-8.)

None of the four individuals with whom Jennings spoke in anticipation of his deposition constitute surprise, essential witnesses who would merit a reopening the doors to additional fact discovery. Here is why. Jennings already testified to the full extent of his discussion with Kennedy. Further, Plaintiff already took the depositions of Miller and Kumatz prior to the January 31, 2019 fact discovery cutoff. Taken together, both of these circumstances were sufficient to put Plaintiff on notice that there were additional avenues of discovery to explore within the bounds of the fact discovery cut-off. From the 15-page document Defendant produced to Plaintiff in 2018 and the substantial amount of other discovery Defendant timely produced, Plaintiff could have conceivably learned through follow-up discovery about Miller and Kumatz as well as Kennedy's involvement in the 2012 meetings. Equally important, nothing in the Jennings deposition transcript constitutes grounds to recall Miller or Kumatz as witnesses or to call Kennedy to testify. In sum, during the class and fact discovery period, Plaintiff had the opportunity to conduct supplemental discovery regarding Kumatz and Miller as well as the 2012 meetings, which would have led Plaintiff to identify Kennedy as another individual who was, to some extent, involved in Defendant's evaluation of the applicability of the statutes to the in-force policies. If she failed to conduct this additional discovery, Plaintiff did so at her own peril and cannot impose her discovery burdens onto Defendant here. Jennings did not identify Campbell as a participant in the 2012 meetings, which are the focus of Plaintiff's request for additional discovery. Therefore, information regarding or testimony from Campbell seem insufficiently relevant to reopen discovery. As to Bennefield, Jennings' testimony regarding her role in the meetings is not particularly striking or sufficiently compelling to

warrant follow-up discovery from her simply because she was one of many participants in informal company meetings. Plaintiff fails to articulate what makes one more participant more special than all others previously known or discoverable.

To that end, adding color to existing discovery should not be conflated with the surprise of new, material facts that casts doubt over the accuracy or completeness of existing discovery. *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 607 (S.D. Cal. 2015) ("where a witness has been alluded to in the same litigation, not different litigation, that a party's failure to disclose a witness has been considered harmless") (citing *Van Maanen v. Univ. of the Nations, Inc.*, 542 Fed.Appx. 581 (9th Cir. 2013) (finding a failure to disclose a witness harmless where the identity, location and subject of information possessed by a witness was revealed during numerous depositions in the same case months before the discovery cut-off date)). Without making the requisite evidentiary showing, the Court is no position to authorize the kind of fishing expedition the Federal Rules aim to avoid. *Watkins v. Hireright, Inc.*, 2014 WL 11191092, at *4 (S.D. Cal. Feb. 21, 2014) ("there must be a basis for the discovery so that it does not become a fishing expedition"); *Roettgen v. Foston*, 2016 WL 4555948, at *2 (S.D. Cal. Sept. 1, 2016).

Moreover, Defendant already produced in 2018 the 15-page document that plainly informed Plaintiff that Defendant was holding cross-departmental discussions with more than 30 known individuals regarding the insurance statutes' applicability and potential implementation measures. (Doc. No. 216, Exh. 2, 4:9-10.) Therefore, Plaintiff had ample opportunity to probe further into the witnesses and meetings at issue while the discovery period remained open and could have moved the Court for additional time, if needed, before fact discovery closed on January 31, 2019. Plaintiff did not do so, and the consequence of that is hers to bear. Finally, on this point, Defendant's emphasis that Jennings' "depositions reveal no gaps in discovery" and "there are no hidden meetings" only bolsters the Court's conclusion that discovery should not be reopened on account of Jennings' testimony. (Doc. No. 216, 8:14-15; 9:12.) Because there is no evidence that calls into question Defendant's contention that it has nothing new or supplemental to offer in

discovery, the Court finds no credible factual grounds to reopen discovery here.

## 2. Legal Grounds to Reopen Discovery Post-*McHugh* and *Thomas*

The Court now examines whether there is a legal basis to reopen discovery on account of *McHugh* and *Thomas*. The Court answers no. Plaintiff posits that *McHugh* and *Thomas* vindicate her central claim that the insurance code statutes apply to the insurance policies at issue here. For this reason, according to Plaintiff, additional discovery is warranted, particularly as it relates to Plaintiff's bad faith claim against Defendant (with an eye towards the reasonableness of Defendant's reliance on DOI guidelines in refusing coverage), Defendant's current compliance efforts post-*McHugh*, and the reasons Defendant has not paid Plaintiff's claim given *McHugh* and *Thomas'* holdings. (Doc. No. 217, 8:20-9:4.) Defendant dismisses Plaintiff's stance that any changes in the legal landscape warrant reopening discovery. Defendant opposes Plaintiff's characterization regarding *McHugh* and *Thomas* "because the October 2020 Summary Judgment Order in this case held the [insurance code] statute applied to a pre-2013 policy… it was already law of this case that the statutes applied." (Doc. No. 216, 2:15-25; Doc. No. 184, 5:9-7:3.) Defendant contends *McHugh* and *Thomas* only affirm what Judge Moskowitz already decided on summary judgment, namely that the insurance code statutes apply to the policies in question. (Doc. No. 216, 5:12-17.) According to Defendant, this circumstance precludes *McHugh* and *Thomas* from catalyzing another installment of discovery in this action.

As a foundational matter, the *McHugh* and *Thomas* decisions fail to support Plaintiff's request here because those decisions align with, rather than depart from, Judge Moskowitz's ruling that the insurance code statutes apply to the policies. It is difficult to see why Plaintiff, rather than Defendant, would seek additional discovery when Judge Moskowitz's dispositive findings and two new, published legal opinions have only bolstered Plaintiff's allegations from the onset of this action. That is to say, Plaintiff filed this lawsuit and pursued discovery with the singular, laser-like focus that the statutes

applied to the in-force policies at issue. Therefore, Plaintiff had the opportunity to take discovery on this subject matter, availed herself of it throughout the entirety of discovery, and articulated such arguments on summary judgment, which Judge Moskowitz ultimately accepted and agreed with. *McHugh* and *Thomas* do nothing to displace Judge Moskowitz's findings in Plaintiff's favor; the decisions only lend more support to Plaintiff's cause. On the other hand, however, neither Judge Moskowitz's summary judgment ruling nor the new case law resolve the disputes of fact that are reserved for the jury to decide and which will ultimately bear on what benefits Defendant owes Plaintiff and the putative class, if any.

Beyond the above circumstance, the Court is also persuaded by Defendant's additional argument that the Jennings testimony, coupled with *McHugh* and *Thomas*, does not merit additional discovery on Plaintiff's bad faith claim. Bad faith requires a carrier's objective unreasonableness in denying insurance coverage, which is something that Jennings' testimony did not reveal. *Bafford v. Travelers Cas. Ins. Co. of Am.*, 2012 WL 5465851, at *6 (E.D. Cal. Nov. 8, 2012) (noting "one form of objectively unreasonable conduct is failure to fully investigate the grounds for denial," which Jennings makes clear did not happen here); *Stem, Inc. v. Scottsdale Ins. Co.*, 2021 WL 1736823, at *13 (N.D. Cal. May 3, 2021) (bad faith does not arise simply where a party conducts an investigation that leads it "to a conclusion with which [its opponent] disagrees and the Court partially disagrees"). Jennings repeatedly testified Defendant relied on numerous opinions from the California DOI, to trade organizations like the ACLI, to internal assessments across multiple departments, including Defendant's legal and compliance departments, to evaluate whether the insurance statutes applied. Plaintiff's Exhibit 4, which consists of an DOI opinion letter favoring the statute's application, does not, in itself, create evidence of Defendant's bad faith simply because Defendant was not deferential to the DOI. That act alone, without more, does not create the kind of nefarious conduct a bad faith claim requires. Moreover, because it remains a matter of litigation whether Defendant acted reasonably in concluding the statutes did not apply, Defendant's difference in opinion does not transform into evidence of bad faith to merit reopening discovery here.

Without more, the Court finds no evidentiary grounds to reopen discovery on account of Plaintiff's bad faith claim. Relatedly, Plaintiff fails to convince the Court why discovery should be reopened to explore Defendant's post-*McHugh* compliance efforts and why Defendant has not paid Plaintiff's claim after *McHugh* and *Thomas* issued. (Doc. No. 217, 8:20-9:4.) The relevant time period here is backward-looking, not forward. Further, even if Plaintiff argues Defendant's obligations to Plaintiff remain ongoing (which she does seem to imply in her brief), to reopen discovery for the limited purpose of exploring one fraction of the entire compliance period would be an undertaking more burdensome than helpful to the Parties' assessment of their claims and defenses, particularly in view of the substantial discovery that Plaintiff has already taken in this case. Taken in totality, there are no new facts or new law that justifies reopening discovery for relevance purposes. To hold contrary would subject Defendant to undue burden, particularly in light of the fact that Plaintiff could have, but did not, pursue additional discovery much sooner. The Court unpacks this latter point in its remaining analysis below.

### iv. Foreseeability of Plaintiff's Need for Additional Discovery Before Fact Discovery Closed

Plaintiff's brief is silent as to the fourth factor the Court considers here, specifically whether it was foreseeable during the fact discovery period that Plaintiff required additional discovery. The Court takes Plaintiff's silence on the matter as an implicit admission of foreseeability, and the record confirms the same. Plaintiff first took the deposition of Defendant's initial Rule 30(b)(6) witness, Michelle Miller, on January 3, 2019, nearly one month prior to the discovery cut-off. Also within the time constraints of the fact discovery period, Defendant had produced to Plaintiff the 15-page document concerning Defendant's 2012 meetings and efforts regarding the insurance statutes' applicability. For these two reasons alone, the Court finds it was foreseeable for Plaintiff to articulate then her needs for discovery, which she raises now, nearly three years later. Even if Plaintiff had an imperfect 30(b)(6) deponent, which undoubtedly, she did, Plaintiff was aware of the discovery gaps she needed to fill from such testimony and gained valuable

information from the 15-page memorandum that follow-up discovery could have addressed, either in whole or in part. Plaintiff's subsequent 30(b)(6) deposition of Jennings and her five-month delay in bringing her motion to reopen discovery reinforces the Court's conclusion. As such, this factor weighs against Plaintiff's request to reopen discovery.

### v.   Plaintiff's Diligence in Seeking to Reopen Discovery

While observing the importance of honoring the above factors and analyzing them accordingly, the Court holds here that Plaintiff was not diligent to any extent in raising this dispute for the Court's adjudication. For that reason alone, Plaintiff's request to reopen discovery merits dismissal.

In her January 6, 2021 Statement of Non-Opposition to Defendant's Motion to Stay, January 2021, Plaintiff signaled she largely agreed to an entire stay of the action, with the exception of "one deposition previously ordered by the Court (see ECF 184) to take place at the earliest opportunity available once the court resumes in-person court proceedings…" (Doc. No. 195, 2:3-8.) Once the Jennings deposition took place on May 6, 2021, Plaintiff waited until October 25, 2021 to notify Judge Moskowitz she was interested in taking additional discovery. Plaintiff further waited until November 10, 2021 to notify this Court's Chambers of her formal request and this dispute. In her briefing, Plaintiff fails to address why she waited until mid-November 2021 to request to take additional discovery.

The reason for Plaintiff's substantial delay remains unclear. Plaintiff offers that she "brought timely discovery motions prior to [the] discovery cutoff" to conclude she satisfies the Court's diligence inquiry. (Doc. No. 217, 9:16-17.) To be sure, she does not. Plaintiff argues Defendant left her in the proverbial dark about the information she later learned from Jennings, months after the January 31, 2019 fact discovery cut-off. (*Id*., 9:17-18.) Not so.  As noted, Plaintiff had the opportunity to conduct follow-up discovery after initially deposing Defendant's first 30(b)(6) designee on January 3, 2019 and after obtaining Defendant's 15-page document concerning the 2012 meetings centering on statutory applicability, not to mention the mountain of other discovery Defendant produced. Even so, there is no information in the record and there are no representations in Plaintiff's

discovery brief to indicate Plaintiff took any steps following the January 3, 2019 deposition to pursue additional written or verbal discovery. The same applies to the May 6, 2021 time period when Plaintiff first deposed Jennings. Plaintiff made no effort to broach with the Court the possibility of taking additional discovery until the October 25, 2021 hearing before Judge Moskowitz and the November 10, 2021 joint call to this Court's Chambers to formally initiate her request to reopen discovery. The Court has no room for sympathy in such circumstance, particularly when Rule 16(b) calls for strict construction and favors finality and diligence over rolling and dilatory discovery[3].

### c. Third Dispute: Production of the Kumatz Memorandum

Lastly, Plaintiff moves the Court to order Defendant to produce the Kumatz Memorandum. As observed, Plaintiff submits three reasons to support her request: Jennings (1) testified Defendant relied on the Memorandum "to support its decision to not apply the Statutes to in-force policies;" (2) "disclosed the general contents of the memo without objection," which resulted in waiver of the attorney-client privilege; and (3) admitted to reviewing the document to refresh his recollection prior to his deposition. (Doc. No. 217, 10:4-8.) It is important to note that Plaintiff did not contest this Court's April 10, 2019 Order (Doc. No. 138) in finding the Memorandum was privileged and, again, through her discovery brief here, implicitly acknowledges that it is privileged. (Doc. No. 217, 10:6-8.) Defendant opposes Plaintiff's request and disputes all of the reasons underlying it. Defendant explains the attorney-client privilege cannot be severed from the Memorandum because Defendant is not relying on the Memorandum, in whole or in part, to defend itself in this litigation. The Court agrees with Defendant, particularly as Plaintiffs brings forth no evidence to dispute Defendant's lack of an "advice of counsel" defense. In doing so,

---

[3] As noted, Plaintiff represented during the October 25, 2021 status conference before Judge Moskowitz she required no more than 60 days to obtain the discovery at issue here. Plaintiff suggested this timeframe in agreeing to be bound to a February 7, 2021 dispositive motions filing cut-off, referring to the discovery she sought as "limited." Given the breadth and significant duration of time necessary to produce the discovery sought here, Plaintiff severely downplayed the scope of discovery sought as well as her 60-day timeframe estimate to Judge Moskowitz.

however, the Court addresses Plaintiff's arguments in support of her request to compel production of the Memorandum.

California state law applies to the matters of privilege and waiver here. To that end, California Evidence Code section 912(a) ("section 912(a)") is the seminal waiver statute in the state and serves as the model for Rule 511 of the Federal Rules of Evidence. Section 912(a) provides "the right of any person to claim a privilege ... is waived with respect to a communication protected by such privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid. Code § 912(a) (emphasis added); *Lohman v. Superior Court (Weissich)*, 81 Cal.App.3d 90 (1978) ("waiver occurs [pursuant to section 912(a)] only when the holder of the privilege has, in fact, voluntarily disclosed or consented to a disclosure made, in fact, by someone else."); *see also Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 342 (9th Cir. 1996) ("a mere agreement to waive the privilege does not, without disclosure, constitute a waiver of the holder's right to claim it subsequently"). The party holding the privilege waives the privilege if it is not claimed at the first opportunity. *Kerns Constr. Co. v. Superior Court (Orange County)*, (1968) 266 Cal.App.2d 405 (1968). Moreover, California law is resolute that "the mere fact of allowing a witness to refresh his recollection from a communication by him to his attorney and then calling him as a witness does not necessarily waive the lawyer-client privilege." *Mize v. Atchison, T. & S. F. Ry. Co.*, 46 Cal. App. 3d 436, 449 (Ct. App. 1975); see also *Sullivan v. Superior Court (San Mateo)*, 29 Cal.App.3d 64, 72 (1972) (preserving privilege in transcription of attorney-client communication where the witness "refreshed her memory prior to the deposition and raised the privilege when demand was made that she produce the transcription.").

Published authority is rather scant on the niche issue of whether the attorney-client privilege is waived when a deponent partly relies on a privileged document to refresh his recollection prior to deposition and, during deposition, provides a generalized, non-specific summary of the document without objection. In surveying the relevant case law, the Court finds the 1972 *Sullivan* decision most factually analogous here. In *Sullivan*, the court held

the attorney-client privilege endured where the witness reviewed a privileged document to refresh her recollection prior to her deposition, conceded to that fact in deposition, and raised the privilege when opposing counsel demanded that she produce the document at issue. *Sullivan v. Superior Court (San Mateo)*, 29 Cal.App.3d 64, 72 (1972). Here, Jennings reviewed the Kumatz Memorandum, in addition to other documents, prior to his deposition to refresh his recollection. At deposition, Jennings testified to having done so. *Sullivan* makes clear that the mere act of reviewing a privileged document prior to deposition does not unravel the attorney-client privilege, as Plaintiff suggests.

The rub here is whether Defendant waived the privilege when it failed to object to Jennings offering a general summary of the Memorandum's substance. The Court answers in the negative. "A person 'who exposes any *significant* part of a communication in making his own case waives the privilege with respect to the communication's contents bearing on discovery… Such conduct is inconsistent with an intent to preserve them as confidential attorney-client communications." *Gray v. Cash*, 2017 WL 4038342, at *10 (E.D. Cal. Sept. 13, 2017), subsequently aff'd sub nom. *Gray v. Borders*, 830 F. App'x 229 (9th Cir. 2020) (citing *Samuels v. Mix*, 22 Cal.4th 1, 20–21, fn. 5, (1999); Cal. Evid. Code § 912(a); *People v. Barnett*, 17 Cal.4th 1044, 1124, (1998)); *Sullivan*, 29 Cal.App.3d at 72. Jennings did not make any meaningful, substantive disclosures of the Kumatz Memorandum in deposition. Plaintiff herself tends to agree: "[Jennings] disclosed the *general* contents of the memo without objection." (Doc. No. 217, 10:7.) Nothing specific was divulged about the Kumatz Memorandum in Jennings' deposition. For that reason, there was no reason for defense counsel to even object. Jennings testified to the functional equivalent of a summary of Defendant's privilege log that, in relevant part, generally described the Kumatz Memorandum without significant, let alone specific, disclosure of any information.

Plaintiff's citations to *Luna Gaming*, *Kerns Construction Co.*, and *Int'l Ins. Co.* are unavailing in Plaintiff's attempt to dismantle the Memorandum's privilege. *Luna Gaming* is not persuasive because it is not factually analogous here. In *Luna Gaming*, Judge Moskowitz found the attorney-client privilege was waived when (1) the privilege-holding

party produced a legal memorandum and repeatedly used it at multiple depositions; (2) counsel permitted questioning regarding the substance of the memorandum; (3) the opposing party relied on the memorandum in its two summary judgment motions without objection; and (4) the party's counsel "never followed up with [opposing] counsel to obtain the return of the documents, nor did counsel seek an order from the court." *Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *5–6 (S.D. Cal. Jan. 13, 2010). The facts could not be more different here. *Kerns Construction Co.* is also unconvincing because there, compelling the disclosure of privileged reports was warranted where the deponent had no independent memory from which he could answer questions and wholly relied on the reports to refresh his recollection throughout his deposition, all without counsel's any objection. *Kerns Constr. Co. v. Superior Court (Orange County)*, (1968) 266 Cal.App.2d 405 (1968). These facts do not track ours here. Finally, the Court is equally unmoved by Plaintiff's citation to *Int'l Ins. Co. v. Montrose Chem. Corp.*, 231 Cal.App.3d 1367 (1991) because it did not grapple with documents that were subject to the attorney-client privilege, which indisputably applies to the Kumatz Memorandum.

The Kumatz Memorandum was privileged from its inception and, given the aforementioned analysis, shall remain so. Bolstering the Court's conclusion on this issue is that Defendant repeatedly avers it is not relying on "advice of counsel" defense such that it would open itself to waiver of the privilege." (Doc. No. 216 citing *Transam Title Ins. Co. v. Super. Ct.*, 188 Cal.App.3d 1045, 1053 (1987) and *J&M Assocs. V. Nat'l Union Fire Ins. Co. of Pitts.*, 2008 WL 11340050, at *3 (S.D. Cal. Oct. 22, 2008)). Because Plaintiff has not offered any evidence to the contrary, through the Parties' discovery, pre-trial motion practice, or otherwise, Defendant's argument is compelling and stands firm[4]. For this

---

[4] In so holding, the Court reiterates its findings in its April 10, 2019 Order denying Plaintiff's Motion to Compel the Kumatz Memorandum: "The cited testimony does not, in any way, demonstrate that Defendant has asserted an advice of counsel defense. Without substantially more evidence demonstrating that Defendant is attempting to assert the advice of counsel defense, the Court cannot so find." (Doc. No. 138, 17:10-18:4.)

17-CV-1709-BTM-WVG

additional reason, the Court denies Plaintiff's request to compel production of the Kumatz Memorandum.

## V.   CONCLUSION

Given the foregoing, the Court DENIES Plaintiff's discovery requests to (1) order Defendant to supplement existing discovery for both insurance data information and other non-data information; (2) reopen discovery for any purpose, limited or otherwise, in seeking additional discovery from Defendant; and (3) order Defendant's production of the Kumatz Memorandum. Class and fact discovery has closed and will remain so. In so deciding, the Court ORDERS Defendant, explicit with its representation on page six of its brief, to prepare and serve Plaintiff with declaration signed under penalty of perjury averring Defendant has nothing to supplement its initial disclosures or any other discovery produced to Plaintiff during the entirety of this litigation. Defendant shall provide this declaration to Plaintiff no later than one week from the date of this Order's publication.

**IT IS SO ORDERED.**

Dated: December 31, 2021

_____
Hon. William V. Gallo
United States Magistrate Judge