**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff, MICHELLE L. MORIARTY,
Individually,as Successor-In-Interest to Heron D. Moriarty, Decedent,
on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, Individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class,<br><br>                   Plaintiff,<br>        vs.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, a Texas Corporation; BAYSIDE INSURANCE ASSOCIATES, INC., a California Corporation; and Does 1-20, Inclusive,<br><br>                   Defendant. | CASE NO.:  3:17-cv-01709-BTM-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT]**<br><br>**Judge**:       Hon. Barry Ted Moskowitz<br>**Magistrate**:  Hon. William V. Gallo<br><br>**Date**:  March 7, 2022<br>**Time**: 2:00 p.m.<br><br>**Trial Date**:  None Set |

# TABLE OF CONTENTS

I. **INTRODUCTION** ...................................................................................1

II. **FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS CERTIFICATION**.................................................................5

    A. **The Statutes at Issue and Their Important Purpose.** ......................5

    B. **The Statutes Mandate Strict Compliance. Failure to Comply Renders Any Attempted Termination Null & Void.**................................................................................................6

    C. **The Remedy for Wrongful Denial of Benefits in California.** ........................................................................................7

    D. **The Moriarty Policy and Claim for Benefits.**................................7

    E. **AGLIC's Procedures Relating to All Pre-2013 Policies.** ...............9

III. **ARGUMENT** .......................................................................................10

    A. **Plaintiff's Putative Class Satisfies Each of Rule 23(a)'s Requirements.** ...........................................................................11

        1. *Numerosity is easily satisfied here.*.......................................11

        2. *The claims of Plaintiff and her fellow class members share common questions of fact and law.* ..............................12

        3. *Plaintiff's claims are typical because she is perfectly aligned with her putative class members.*................................15

        4. *Plaintiff is an adequate representative.* ...................................16

    B. **Plaintiff's Claims Also Satisfy at Least Two Provisions of Rule 23(b).**................................................................................17

        1. *Plaintiff Has Satisfied the Requirements for a Declaratory or Injunctive Relief Class under Rule 23(b)(2).* ......................................................................17

        2. *Plaintiff's claims also satisfy Rule 23(b)(3)'s "Predominance" and "Superiority" Requirements.* ................18

          a.    <u>Nearly every important factual and legal issue in this matter is common among class members.  As such, common issues predominate.</u> ................................................................19

          b.    <u>Class adjudication of this dispute is far superior to individual lawsuits.</u>........................................22

   **C.**    **There are No Relevant "Causation" Questions that Defeat Predominance Here.** ................................................23

   **D.**    **Alternatively, the Court Could Certify Issue Classes Per 23(c)(4).** ........................................................25

**IV.**   **<u>CONCLUSION</u>** ............................................................25

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Alba v. Papa John's USA*,
  No. CV 05-7487,
  2007 WL 953849 (C.D. Cal. Feb. 8, 2007) ......................................................23

4

5

6

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...........................................................................................19

7

8

*Anderson v. Heart Fed. Sav. & Loan Assn.*,
  208 Cal. App. 3d 202 (Cal. App. 3d Dist. 1989) ...............................................7

9

10

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ............................................................................15

11

12

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .................................................................................17

13

14

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
  2013 WL 12119569 (C.D. Cal. Apr. 29, 2013)................................................16

15

16

*Bentley v. United of Omaha Life Ins. Co.*,
  No. CV 15-7870,
  2018 WL 3357458 (C.D. Cal. May 1, 2018)...................................5, 14, 16, 19

17

18

*Bentley v. United of Omaha Life Ins. Co.*,
  No. CV 15-7870,
  ECF No. 174 (C.D. Cal. Feb. 21, 2019) .............................................................7

19

20

*Boyd v. Bank of Am. Corp.*,
  300 F.R.D 431 (C.D. Cal. 2014).......................................................................16

21

22

*Briseno v. Con Agra Foods, Inc.*,
  844 F. 3d 1121 (9th Cir. 2017) .........................................................................11

23

24

*Brown v. Kelly*,
  609 F3d 467 (2d Cir. 2010) ..............................................................................17

25

26

*Durant v. State Farm Mut. Auto. Ins. Co.*,
  NO. 2-15-CV-01710,
  2017 WL 950588 (D. Wash. March 9, 2017)............................................14, 20

27

28

*Ellsworth v. U.S. Bank, N.A.*,
  No. C 12–02506,
  2014 WL 2734953 (N.D.Cal. June 13, 2014)....................................22

*Flo & Eddie Inc. v. Sirius XM Radio, Inc.*,
  No. 13–5693,
  2015 WL 4776932 (C.D. Cal. May 27, 2015)..............................12, 14

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) .............................................................17

*Hahn v. Massage Envy Franchising, LLC*,
  No. 12CV153 DMS BGS,
  2014 WL 5099373 (S.D. Cal. Apr. 15, 2014) ...................................19

*Halberstam as Tr. of Zupnick Fam. Tr. 2008 B v.*
  *Allianz Life Ins. Co. of N.A.*,
  349 F. Supp. 3d 164 (E.D.N.Y. 2018) ................................................7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................12, 15, 19

*In re Toys R Us – Delaware, Inc. v.*
  *Fair & Accurate Credit Transactions Act Litig.*,
  300 F.R.D 347 (C.D. Cal. 2013).......................................................11

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C–07–5944,
  2013 WL 5391159 (N.D. Cal. Sep. 24, 2013) ...................................19

*Johnson v. Hartford Cas. Ins. Co.*,
  2017 WL 2224828 (N.D. Cal. May 22, 2017)......................14, 19, 23

*Lee v. Industrial Indemn. Co., Inc.*,
  177 Cal.App.3d 921 (1986) ................................................................6

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ............................................................21

*Liebovich v. Shahrokhkhany*,
  56 Cal. App. 4th 511 (Cal. App. 2d Dist. 1997)................................7

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) .....................................................25

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...................................................16

*Mackey v. Bristol West Ins. Services of CA, Inc.*,
  105 Cal.App.4th 1247 (2003) ......................................................6

*McHugh v. Protective Life Insurance Co.*,
  12 Cal. 5th 213 (2021) ..........................................1, 2, 5, 6, 8, 22, 24

*Miletak v. Allstate Ins. Co.*,
  No. C 06–03778,
  2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ......................................20

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) ................................................13

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ....................................................15

*Rannis v. Recchia*,
  380 Fed. Appx. 646 (9th Cir. 2010) .............................................11

*Thomas v. State Farm Life Ins. Co.*,
  424 F. Supp. 3d 1018 (S.D. Cal. 2019) ........................................5, 7

*Thomas v. State Farm Life Ins. Co.*,
  No. 20-55231,
  2021 WL 4596286 (9th Cir. Oct. 6, 2021) .................................2, 6, 24

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
  No. CV 11–5858,
  2013 WL 3200500 (C.D. Cal. June 17, 2003) .............................15, 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................12, 13, 14

*Wolin v. Jaguar Land Rover North Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...............................................15, 22

*Yokoyama v. Midland Nat. Life Ins.*,
  594 F.3d 1087 (9th Cir.2010) ...................................................21

**STATUTES**

Cal. Civ. Code, § 3289 ............................................................................21

Cal. Ins. Code, § 10111 ........................................................................7, 21

Cal. Ins. Code, § 10113.71 ...............................................................1, 5, 7, 8

Cal. Ins. Code, § 10113.72 ...............................................................1, 5, 6, 8

**OTHER AUTHORITIES**

Adv. Comm. Note, 39 F.R.D. 98 (1966) ...................................................17

**RULES**

Fed. R. Civ. P. 23........................................... 3, 10, 11, 12, 16, 17, 19, 25

**TREATISES**

*Manual for Complex Lit.* (4th ed. 2004) ...................................................25

I.     **INTRODUCTION**

This case is ideal for class certification because it presents a binary legal question applicable to thousands of California consumers:   *Did Defendant's terminated, pre-2013 life insurance policies remain in force considering that Defendant admittedly failed to comply with the notice procedures in Insurance Code sections 10113.71 and 10113.72?*   Defendant says 'no.' Plaintiff says 'yes.' Regardless of the ultimate merits, the question and answer will be the same for thousands, meaning that only one trial is necessary, not thousands of mini trials. Indeed, this case can be resolved on Plaintiff's concurrently filed motion for summary judgment.  This motion for class certification should be granted.

Plaintiff is the widow of Heron Moriarty who purchased a term life insurance policy from Defendant ("AGLIC") in 2012.  Mr. Moriarty tragically died in May 2016. Pursuant to its common claims handling practices, AGLIC denied Plaintiff Michelle Moriarty's claim because of a missed premium installment payment.  The denial was contrary to California law.

It is now abundantly clear that before an insurer can terminate a life insurance policy for non-payment of premium, the insurer must first provide three important things:  (1) both in practice and in the insurance contract itself, "a grace period of not less than 60 days from the premium due date" during which the policy remains in effect; (2) sufficient written notice of missed premium and notice "of pending lapse and termination;" and (3) an opportunity to designate at least one third party to receive these important notices (and an annual reminder of that designation right). Cal. Ins. Code §§ 10113.71, 10113.72 (collectively the "Statutes"); *McHugh v. Protective Life Insurance Co.*, 12 Cal. 5th 213, 220 (2021) ("*McHugh*").

AGLIC admits it did not comply with The Statutes.  The effect is simple and common across the class:   AGLIC's terminations were ineffective. The Statutes expressly require strict compliance.   Indeed, strict compliance with notice and termination rules has been the law in California for decades, i.e., long before

*McHugh* confirmed it. Our Ninth Circuit also confirmed this when affirming this District's decision in *Thomas v. State Farm* (Bashant, J.). *See Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 WL 4596286, at *1 (9th Cir. Oct. 6, 2021) ("*Thomas*") (affirming grant of summary judgment and confirming that "[a]n insurer's failure to comply with these statutory requirements means that the policy cannot lapse.").

Here, it is undisputed that AGLIC failed to provide these protections to the Moriarty family, robbing them of these safeguards designed to ensure protection of life insurance benefits. Ms. Moriarty is not alone. AGLIC has lapsed and terminated tens of thousands of life insurance policies for non-payment of premium without first providing the protections of the Statutes.

AGLIC's reasoning was singular and simple. AGLIC contended, and maintains today, that the Statutes do not apply to policies issued prior to 2013, when the Statutes were enacted, even if the policies remained in effect in or after 2013. Numerous District Courts, including this one, held that AGLIC's legal interpretation was wrong. *See* ECF No. 184 at 6. Then – while this case was pending – the California Supreme Court confirmed. *McHugh* at 220 ("We conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued."); Accord *Thomas,* 2021 WL 4596286.

Remarkably, Defendant will not concede the issue of statute applicability yet, defiantly vowing to not adjust its practices until a court of law with "binding" jurisdiction over it, makes it. To quote Defendant, testifying through its Chief Legal and Compliance Officer:

> … to the extent that there have been adverse decisions, including some preliminary decisions by this Court, there are no final, binding orders on the company to do anything differently than we're doing today.

Tomasevic Dec., Ex. T (Jennings Depo.) at 87:5-89:5 (and adding later, that even if

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

ordered by this court, it still will not take "action" until they have "exhausted all of [their] appeals"). In short, without this class action, Defendant will keep thumbing its nose at the law at the expense of thousands of consumers.

Ms. Moriarty and thousands of others fit the common profile of having purchased or been the beneficiaries of Defendant's pre-2013 policies that Defendant lapsed or terminated after the Statutes went into effect. It is undisputed that Defendant failed to apply the Statutes to these policies before terminating them.

Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent the following Class:

> All owners, or beneficiaries upon a death of the insured, of Defendant's individual life insurance policies that were renewed, issued, or delivered by Defendant in California, and in force on January 1, 2013, and which underwent or will undergo lapse or termination for the non-payment of premium without Defendant first providing all of the notices, grace periods, and offers of designation required by Insurance Code Sections 10113.71 and 10113.72.

Each class member's claim (and AGLIC's defense) hinges on whether the Statutes apply to policies issued or delivered prior to 2013 and what the legal effect of noncompliance is. Therefore, this case is particularly well-suited for class treatment.

To be sure, all of Rule 23's requirements are satisfied. There is no question that the class is sufficiently numerous. It has tens of thousands of members. Also, the case has at least one common question of fact or law sufficient to satisfy "commonality:" *do the statutes apply to the policies at issue?* Another common question – if not universal question – is: *what is the effect of noncompliance as a matter of law?*

Ms. Moriarty is typical of the class she seeks to represent. AGLIC admits that it decided not to apply the Statutes to any policies that, like the Moriarty policy, were issued before January 1, 2013, but which were still in force on or after January 1, 2013. And as AGLIC also admitted in discovery, it then lapsed and terminated the Moriarty policy as it did thousands of others and denied benefit claims. It continues to disavow those policies today. This harms policy holders and their

beneficiaries like Mrs. Moriarty in common ways:  by jeopardizing or rescinding the stated policy benefits.   Finally, Ms. Moriarty will adequately protect the class' interests and has retained counsel with extensive experience. Plaintiff has thus satisfied all of Rule 23 (a)'s requirements.

Plaintiff also satisfies at least two of Rule 23 (b)'s requirements.  The claims satisfy Rule 23(b)(2)'s requirement for a declaratory relief class because the party opposing the class – AGLIC here – has acted or refused to act on grounds that apply generally to the class.  AGLIC refuses to acknowledge the Statutes and refuses to recognize the pre-2013 policies as still in-force.

Plaintiff's claims also satisfy Rule 23 (b)(3)'s "predominance" and "superiority" prongs.  The most important question in this case, i.e., the predominant one, can be resolved in one stroke: whether the Statutes apply to policies issued before 2013 which were still in force as of that date or thereafter.  Class treatment is superior to 10,000+ mini actions because some claims may be quickly surpassed by the costs and other burdens of litigation. Additionally, most members are likely unaware that they have claims and the only thing they know is what Defendant erroneously told them:  that their policies terminated and that they have no rights. Certification would thus serve the important end of notifying class members of their important rights. Judicial efficiency and the possibility of inconsistent judgments further support superiority.

Alternatively, the central questions in this case – applicability of the Statutes and the legal effect of noncompliance – warrant issue certification under Rule 23 (c)(4) at a minimum. Defendant has fought vigorously to avoid application of the Statutes to older policies despite several other courts, including this court, proving Defendant wrong.  Thus, even if Mrs. Moriarty were to prevail on her individual claims, without certification, AGLIC promises to continue ignoring the Statutes' application to thousands of other pre-2013 policies. Tomasevic Dec., Ex. T (Jennings Depo.).   Absent certification, there will be no relief to the many

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  consumers who have lost the protections of these important statutes.

2  **II.    FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS**
3  **CERTIFICATION**

4      **A.    The Statutes at Issue and Their Important Purpose.**

5          The Statutes went into effect on January 1, 2013 and apply – despite

6  Defendant's wish – to every life insurance policy in California in effect on or after

7  that date. *See McHugh,* 12 Cal. 5th at 220. The Statutes require, among other things,

8  that life insurers provide: (1) a 60-day grace period in the policy contract and in

9  practice (10113.71 (a)); (2) sufficient notice of missed premium and "of pending

10 lapse and termination" prior to the effective termination date (10113.71(b)); and (3)

11 an opportunity to designate a third party to receive notice of a potential termination

12 of benefits for non-payment of a premium (10113.72).  *McHugh,* 12 Cal. 5th at 240;

13 *see also Bentley v. United of Omaha Life Ins. Co.*, No. CV 15-7870, 2018 WL

14 3357458, at *2 (C.D. Cal. May 1, 2018); *Thomas v. State Farm Life Ins. Co.*, 424 F.

15 Supp. 3d 1018, 1028 (S.D. Cal. 2019) (Bashant, J.). Indeed, this Court has already

16 once ruled that the Statutes apply to Defendant's policies, regardless of their original

17 date of issuance.  ECF No. 184 at 6 (applying the Statutes on a "renewal" theory).

18         These Statutes serve a vital public purpose. They:

19             provide[] consumer safeguards from which people who have purchased
20             life insurance coverage, especially seniors, would benefit. Under existing
               law, individuals can easily lose the critical protection of life insurance if
21             a single premium is accidentally missed (even if they have been paying
22             premiums on time for many years) . . . Therefore, the protections
               provided [] are intended to make sure policyholders have sufficient
23             warning that their premium may lapse due to nonpayment.

24

25 *McHugh,* at 241 (also noting that the Legislature meant to protect consumers "from

26 losing the important life insurance coverage they had spent years paying for").

27

28

### B. The Statutes Mandate Strict Compliance.   Failure to Comply Renders Any Attempted Termination Null & Void.

The Ninth Circuit – in affirming this District's recent decision in *Thomas* – confirmed that these Statutes require strict compliance.  *Thomas,* 2021 WL 4596286 at * 1 (citing *McHugh*).  To the extent the insurance company here tries to manufacture supposed individual issues under the rubric of a (phantom) causation element, it would be mistaken.

To be sure, California mandated strict compliance with procedural and statutory notice requirements long before *Thomas. See Mackey v. Bristol West Ins. Services of CA, Inc.,* 105 Cal.App.4th 1247, 1258 (2003) ("Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation."); *Lee v. Industrial Indemn. Co., Inc*., 177 Cal.App.3d 921, 924 (1986) ("strict compliance with the terms of contractual requirements for notice of cancellation is essential to effect a valid policy cancellation").[1]

Indeed, the Legislature built strict compliance right into these statutes.  For example, section 10113.72 expressly states that *"[n]o individual life insurance policy shall lapse or be terminated* for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated. . . ." Similarly, section

---

[1] One respected insurance law treatise refers to this requirement as one of "absolute" compliance:

> Generally, where the insurer attempts to cancel a policy for nonpayment of premiums, it is held to a strict standard requiring absolute compliance with policy provisions and the notice of cancellation must conform to all applicable statutes. Any ambiguities contained in such policies with respect to automatic termination at the end of the policy period where the insured fails to pay premiums in a timely manner, will be construed for the benefit of the insured ... The rule that any ambiguity will be construed liberally in favor of the insured is even stronger in forfeiture cases than elsewhere where forfeitures are not looked upon with favor. Thus, any language that is uncertain is to be interpreted to avoid a forfeiture or diminution in policy benefits.

2-7 Appleman on Insurance Law & Practice § 7.1 (2d 2011).

10113.71 (b)(1) states that lapse and termination "*shall not be effective* unless [notice is] mailed by the insurer to the named policy owner [and designee] . . . at least 30 days prior to the effective date of termination." Accord *Thomas v. State Farm Life Ins. Co.*, 424 F. Supp. 3d 1018, 1028 (S.D. Cal. 2019) (Bashant, J.) ("Defendant was required to comply with such requirements before terminating the Policies."). Stated differently, there is nothing that an individual policy owner (or class member) can do, or not do, to affect Defendant's liability here.[2] Indeed, AGLIC acknowledges that, if The Statutes are found to apply, and if it has not complied appropriately with them, the policies remain in force as do its promises to pay death benefits. *See* Tomasevic Dec., Ex. T (Jennings Depo.) at 140:2-25.

### C.   The Remedy for Wrongful Denial of Benefits in California.

Next, California law provides a common remedy for wrongful denial of benefits:  the face amount of the policy. Cal. Ins. Code § 10111.  Section 10111 makes clear that "the *only* measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." *Id.*

### D.   The Moriarty Policy and Claim for Benefits.

In September 2012, AGLIC issued a term life policy to Mr. Moriarty (the "Policy"). Declaration of Michelle L. Moriarty ("Moriarty Dec."), ¶ 3; Ex. A. Pursuant to the Policy, Mr. Moriarty paid an annual premium of $1,224.  Mr.

---

[2] The requirement of strict compliance with California notice laws is by no means unique to the insurance industry.  For example, strict notice compliance is required before a landlord can evict a tenant for nonpayment of rent.  *Liebovich v. Shahrokhkhany*, 56 Cal. App. 4th 511, 513 (Cal. App. 2d Dist. 1997).  A bank must strictly comply with statutory notice requirements before it can foreclose on its borrower's home for nonpayment of the mortgage. *Anderson v. Heart Fed. Sav. & Loan Assn.*, 208 Cal. App. 3d 202, 211 (Cal. App. 3d Dist. 1989) ("The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid").  Nor is California the only state that requires strict compliance with its notice provisions before letting an insurer lapse a life insurance policy for nonpayment of premium.  *Halberstam as Tr. of Zupnick Fam. Tr. 2008 B v. Allianz Life Ins. Co. of N.A.*, 349 F. Supp. 3d 164, 170 (E.D.N.Y. 2018) (applying New York Law and holding: "the grace notice was legally invalid, and thus the policy did not lapse").

Moriarty paid in monthly installments via bank draft.  He made timely payments for about 3.5 years. Moriarty Dec., ¶¶ 4-5.

However, the $107 installment payment due on in March of 2016 was rejected due to an intervening closure of the bank account. Moriarty Dec., ¶ 7. On March 24, 2016, AGLIC allegedly sent Mr. Moriarty a generic form letter saying that his "premium and/or loan repayment [] has been returned unpaid" due to account closure. Tomasevic Dec., Ex. C (the "bank draft return letter").  But Defendant never sent Mr. Moriarty a formal notice of "pending lapse or termination." *See* Cal. Ins. Code § 10113.71 (b)(1). Defendant also never sent anything to a third-party designee pursuant to section 10113.72 (c).  *Cf.* Cal. Ins. Code § 10113.71 (b)(1). On May 22, 2016, AGLIC allegedly sent Mr. Moriarty (only) a second letter stating that the Policy had already lapsed. Tomasevic Dec., Ex. D.

Mr. Moriarty died 9 days later.  Thereafter, Mrs. Moriarty filed a claim under the Policy. Moriarty Dec., ¶ 11. On July 6, 2016, AGLIC denied the claim noting that the Policy lapsed on March 20, 2016. Moriarty Dec., ¶ 11; *see* Tomasevic Dec., Ex. F. Notably, not only does this asserted lapse date fail to provide the required 60-day grace period under Section 10113.71 (a) (requiring that policies remain in effect for an additional 60 days), it also violates AGLIC's own 31-day contractual grace period promised in the Policy. Moriarty Dec., ¶ 3, Ex. A, p. 6. (Promising the Policy would remain in effect at least 31 days after March 20, 2016).

At no time from January 1st, 2013, through the purported lapse of the policy on March 20, 2016 did AGLIC advise Mr. Moriarty of his right to designate someone to receive important notices.  Mr. Moriarty was entitled to such notices in 2013, 2014, 2015 and ultimately again in 2016.  Cal. Ins. Code, § 10113.72 (b); *McHugh* at 220.

To summarize, AGLIC never issued Mr. Moriarty a policy containing a 60-day grace period and, instead, terminated the policy during that period.  AGLIC never provided a 30-day notice of pending lapse.  And Defendant never advised Mr.

1    Moriarty of his right to appoint a designee to receive notice.

2         **E.    AGLIC's Procedures Relating to All Pre-2013 Policies.**

3         AGLIC does not dispute the core facts. Instead, its position is simply that it

4    need not comply with the Statutes' requirements for policies originally issued prior

5    to 2013, like Mr. Moriarty's. *See* Tomasevic Dec., Ex. G (AGLIC letter where it

6    claims, on the first page, that there was no notice requirement for a 2012 policy like

7    Mr. Moriarty's); Ex. H, p. 2 (AGLIC again argues that the Statutes do not apply to

8    pre-2013 policies.); Ex. J ("It is the Company's position that Cal. Ins. Code §§

9    10113.71 and 101131.72 do not apply to [the Policy]."); Ex. K (Roch Depo.) at

10   67:8-68:11 (AGLIC confirms its position at its deposition); Ex. M (Hite Depo.) at

11   84:13-23, 98:4-11, 100:25-101:8 (same); ECF No. 16 (AGLIC's Answer repeatedly

12   denying that the Statutes apply to Plaintiff's claim); Ex. N (Miller Depo.) at 47:13-

13   23; 48:12-23; 56:10-14, 79:6-21; 97:23-98:11, 106:4-8 (AGLIC has applied

14   interpretation of the Statutes consistently in the past and continues to do so today).

15   Indeed, Defendant does not care that almost every court to decide the issue,

16   including this one and including the California Supreme Court and Ninth Circuit,

17   have definitively held that the Statutes apply to pre-2013 policies.  Tomasevic Dec.,

18   Ex. T (Jennings Depo.) at 87:5-89:5; 115:5-23; 118:10-19; 119:12-20.   In other

19   words, AGLIC had and still has a uniform company practice not to comply with the

20   Statutes for policies issued prior to 2013, even when such policies remained in effect

21   thereafter. *Id.; see also* Tomasevic Dec., Ex. L (Butler Depo.) at 143:4-14 (AGLIC

22   confirms that it handled Plaintiff's claim consistent with its internal policies).

23        Moreover, AGLIC admits that there are tens of thousands of other California

24   life insurance policies issued prior to 2013 which remained in effect in or after 2013,

25   which lapsed or terminated without AGLIC ever notifying the policy holder of the

26   right to appoint a designee for notice, without a proper 60-day grace period, and/or

27   without proper 30 days' notice of pending termination (because they did not believe

28   they had to do so). *See,* Tomasevic Dec., Ex. R at Suppl. Response to Interrogatory

No. 5.  (AGLIC terminated 57,767 policies issued before 2013, but which were in force on or after Jan. 1, 2013, without providing those people an opportunity to designate another person to receive notice of lapse or termination for nonpayment of premium); *id.* at Ex. S, 2d Suppl. Responses to Interrogatory Nos. 3 & 4. (tens of thousands of pre-2013 policies lapsed or terminated without giving, respectively, a proper 60 day grace period or 30 days' prior written notice of termination); *id.* at Ex. L (Butler Depo.) at 143:4-14 (AGLIC confirms that it handled Plaintiff's claim consistent with its policies).

Mrs. Moriarty alleges that the lapse and termination of her family's policy for nonpayment of premium was wrongful and done in bad faith, as was the lapse and termination of thousands of other policies which stayed in effect after enactment of the Statutes.   To present her claims on behalf of herself and the class, Plaintiff has retained counsel with extensive class action and insurance law experience. *See* Moriarty Dec., ¶ 15; Tomasevic Dec., ¶¶ 1-11; Winters Dec., ¶¶ 2-13. Further, she has familiarized herself with the facts of the case and legal theories and has worked diligently to pursue the case and participate in discovery. Moriarty Dec., ¶¶ 15-17, Ex. B. Put simply, Plaintiff is an adequate class representative and she asks that this Court certify this case as a class action pursuant to Rule 23.

## III.   ARGUMENT

A class action may be certified if Rule 23 (a) is satisfied and if one of Rule 23(b)'s several provisions is satisfied.  Fed. R. Civ. P. 23.  Plaintiff has satisfied each of the requirements of Rule 23(a).  She has also satisfied at least two of the prongs under Rule 23(b):   Rule 23(b)(2)'s requirements for an injunctive or declaratory relief class as well as the requirements of Rule 23(b)(3). Alternatively, the Court should certify the issue of whether the Statutes apply to Defendant's policies issued prior to January 1, 2013, but which remained in effect in or after 2013 along with the issue of whether those policies remain in-force considering Defendant's non-compliance with The Statutes.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**A.      Plaintiff's   Putative   Class   Satisfies   Each   of   Rule   23(a)'s Requirements.**

Under Rule 23 (a), the prerequisites for class certification are: (1) Numerosity: "the class is so numerous that joinder of all its members is impracticable"; (2) Commonality: "there are questions of law or fact common to the class"; (3) Typicality: "the claims of the [class representatives] are typical of the claims … of the class"; and (4) Adequacy of representation: the class representative(s) and class counsel "will fairly and adequately represent the interests of the class."[3] Fed. R. Civ. P. 23 (a). Plaintiff has satisfied each prerequisite.

*1.      Numerosity is easily satisfied here.*

To satisfy the numerosity requirement, joinder need not be impossible.   All that is required is that class members would suffer a strong litigation hardship or inconvenience if joinder were required. *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010). In general, this hardship is presumed, and numerosity is met, when a class includes at least 40 members. *Id*. at 651; *see In re Toys R Us – Delaware, Inc. v. Fair & Accurate Credit Transactions Act Litig*., 300 F.R.D 347, 367-368 (C.D. Cal. 2013) ("…classes of 40 or more are numerous enough").

Here, AGLIC, like all insurance companies, keeps detailed electronic data about its policies, insureds, and beneficiaries.[4]   In discovery, for example, AGLIC identified over 57,700 policies issued prior to 2013 that subsequently lapsed or

---

[3] Unlike some circuits, the Ninth Circuit does not have an express "ascertainability" requirement for certification under Rule 23. *See Briseno v. Con Agra Foods, Inc.* 844 F. 3d 1121, 1124-1125, fn. 4 (9th Cir. 2017).

[4]  AGLIC maintains various electronic systems where it houses each of its life insurance policies and related information. Tomasevic Dec., Ex. M (Hite Depo.) at 19:18-22:22. These systems warehouse information relating to the policies such as the status of each policy (i.e., in force versus lapsed), whether they were issued in California, the amount of the policies total benefits, and the names, addresses, and phone numbers of insureds. *Id.* at 23:24-24:5; 24:14-17; 32:25-33:8; 55:10-56:1; 56:19-25. In responding to Ms. Moriarty's Interrogatories, AGLIC gathered information from these electronic systems. *Id.* at 24:10-13; 24:22-25; 25:1-12. The information is also kept on a running basis for the Department of Insurance. *Id.* at Ex. O (Marash Depo.) at 48:15-49:19.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

terminated for nonpayment of premium without first giving any opportunity to designate a third party to receive important notices, as contemplated by the Statutes. Tomasevic Dec., Ex. R at 6:15-23 (AGLIC's responses to written discovery). Defendant also identified over 47,000 policies issued prior to 2013 remaining in effect thereafter that lapsed or terminated for nonpayment of premium without a proper 60-day grace period, or 30-day notice of impending lapse as also required by the Statutes.  Tomasevic Dec., Ex. S at 4:9-22, 6:5-21 (same). These numbers easily satisfy the numerosity requirement.

Of these policies, there are also many which have lapsed, where the insured has died, and where no policy benefits have been paid because the policy was terminated. Tomasevic Dec., Ex. O (Marash Depo.) at 48:15-49:19.

### 2.    *The claims of Plaintiff and her fellow class members share common questions of fact and law.*

Plaintiffs must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). To meet this requirement, plaintiffs must demonstrate at least one "common contention … capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Flo & Eddie Inc. v. Sirius XM Radio, Inc*., No. 13–5693, 2015 WL 4776932, at *9 (C.D. Cal. May 27, 2015) (citing *Dukes*, 564 U.S. at 338) ("class claims must depend on a common contention" and show that the "…determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.") Otherwise stated, a common question exists, uniting the class's claims for purposes of commonality, where a practice by the defendant "touch[es] and concern[s] all members of the class." *Dukes*, 564 U.S. 338, 359 fn. 10.

All questions of fact and law need not be common.  Instead, "shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies" suffice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The standard is not a particularly stringent one, even a "single

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

common question" will do. *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016).

One common legal question also happens to be the most important threshold one here that Defendant refuses to concede even in the face of this Court's, the Supreme Court's, and the Ninth Circuit's definitive rulings: *do the Statutes apply to Defendant's policies issued prior to 2013 but remaining in effect after the start of 2013, like Mr. Moriarty's Policy*. Factually, each class member's claim is premised on the same core conduct by AGLIC – lapsing or terminating a policy issued prior to 2013, that existed in or after 2013, for the same reason (non-payment of premium), without providing all of the same three protections enumerated in the Statutes (i.e. without providing a proper 60-day grace period, without providing proper 30 days' notice of termination, and/or without affording the opportunity to name a designee.) *See* FAC, ECF No. 18 at ¶¶ 17-42 (contending the Statutes apply to pre-2013 policies remaining in effect after 2013 like the Policy) versus AGLIC's Answer, ECF No. 31 at ¶¶ 17-42 (denying that the Statutes apply to pre-2013 policies); and *see* Tomasevic Dec., Ex. L (Butler Depo.) at 143:4-14 (confirming AGLIC handled Plaintiff's claim consistent with AGLIC policies regarding notice and lapse); *Id.* at Ex. K (Roch Depo.) at 67:8-68:11 (confirming, at deposition, the company's position that the Statutes do not apply to policies issued before January 1, 2013); *Id.* at Ex. M (Hite Depo.) at 84:13-23, 98:4-11, 100:25-101:8 (same); *Id.* at Ex. T (Jennings Depo.) at 87:5-89:5; 115:5-23; 118:10-19; 119:12-20. Plaintiff's claims, and those of every class member, hinge on the Court's answer to this common legal question and this common set of facts.

Moreover, when the Court confirms again the Statutes apply, then the breach necessary for each class member's contract and declaratory relief claims (along with derivative UCL claims) will necessarily be established. *See* FAC, ECF No. 18 at pp. 19-26. As such, the truth or falsity of the central issue to the validity of each class members' claims can be determined in one stroke. *Dukes*, 564 U.S. 338 at 341. I.e.,

1  whether the Statutes apply to pre-2013 policies lapsed for non-payment "touch[es]

2  and concern[s]" each member of the class. *Id.* at 359, fn. 10.

3      Several courts have found commonality in analogous contexts. Most recently,

4  the Central District in *Bentley* addressed class certification of claims involving

5  another life insurer's failure to apply the Statutes to policies issued prior to 2013.

6  Like AGLIC here, the insurer in *Bentley* took the position that it need not comply

7  with the Statute's designee and notice to designee requirements. *Bentley*, 2018 WL

8  3357458, at *2 ("[I]f an insurer fails to give a policyholder an opportunity to name a

9  designee, the notice [of cancelation] to the policyholder is not effective. . . . United

10 maintains that it did not need to send out [designee] notices because Bentley's policy

11 was issued before the Statutes' effective date.").  Given the central importance of the

12 Statutes, the Central District easily found commonality. *Id.* at *8 ("If the Court

13 determines that United violated the Statutes by not providing adequate notice, then

14 Plaintiff and class members will prevail. Otherwise, United will win.").

15     Also, in *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, *12-13 (N.D.

16 Cal. May 22, 2017), a class of property insurance policy owners challenged

17 defendant-insurer's practice of depreciating certain covered costs, citing the

18 California Insurance Code's restrictions on depreciation under certain enumerated

19 circumstances. *Id.* The Court certified the class, finding each of the class member's

20 claims hinged on the same conduct, the legality of which could be decided based on

21 the court's interpretation of the applicable Insurance Code provisions. *Id.*

22     Further examples of class certification in this context abound. See *Durant v.

23 State Farm Mut. Auto. Ins. Co.*, NO. 2-15-CV-01710, 2017 WL 950588, *4 (D.

24 Wash. March 9, 2017) (commonality found for class of auto insurance policy owners

25 because defendant auto insurance provider denied each of their claims based on a

26 uniform policy interpretation and therefore the legality of defendant's practice could

27 be decided commonly); *Flo & Eddie*, 2015 WL 4776932 at *9 (class of copyright

28 owners certified in part because the conduct alleged against defendant– unlawful

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

broadcasting of plaintiffs' songs without a license – as well as the core legal determination – whether the alleged broadcasting required prior owner authorization under California law – was common and could be decided for each class member uniformly); *Vaccarino v. Midland Nat'l Life Ins. Co.*, No. CV 11–5858, 2013 WL 3200500, **6-7 (C.D. Cal. June 17, 2003) (commonality satisfied because defendant's challenged practice of annuity bonus recoupment was applied to all class members in the same manner).

As in each of these analogous cases, AGLIC's conduct, and the illegality of such conduct is common across the class. Commonality exists here.

   3.   *Plaintiff's claims are typical because she is perfectly aligned with her putative class members.*

The purpose of Rule 23 (a)(3)'s typicality requirement is "…to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC,* 617 F.3d 1168, 1175-1176 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (typical claim arises from same course of events and relies on similar legal arguments). This is a lenient requirement. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). It is not necessary that the class-member claims and representative claims be "substantially identical." *Id*. All that is necessary is that representative claims be "reasonably coextensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff's claims are reasonably co-extensive with those of the class. Every class member has the same complaint: that AGLIC terminated their policy before giving them all of the protections required by the Statutes, including a 60-day grace, the right to designate, and a 30-day lapse notice to both the policy owner and the designee. Every class member, in turn, is in danger of losing, or has actually lost, the same thing:  coverage guaranteed by law and payment of policy benefits.  In short, every class member wants the same things for the same reasons.  Thus, Plaintiff's

1    claims meet the Rule 23 (a)(3) typicality requirement.

2         Once again, the *Bentley* class certification order is instructive. A named

3    plaintiff who suffers the "same injury" as a result of the "same blanket policy" is

4    typical of the class. *Bentley*, 2018 WL 3357458, at *9 (Further concluding that

5    typicality exists where the named plaintiff, like "[a]ll the class members," "did not

6    receive notices" and where the insurer simply "followed its general rule of not

7    giving notice on policies purchased before 2013."), *citing Ballas v. Anthem Blue*

8    *Cross Life & Health Ins. Co.*, 2013 WL 12119569, at *9-10 (C.D. Cal. Apr. 29,

9    2013) (readily finding typicality in a case dealing with denied insurance coverage for

10   a medical procedure based on the defendant-insurer's "blanket" policy determination

11   that the requested procedure was "experimental" and therefore not covered).

12   Typicality exists here.

13                    4.      *Plaintiff is an adequate representative.*

14        Rule 23 (a)(4)'s adequacy requirement mandates that a representative plaintiff

15   "fairly and adequately protect the interests of the class." *See Boyd v. Bank of Am.*

16   *Corp.,* 300 F.R.D 431, 438 (C.D. Cal. 2014). Here, a plaintiff must merely show that

17   his/her interests are not antagonistic to those of the class and that she will prosecute

18   the action vigorously through qualified and competent counsel. *See Linney v.*

19   *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

20        Plaintiff's fundamental objective in this litigation is to obtain a ruling, through

21   declaratory relief or otherwise, that the Statutes apply to policies issued prior to 2013

22   that remained in effect thereafter. *See* ECF No. 18 (First Cause of Action for

23   Declaratory Relief). In fact, Plaintiff already obtained that ruling once even *before*

24   the *McHugh* Court confirmed it.  ECF No. 184.  If Plaintiff prevails on this central

25   issue, she and all class members benefit. If she does not, her claims, and those of the

26   other class members, fail for the same reasons.

27        Plaintiff has every incentive (including an insurance benefit to collect) to

28   vigorously pursue her and the class' claim on their mutual, collective behalf. And

Mrs. Moriarty has no conflicts with the other members of the proposed class. Moriarty Dec., ¶ 14; Tomasevic Dec., ¶¶ 12-13.

Moreover, Plaintiff has acknowledged her duties as a class representative, including the duty to put the interests of the class ahead of her own and to act as a champion for the class. Moriarty Dec., ¶ 17, Ex. B.  She has fulfilled the promises she made to adequately represent the class, Moriarty Dec., ¶¶ 15-17, and has hired attorneys very competent in the relevant areas of the law. *Id.* at ¶ 15; Tomasevic Dec. ¶¶ 2-11; Winters Dec. ¶¶ 2-13.

**B.    Plaintiff's Claims Also Satisfy At least Two Provisions of Rule 23(b).**

In addition to all of Rule 23(a)'s requirements, Plaintiff's claims satisfy both 23(b)(2) and 23(b)(3).

*1.    Plaintiff Has Satisfied the Requirements for a Declaratory or Injunctive Relief Class under Rule 23(b)(2).*

A class action is proper where the party against whom relief is sought has acted (or refused to act) on grounds generally applicable to a class of persons, thereby making appropriate declaratory or injunctive relief with respect to the class as a whole. Fed. R. Civ. P. 23 (b)(2).  Grounds "generally applicable to a class" does not mean, however, that every single class member must have been injured or aggrieved in the same way by the defendant's conduct. It is sufficient if defendant has adopted a pattern of activity that is likely to be the same as to all members of the class. *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 52, 63-64 (3d Cir. 1994); *see also* Adv. Comm. Note (1966) 39 F.R.D. 98, 102; *Brown v. Kelly,* 609 F3d 467, 477, fn. 8 (2d Cir. 2010) (collecting cases).  Specifically, certification under 23(b)(2) is available when Plaintiffs are seeking a declaration or injunction with respect to their rights under an insurance contract.  *See, e.g., Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 427 (6th Cir. 2012).

Here, Defendant refuses to provide all the key protections mandated by the Statutes, including sufficient grace periods, sufficient notice of lapse, and the opportunity to designate third parties to receive important notices. Defendant also refuses to acknowledge that these policies are in force as a matter of law. Finally, Defendant promises to keep ignoring The Statutes and the affected policies until hit with a "binding" ruling and only after exhausting all appeals. Tomasevic Dec., Ex. T (Jennings Depo.). Defendant's refusals are a common "pattern of activity" that apply to everyone in the class. For example, Defendant did not provide *anyone* with a pre-2013 policy the right to designate another person to receive the important notices mandated by the Statutes because it did not think it was required to. And Defendant, commonly, refuses to acknowledge that *any* of those policies remain in force pursuant to statute.

Plaintiff has, since the beginning of the case, sought a declaration that this pattern of activity, and Defendant's interpretation of the Statutes, is indeed improper. See ECF No. 18, ¶¶ 64-75 (First Amended Complaint). Plaintiff also seeks a declaration that the pre-2013 policies are in force as well as an injunction requiring Defendant to provide the notices and rights mandated by the Statutes. *Id*. at ¶ 60. Such relief is appropriate for the class because Defendant has denied that relief to the class as a whole and for the same reason. Certification under Rule 23(b)(2) is, therefore, appropriate.

> 2. *Plaintiff's claims also satisfy Rule 23(b)(3)'s "Predominance" and "Superiority" Requirements.*

Certification under Rule 23(b)(3) is also appropriate here to return the insurance policy benefits that Defendant has wrongfully withheld from class members. To achieve certification under Rule 23(b)(3), there must be "questions of law or fact common to the members that predominate over any questions affecting only individual members" and a class proceeding must be "superior to other available methods for fair and efficient adjudication of the controversy." *See* Fed. R.

Civ. P. 23 (b)(3). The proposed class meets each requirement here.

a. <u>Nearly every important factual and legal issue in this matter is common among class members.   As such, common issues predominate.</u>

Rule 23 (b)(3)'s predominance test gauges "whether proposed classes are sufficiently cohesive to warrant adjudication by representation…[and] focuses on the relationship between the common and individual issues." *See Hanlon*, 150 F.3d at 1022. The test is satisfied when "common questions present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication." *Id*. Establishing predominance "does not require plaintiffs to prove that every element of a claim is subject to class-wide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C–07–5944, 2013 WL 5391159, *2 (N.D. Cal. Sep. 24, 2013). Predominance is readily established in a case like this where the class' failure to win on a key question – here, whether the Statutes apply to policies issued before 2013 but which remained in effect thereafter – "would end the case for one and for all." *Cf. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

Courts routinely find predominance in cases involving company-wide practices or policies alleged to be illegal. *See e.g. Bentley*, 2018 WL 3357458, at *11 (Predominance established where "[t]he evidence shows that [insurer] has a uniform practice of not providing notice to policyholders and their designees if they purchased their policies before the Statutes' effective date."); *Hahn v. Massage Envy Franchising, LLC*, No. 12CV153 DMS BGS, 2014 WL 5099373, at *11-12 (S.D. Cal. Apr. 15, 2014) (finding predominance of common questions relating to a contractual forfeiture clause that the plaintiff alleged was illegal under Cal. Civ. Code section 1671; *Johnson*, 2017 WL 2224828 at **15-16 (predominance met in breach of insurance contract class action because "[Plaintiff's] claims revolve around [Defendant's] alleged failure to pay the amount it owes under its insurance

contracts to the insured… These questions . . . can be resolved through the interpretation of one statute. . . ."); *Durant*, 2017 WL 950588 at **5-6 (predominance satisfied because the legality of defendant's uniform standard of denying claims); *Miletak v. Allstate Ins. Co.*, No. C 06–03778, 2010 WL 809579, *12 (N.D. Cal. Mar. 5, 2010) (common issues predominate where it is alleged that defendant's practice induces early insurance premium payments for all plaintiffs).

Common issues abound here and predominate over any individual inquiries. As was true in *Amgen Inc.* and the other cases listed above, the driving common question of applicability of the Statutes to class members' policies will effectively resolve this case. As was true for these other certified cases, Plaintiff's claims challenge a common company policy that she contends is illegal and results in damages which are set by statute. *See* Tomasevic Dec., Ex. L (Butler Depo.) at 143:4-14 (confirming AGLIC handled Plaintiff's claim consistent with AGLIC policies); *Id.* at Ex. K (Roch Depo.) at 67:8-68:11 (confirming AGLIC's position that the Statutes do not apply here); *Id.* at Ex. M (Hite Depo.) at 84:13-23, 98:4-11, 100:25-101:8 (same).

Another key predominating question is whether, considering Defendant's admitted failure to follow the Statutes, the pre-2013 policies remained in force. Plaintiff will prove concurrently at summary judgment that the answer is "yes" and will prove it with common evidence including the wording of the Statutes themselves and the clear interpretations of the Supreme Court and the Ninth Circuit.

More specifically, to prove Defendant's liability for breach of contract and to establish a right to declaratory relief (as well as derivative UCL liability), common evidence will be and already has been used to establish the following facts:

- It is undisputed that AGLIC issued thousands of life-insurance policies to potential class members prior to 2013 that remained in force on or after the start of 2013.

- As a matter of policy, AGLIC did not provide an opportunity for these

policyholders to designate a third party to receive notices of lapse at any time in or after 2013. Tomasevic Dec., Ex. R at 6:16-23; Ex. L (Butler Depo.) at 143:4-14; Ex. K (Roch Depo.) at 67:8-68:11; Ex. M (Hite Depo.) at 84:13-23, 98:4-11, 100:25-101:8.

- As a matter of policy, AGLIC did not provide 30-days' notice of pending lapse and termination prior to the effective date of termination for these older policies. *Id.*, Ex. S at 6:5-21; Ex. L at 143:4-14; Ex. K at 67:8-68:11; Ex. M (Hite Depo.) at 84:13-23, 98:4-11, 100:25-101:8.

- As a matter of policy, AGLIC did not provide these older policies with 60-day grace periods. *Id.*, Ex. S at 4:9-22; Ex. L at 143:4-14; Ex. K (Roch Depo.) at 67:8-68:11; Ex. M (Hite Depo.) at 84:13-23, 98:4-11, 100:25-101:8.

- Despite the lack of these protections ensured by the Statutes, AGLIC lapsed and terminated tens of thousands of policies in force as of or after January 1, 2013 for nonpayment of premiums and refuses to acknowledge that any of them are in force today. *Id.*, Ex. R at 6:16-23; Ex. S at 4:2-22, 6:5-21.

Whether Defendants' common behavior was proper requires a single analysis of the Statutes which will, in turn, dispose of every class-member's claim.

Moreover, while it is not necessary to assess damages now for beneficiaries, that assessment will be uniform across the class. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat. Life Ins.*, 594 F.3d 1087, 1089 (9th Cir.2010). If the insured has passed, the quantum of damage will be the face amount of the policy. *See* Cal. Ins. Code § 10111 and Section II(A), *supra*. Likewise, prejudgment interest is set by California statute and/or the policy itself and can be uniformly added to the withheld policy benefits. *See* Cal. Civ. Code § 3289 (setting prejudgment interest). The damage analysis is, thus, the straightforward arithmetic of adding up the policy values and the prejudgment interest from the date of death of the insured. This analysis is applicable to all beneficiaries and it is directly tied to the liability (that is, the illegal behavior and

1   breach) Plaintiff is attempting to prove. In short, the most important issues here are

2   common, i.e., the common issues predominate.

3           b.      <u>Class adjudication of this dispute is far superior to individual lawsuits.</u>

4

5           Rule 23(b)(3)'s superiority requirement tests whether a class action is the

6   most efficient and effective means of resolving the controversy. *Wolin*, 617 F.3d at

7   1175. Factors to consider in assessing superiority include the class member's

8   interests in individually controlling the prosecution or defense of separate actions;

9   the extent and nature of any litigation concerning the controversy already begun by

10  or against class members; the desirability or undesirability of concentrating the

11  litigation of the claims in the forum; and the likely difficulties in managing a class

12  action. *Ellsworth v. U.S. Bank, N.A.*, No. C 12–02506, 2014 WL 2734953, * 29

13  (N.D.Cal. June 13, 2014). The objective of the superiority analysis is to "focus on

14  efficiency and economy so that appropriate cases may be adjudicated most profitably

15  on a representative basis." *Id.*

16          Class treatment of this dispute is far superior to individual adjudication for

17  several reasons. First, without class notice, most, and likely all, class members will

18  never know they have a claim. Those concerned with life insurance benefits are

19  usually the old, sick, or their grieving family members.  These groups either may not

20  know the policy lapsed or may believe the policy lapsed but there is nothing that can

21  be done to remedy that fact, i.e., they believe what their insurance company

22  erroneously told them: that their policy *properly* lapsed.

23          The California Legislature recognized the vulnerability of the people meant to

24  be protected by the Statutes, which was a main reason why California enacted the

25  Statutes in the first place.  *See McHugh*, 12 Cal. 5th at 241.

26          Furthermore, where the insured has died and the real party in interest is the

27  policy beneficiary, like Mrs. Moriarty, it is especially unlikely the beneficiary will

28  know whether AGLIC complied with the Statutes or whether a claim exists at all.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

This is especially true in light of AGLIC's apparent practice of refusing to provide claim and underwriting files to policy beneficiaries. *See* Tomasevic Dec., Ex. I.

Second, Defendant's own chief legal officer confirms that class certification is essential, not just superior.  Without a "binding" class certification ruling and judgment, Defendant defiantly vows to keep violating the Statutes and ignoring the thousands of affected policies.  Tomasevic Dec., Ex. T (Jennings Depo.).

Third, the record is devoid of any other suits or claims against AGLIC on this issue. Tomasevic Dec., ¶ 15.  This suggests that individual suits are perhaps not a viable alternative to class treatment and that class adjudication will not disrupt any other ongoing proceedings covering the same subject matter. *See e.g. Alba v. Papa John's USA*, No. CV 05-7487, 2007 WL 953849, *15 (C.D. Cal. Feb. 8, 2007); *Johnson*, 2017 WL 2224828 at **16-17.

Finally, litigating the class' claims through one action in a single forum is the sensible way to proceed in terms of both judicial efficiency and equity. As discussed throughout this Motion, the factual and legal bases for Plaintiff's claims are shared by each class member and can be managed and decided in "one stroke" by the Court. Multiple courts deciding identical claims about the same statutes across various forums is a misuse of judicial, party, and attorney resources. It also risks inconsistent judgments. These additional factors further support superiority. *See Vaccarino*, 2013 WL 3200500 at *20; *Johnson*, 2017 WL 2224828 at **16-17.

## C.    There are No Relevant "Causation" Questions that Defeat Predominance Here[5].

Defendant – faced with undisputed facts and clear rulings from California's High Court – will strain to make issues out of what it couches as "causation" issues. Indeed, the Court raised related questions in denying, before *McHugh* and *Thomas,* the original motion for class certification without prejudice.  Defendant's causation

---

[5] Plaintiff further discusses this issue in her Summary Judgment motion at Sections "II.A" and "II.B."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    questions are a distraction and *McHugh* and *Thomas* confirm it.

2         In *McHugh,* the Supreme Court not only confirmed that The Statutes apply to

3    pre-2013 policies, but also that failure to comply means that "any termination for

4    nonpayment will not be effective," *McHugh,* 12 Cal. 5th at 240.[6]  Our Ninth Circuit

5    decided *Thomas* about two months after *McHugh.  See Thomas,* 2021 WL 4596286.

6    In *Thomas,* State Farm appealed the entry of summary judgment in favor of the

7    Plaintiff after she established that State Farm terminated her policy without first

8    providing all the protections afforded by The Statutes.  *Thomas,* 2021 WL 4596286

9    at *1 ("The policies did not lapse because State Farm failed to comply.").

10        State Farm raised the same arguments on appeal that Defendant raised here in

11   the first round of briefing.  State Farm argued that Thomas was not entitled to

12   judgment on her breach of contract action because Thomas allegedly "did not offer

13   any evidence that the policies would not have lapsed even had State Farm complied

14   with sections 10113.71 and 10113.72." *Thomas,* 2021 WL 4596286 at *1; *compare*

15   ECF No. 150 (AGLIC's original opposition asks similar questions).

16        The Ninth Circuit, though, expressly rejected these arguments noting that such

17   evidence "is not necessary for Thomas to prevail." *Thomas,* 2021 WL 4596286 at

18   *1. Said differently, State Farm's questions, couched craftily as "causation" issues,

19   were simply irrelevant distractions.  Rather, because it was undisputed that State

20   Farm failed to provide all the Statutes' protections– including the right to designate a

21   third party to receive notice of lapse – "State Farm failed to comply with [the

22   Statutes], which prevented the policies from lapsing."  *Thomas,* 2021 WL 4596286

23   at *1.  State Farm thus "breached its obligations" by terminating the policy and

24   failing to pay benefits to Ms. Thomas, meaning that the district court properly

25   granted summary judgment for Thomas.  *Id.*

26   _____

27   [6] But the Court stopped short of overturning the underlying jury verdict because
     "plaintiffs did not petition for [the Court's] review on this issue, and it [was] not

28   squarely before [it]."  *Id.* at 246, n. 10.

So too is the case here.  Because Defendant admittedly failed to comply with The Statutes, the policies remained in-force.  In turn, in-force policies are entitled to payment of benefits when there is a death.  Period.

### D. Alternatively, the Court Could Certify Issue Classes Per 23(c)(4).

Per 23(c)(4): "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  "Selectively used, this provision may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action." *Manual for Complex Lit.* (4th ed. 2004) § 21.24.

As an alternative to certification of this entire class as defined under Rule 23(b)(2) and/or 23(b)(3), the Court could certify merely these issues: whether the Statutes apply to AGLIC's California life insurance policies issued prior to January 1, 2013, *cf. Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (certifying class under Rule 23(c)(4) for liability determination), and/or the issue of whether Defendant strictly complied with The Statutes, along with the legal issue of whether Defendant's pre-2013 policies remained in force considering Defendant's failure to apply The Statutes. To avoid a failure of justice, the Court should do so if it – and only if it – declines to certify the entirety of the Class under 23(b)(2) or (b)(3).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court certify Plaintiff's proposed class, appoint Plaintiff as class representative, and appoint Nicholas & Tomasevic, LLP as well as Winters & Associates as Class Counsel.

Respectfully submitted:

DATED:  February 7, 2022                    **NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Alex Tomasevic*
Craig M. Nicholas (SBN 178444)
Alex M. Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, CA 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff, MICHELLE L. MORIARTY, Individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class