MICHAEL D. MULVANEY (*pro hac vice*)
CHRISTOPHER C. FROST (SBN 315932)
NICHOLAS J. BOOS (SBN 233399)
mmulvaney@maynardcooper.com
cfrost@maynardcooper.com
nboos@maynardcooper.com
MAYNARD COOPER & GALE, LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
T: (415) 646-4700
F: (205) 254-1999

DAVID J. NOONAN (SBN 55966)
dnoonan@noonanlance.com
NOONAN LANCE BOYER & BANACH, LLP
701 Island Avenue, Suite 400
San Diego, CA 92101
T: (619) 780-0880
F: (619) 780-0977
Attorneys for Defendant
AMERICAN GENERAL LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, Individually, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN GENERAL LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Case No. 3:17-cv-1709-BTM-WVG <br><br> **DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> **Judge:** Hon. Barry Ted Moskowitz <br> **Magistrate:** Hon. William V. Gallo <br> **Date:** March 7, 2022 <br> **Time:** 2:00 p.m. <br> **Trial Date:** None Set <br><br> [PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT] |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................ 1

II.  BACKGROUND ................................................................................. 2

III. LEGAL STANDARD .......................................................................... 3

IV.  ARGUMENT ..................................................................................... 3

   A. Plaintiff has not proven that common questions predominate over individual issues. ............................................................................... 3

      1. Individual issues of fact predominate. ...................................... 3

         a. Plaintiff has not proven class-wide non-compliance with the Statutes. ......................................................................... 4

         b. There are material variations in policy terms. .................... 7

         c. Renewals raise individualized inquiries. ........................... 7

         d. Many policyholders stop paying premiums and let their policies lapse voluntarily. ................................................................ 8

         e. Reinstatement raises individualized inquiries. ................... 9

      2. Plaintiff cannot bypass the individualized factual issues about breach, causation, damages, and defenses. ............................... 9

      3. Individual issues of law predominate. .................................... 12

         a. Plaintiff cannot show it is constitutional to apply California law for each member. ............................................................. 13

         b. The applicable law will vary. .......................................... 13

      4. Plaintiff has not submitted a realistic trial plan. .................... 15

   B. Plaintiff has not proven commonality. ............................................ 16

   C. Plaintiff has not proven that class treatment is superior to other methods for resolving the controversy. ........................................... 17

   D. This Court lacks subject-matter jurisdiction over much of the class. .......... 19

1.  Plaintiff lacks Article III standing to seek injunctive or declaratory relief. ................................................................................ 19

2.  The proposed class includes members who lack standing. ................... 20

3.  SLUSA precludes certain class claims for variable policies. ............... 21

E.  Plaintiff has not proven that her claims are typical of proposed class members. .................................................................................... 22

F.  Plaintiff has not proven that she will be an adequate representative. .......... 23

G.  Plaintiff fails to satisfy the requirements for a Rule 23(b)(2) class. ........... 23

H.  Plaintiff cannot satisfy the requirements for an "issue class" under Rule 23(c)(4). ............................................................................ 25

V.    CONCLUSION .................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Abby v. City of Detroit*,
  218 F.R.D. 544 (E.D. Mich. 2003)...........................................................................17

*Abdeljalil v. General Electric Capital Corp.*,
  306 F.R.D. 303 (S.D. Cal. 2015)...............................................................................24

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*,
  247 F.R.D. 156 (C.D. Cal. 2007) ..............................................................................10

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................................17

*American Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013) ....................................................................................................3

*American Western Door & Trim v. Arch Specialty Insurance Co.*,
  2015 WL 1266787 (C.D. Cal. Mar. 18, 2015) ............................................................4

*Andren v. Alere, Inc.*,
  2017 WL 6509550 (S.D. Cal. Dec. 20, 2017)...........................................................15

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ..........................................................11

*Ayala v. U.S Xpress Enters.*,
  2016 WL 7586910 (C.D. Cal. Dec. 22, 2016) .....................................................13, 15

*B.K. ex rel. Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019)....................................................................................20

*Baby Neal ex rel. Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994)..........................................................................................24

*Bennett v. Reliastar Life Insurance Co.*,
  2020 WL 5835324 (C.D. Cal. Sept. 23, 2020)............................................................8

*Bentley v. United of Omaha Life Insurance Co.*,
  2016 WL 7443189 (C.D. Cal. June 22, 2016) ..........................................................20

*Bentley v. United of Omaha Life Insurance Co.*,
  2018 WL 3357458 (C.D. Cal. May 1, 2018) ..............................................................9

*Bentley v. United of Omaha Life Insurance Co.*,
  2020 WL 3978090 (C.D. Cal. Mar. 13, 2020) ............................................................8

- iii -

*Berger v. Home Depot USA, Inc.*,
 741 F.3d 1061 (9th Cir. 2014) .................................................................... 7

*Bowers v. Jefferson Pilot Financial Insurance Co.*,
 219 F.R.D. 578 (E.D. Mich. 2004) ........................................................... 15

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) .................................................................. 19

*Brown v. Kelly*,
 609 F.3d 467 (2d Cir. 2010) ..................................................................... 24

*Bruce v. Teleflora, LLC*,
 2013 WL 6709939 (C.D. Cal. Dec. 18, 2013) ............................................ 4

*Campion v. Old Republic Home Protection Co.*,
 272 F.R.D. 517 (S.D. Cal. 2011) ........................................................... 4, 6

*Castillo v. Bank of America, NA*,
 980 F.3d 723 (9th Cir. 2020) .............................................................. 10, 21

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ................................................................................... 19

*Civil Rights Education & Enforcement Center v. Hospitality Properties Trust*,
 317 F.R.D. 91 (N.D. Cal. 2016),
 *aff'd*, 867 F.3d 1093 (9th Cir. 2017) ....................................................... 24

*Clapper v. Amnesty International USA*,
 568 U.S. 398 (2013) ................................................................................. 21

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ......................................................................... 3, 7, 25

*Connelly v. Hilton Grand Vacations Co.*,
 294 F.R.D. 574 (S.D. Cal. 2013) ............................................................. 24

*Dalton v. Lee Publications, Inc.*,
 270 F.R.D. 555 (S.D. Cal. 2010) ............................................................. 25

*Davidson v. O'Reilly Auto Enters.*,
 968 F.3d 955 (9th Cir. 2020) ................................................................... 16

*Dent v. National Football League*,
 2021 WL 3885954 (N.D. Cal. Aug. 31, 2021) .................................... 13, 25

*Diaz v. First American Home Buyers Protection Corp.*,
 2011 WL 13143553 (S.D. Cal. Sept. 8, 2011) ............................................ 4

- iv -

*Drimmer v. WD-40 Co.*,
  2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) ......................................................... 23

*Elliott v. QF Circa 37, LLC*,
  2018 WL 2933467 (S.D. Cal. June 12, 2018) ......................................................... 20

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................... 16, 19, 23, 24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ................................................................. 12

*Fleming v. Charles Schwab Corp.*,
  878 F.3d 1146 (9th Cir. 2017) ........................................................... 22

*Freeman Investments, L.P. v. Pacific Life Insurance Co.*,
  704 F.3d 1110 (9th Cir. 2013) ................................................................. 21

*Friend v. Hertz Corp.*,
  2011 WL 750741 (N.D. Cal. Feb. 24, 2011),
  *aff'd*, 564 F. App'x 309 (9th Cir. 2014) .............................................. 24

*G&G Productions LLC v. Rusic*,
  902 F.3d 940 (9th Cir. 2018) ................................................................. 14

*Gonzales v. Comcast Corp.*,
  2012 WL 10621 (E.D. Cal. Jan. 3, 2012) .............................................. 10

*Gooch v. Life Investors Insurance Co. of America*,
  672 F.3d 402 (6th Cir. 2012) ................................................................. 24

*Gustafson v. BAC Home Loans Servicing, LP*,
  294 F.R.D. 529 (C.D. Cal. 2013) ....................................................... 7, 14

*Hampton v. Pacific Investment Management Co.*,
  705 F. App'x 558 (9th Cir. 2017) ........................................................... 22

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................. 22

*Henson v. Fidelity National Financial Inc.*,
  300 F.R.D. 413 (C.D. Cal. 2014) ........................................................... 14

*Hernandez v. State Farm Fire & Casualty Co.*,
  2017 WL 932198 (S.D. Cal. Mar. 9, 2017) .............................................. 10, 18, 23

*In re Asacol Antitrust Litigation*,
  907 F.3d 42 (1st Cir. 2018) ................................................................. 21

- v -

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
   725 F.3d 244 (D.C. Cir. 2013) ................................................................. 10

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
   571 F.3d 953 (9th Cir. 2009)................................................................... 15

*In re: Facebook Privacy Litigation*,
   2016 WL 4585817 (N.D. Cal. Sept. 2, 2016) ......................................... 4

*In re: First American Home Buyers Protection Corp. Class Action Litigation*,
   313 F.R.D. 578 (S.D. Cal. 2016),
   *aff'd sub nom. Carrera v. First American Home Buyers Protection Co.*,
   702 F. App'x 614 (9th Cir. 2017)........................................................... 24

*Krueger v. Wyeth, Inc.*,
   2008 WL 481956 (S.D. Cal. Feb. 19, 2008) ........................................... 23

*Krueger v. Wyeth, Inc.*,
   396 F. Supp. 3d 931 (S.D. Cal. 2019) .................................................... 20

*Lara v. First National Insurance Co. of America*,
   ___ F.4th ___, 2022 WL 414691 (9th Cir. 2022) ................................... 10

*Leyva v. Medline Industries Inc.*,
   716 F.3d 510 (9th Cir. 2013)................................................................... 10

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ................................................................................... 9

*Lith v. iHeartMedia + Entertainment, Inc.*,
   2016 WL 4000356 (E.D. Cal. July 25, 2016) ......................................... 4

*Lucas v. Breg, Inc.*,
   212 F. Supp. 3d 950 (S.D. Cal. 2016) ............................................. *passim*

*Mares v. Swift Transportation Co. of Arizona*,
   2017 WL 10592147 (C.D. Cal. May 23, 2017) ...................................... 13

*Martinez v. Welk Group*,
   2012 WL 2888536 (S.D. Cal. July 13, 2012)....................................... 4, 7

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ........................................................... 21

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012).................................................... 13, 15, 20

- vi -

*McHugh v. Protective Life Insurance Co.*,
    12 Cal. 5th 213 (2021) ................................................................ 1, 7, 8, 16

*Microsoft Corp. v. Baker*,
    137 S. Ct. 1702 (2017 ............................................................................... 7

*Moore v. Apple Inc.*,
    2015 WL 7351464 (N.D. Cal. Nov. 20, 2015) ........................................... 4

*Moore v. Apple Inc.*,
    309 F.R.D. 532 (N.D. Cal. 2015) ............................................................ 20

*Morales v. GE Osmonics, Inc.*,
    2010 WL 11508990 (S.D. Cal. July 12, 2010) ........................................ 20

*Mueller v. Auker*,
    700 F.3d 1180 (9th Cir. 2012) ................................................................. 21

*NEI Contracting & Engineering, Inc. v. Hanson Aggregates Pacific Southwest,
Inc.*,
    926 F.3d 528 (9th Cir. 2019) ................................................................... 19

*Nelson v. Giurbino*,
    395 F. Supp. 2d 946 (S.D. Cal. 2005) ..................................................... 20

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    904 F.3d 821 (9th Cir. 2018) ................................................................... 22

*Oasis West Realty, LLC v. Goldman*,
    51 Cal. 4th 811 (2011) ............................................................................ 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................................ 21

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................... 23

*Peterson v. CJ America, Inc.*,
    2015 WL 11582833 (S.D. Cal. Dec. 16, 2015) ....................................... 14

*Philips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................ 13

*Pierce v. County of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ................................................................. 18

*Rapp v. Green Tree Servicing, LLC*,
    302 F.R.D. 505 (D. Minn. 2014) ............................................................ 14

- vii -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION    17cv1709

*Reitman v. Champion Petfoods USA, Inc.*,
   830 F. App'x 880 (9th Cir. 2020)............................................................................ 25

*Russell v. Kohl's Department Stores, Inc.*,
   2015 WL 12748629 (C.D. Cal. Dec. 4, 2015) ........................................................ 24

*Senne v. Kansas City Royals Baseball Corp.*,
   934 F.3d 918 (9th Cir. 2019)................................................................................... 14

*Siino v. Foresters Life Insurance & Annuity Co.*,
   2020 WL 8410449 (N.D. Cal. Sept. 1, 2020) ........................................................ 19

*Siino v. Foresters Life Insurance & Annuity Co.*,
   2022 WL 110249 (N.D. Cal. Jan. 12, 2022) .................................................... 23, 25

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................ 19

*Standard Fire Insurance Co. v. Knowles*,
   568 U.S. 588 (2013) ................................................................................................ 23

*Stromberg v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021)...................................................................... 13, 14, 15

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630, 639–40 (N.D. Cal. 2015) ............................................................. 25

*Thomas v. State Farm Insurance Co.*,
   424 F. Supp. 3d 1018 (S.D. Cal. 2019) ................................................................... 11

*Thomas v. State Farm Life Insurance Co.*,
   2021 WL 4596286 (9th Cir. Oct. 6, 2021)............................................................... 11

*Thompson v. Allianz Life Insurance Co. of North America*,
   330 F.R.D. 219 (D. Minn. 2019).............................................................................. 14

*Tidwell v. Thor Indus.*,
   2007 WL 8083631 (S.D. Cal. Mar. 26, 2007).......................................................... 22

*Torres v. Dino Palmieri Salons, Inc.*,
   2021 WL 4808780 (N.D. Ohio Oct. 15, 2021) ........................................................ 17

*Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*,
   2018 WL 1896310 (C.D. Cal. Mar. 28, 2018) ......................................................... 20

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190, 2208 (2021) ...................................................................... 19, 20, 21

*Troyk v. Farmers Group*,
   171 Cal. App. 4th 1305 (2009).................................................................................. 12

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................................. 20

*Van Tassel v. State Farm Mutual Automobile Insurance Co.*,
   843 F. App'x 948 (9th Cir. 2021)............................................................................... 11

*Walker v. Life Insurance Co. of the Southwest*,
   953 F.3d 624 (9th Cir. 2020).................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... 3, 9, 16, 24

*Weisberg v. Takeda Pharmaceuticals U.S.A., Inc.*,
   2018 WL 4043171 (C.D. Cal. Aug. 21, 2018)............................................................ 7

*Westways World Travel, Inc. v. AMR Corp.*,
   2005 WL 6523266 (C.D. Cal. Feb. 24, 2005),
   *aff'd*, 265 F. App'x 472 (9th Cir. 2008) ..................................................................... 7

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001),
   *as amended*, 273 F.3d 1266 (9th Cir. 2001)........................................ 13, 15, 17, 18

## Statutes

15 U.S.C. § 78a........................................................................................................... 21

CALIFORNIA INSURANCE CODE § 10113.71 ...................................................................... 1

CALIFORNIA INSURANCE CODE § 10113.72 ................................................................... 1, 8

## Rules

FEDERAL RULE OF CIVIL PROCEDURE 23........................................................ 3, 17, 22, 23

## Secondary Sources

16 WILLISTON ON CONTRACTS § 49:85 (4th ed. 2021).................................................. 12

AM. COUNCIL OF LIFE INSURERS, LIFE INSURERS FACT BOOK 2021 (2021),
   https://tinyurl.com/ACLIFactBook2021 ................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Appellee's Answer Brief,
   *Thomas v. State Farm Life Ins. Co.* (9th Cir. Aug. 27, 2020)
   (No. 20-55231), 2020 WL 5351406.........................................................................11

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION     17cv1709

# I.   <u>INTRODUCTION</u>

Plaintiff asks this Court to certify a sprawling, nationwide class that has putative members in all 50 states (and abroad) and concerns life-insurance policies issued in 49 states. She asserts this Court can do so simply because the California Supreme Court's decision in *McHugh v. Protective Life Insurance Co.*, 12 Cal. 5th 213 (2021), concluded that California Insurance Code §§ 10113.71–10113.72 ("the Statutes") apply to life-insurance policies issued or delivered in California before the Statutes took effect in 2013.

The initial problem with Plaintiff's request is that *McHugh* simply announced what this Court had already concluded when it denied her previous motion to certify a class. Plaintiff has not any more carried her burden to prove certification is appropriate now than when she failed to do so the first time. As this Court observed when it denied certification in 2020, Plaintiff's individual case against American General raises a host of individual issues about breach and causation. (D.E. 190 at 4:10–18.) Individual factual issues—about breach, causation, damages, defenses, choice of law, and more—likewise exist for each of the 57,000+ putative class members. A policy-file-by-policy-file review is needed to determine whether each individual member failed to receive what the Statutes require (a process that requires proving a negative), whether a policy was voluntarily terminated, whether American General offered to reinstate a policy, whether a statutory violation caused any harm, and so on.

Nothing has happened since 2020 to eliminate the "individual factual issues" that exist for each member of the putative class here. (*Id.* at 4:18.) In *McHugh*, the California Supreme Court held *only* that the Statutes apply to pre-2013 policies. In fact, *McHugh* itself illustrates that an individualized review is needed. In *McHugh*, the trial court ruled that the Statutes applied. Then a jury found a violation of the Statute. But based on individualized evidence, the jury also found the violation caused no damage, and it rendered a no-liability verdict. The California appellate courts have not disturbed that verdict. Nor have those courts held a statutory violation provides perpetual coverage or excuses a breach-of-contract plaintiff from proving proximate causation. Similarly, before the

1  court in *Bentley v. United of Omaha Life Insurance Co.* certified a class with 33 policies,

2  it had to conduct an individualized review of each policy file to identify—and then ex-

3  clude—the policies that lapsed voluntarily. That individualized review may be possible

4  in solo cases (like *McHugh*) or when there are only a few dozen policies (as in *Bentley*).

5  But the 57,000+ mini-trials that would be needed here make it impossible for Plaintiff

6  to satisfy Rule 23(b)(3)'s superiority and predominance requirements.

7      Besides these individualized factual issues, individualized choice-of-law issues

8  also keep Plaintiff from satisfying the predominance and superiority requirements. This

9  Court will have to determine what law applies to each class member's claims and for

10  American General's defenses. Every state's law will apply to some member's claim.

11  Plaintiff has not submitted a trial plan solving this choice-of-law puzzle or showing that

12  a class proceeding would be manageable in light of these problems.

13      Plaintiff's proposed class fails to meet Rule 23(a)'s prerequisites. Plaintiff has not

14  shown that a class-wide proceeding here can generate common answers apt to drive the

15  resolution of the litigation. Nor has she proven typicality or adequacy.

16      In addition, Plaintiff lacks Article III standing to seek declaratory or injunctive

17  relief, and even if she did, she could not otherwise show that a declaratory or injunctive

18  relief class is proper under Rule 23(b)(2). Her proposed class also raises other jurisdic-

19  tional issues, and she fails to meet the requirements for "issue certification" under Rule

20  23(c)(4). Simply put, Plaintiff's motion for class certification should be denied.

## II.  BACKGROUND

22      American General detailed the facts of this case in support of its recent summary-

23  judgment motion. (*See* D.E. 219-1.) Additional facts appear throughout this brief. Amer-

24  ican General stands by its statement of the facts in its summary-judgment motion, and it

25  will not point out every misstatement in Plaintiff's motion for class certification.

26      But American General must note that Plaintiff's motion does not depict reality.

27  For instance, Plaintiff accuses American General of not providing a grace period for Mr.

28  Moriarty's Policy. (D.E. 222-1 at 15:16–20.) But this Court held that American General

- 2 -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION   17cv1709

"complied with" the Statutes' grace-period requirement, granting summary judgment for American General on that point. (D.E. 184 at 7:14.) Plaintiff also states, without evidence, that American General "never sent" a "formal" lapse notice. (D.E. 222-1 at 15:7–8.) Yet the evidence shows that American General sent a lapse notice (*see* D.E. 219-1 at 15:12–27), and the Statutes do not require a so-called "formal" notice.

## III.   LEGAL STANDARD

Class actions are "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). It is thus no surprise that Federal Rule of Civil Procedure 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). It is a plaintiff's burden to "affirmatively demonstrate" that, "*in fact*," all Rule 23(a) prerequisites are met. *Wal-Mart*, 564 U.S. at 350. A plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court's analysis must be "'rigorous'" and will often "overlap with the merits." *Wal-Mart*, 564 U.S. at 351 (citation omitted). When a plaintiff fails to carry her evidentiary burden, a class cannot be certified. *Id.* at 350–51.

## IV.   ARGUMENT

### A.   Plaintiff has not proven that common questions predominate over individual issues.

Rule 23(b)(3)'s predominance requirement requires Plaintiff to prove, with evidence, that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). That requirement "is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 33. "[C]ommon questions will not predominate where the critical legal and factual issues … require individualized analysis." *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016).

### 1.   *Individual issues of fact predominate.*

As this Court already recognized, Plaintiff's proposed class raises "multiple factual issues." (D.E. 190 at 4:21.) The "individual factual issues" in Plaintiff's case alone

include: (1) "whether American General properly mailed Mr. Moriarty and Plaintiff a notice of termination letter"; (2) "whether Mr. Moriarty or Plaintiff received such a letter"; (3) "whether American General imposing an effective termination date fewer than 30 days after it mailed the notice of termination letter actually caused damage to Plaintiff"; (4) "whether Plaintiff had actual notice of a lapsed policy payment"; and (5) "whether Plaintiff would have been Mr. Moriarty's § 10113.72 designee." (*Id.* at 4:12–18.) Though American General contends some of those issues can be resolved in American General's favor on summary judgment (D.E. 219-1), none can be resolved in Plaintiff's favor on summary judgment (D.E. 184 at 8:21–9:2, 10:6–11:14). There must be a trial on the individual facts of Plaintiff's particular case. What is true for Plaintiff is also true for the proposed class: There would have to be an individualized review of over 57,000 policy files, leading to over 57,000 mini-trials. This defeats predominance.

> a.   Plaintiff has not proven class-wide non-compliance with the Statutes.

When determining whether a contract was breached requires individualized review, class certification is improper. *See, e.g.*, *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 531 (S.D. Cal. 2011) (denying certification when determining whether there was wrongful conduct required individualized inquiries); *Lith v. iHeartMedia + Ent., Inc.*, 2016 WL 4000356, at *5 (E.D. Cal. July 25, 2016) (striking a class allegation that required proving a statutory violation to determine class membership).[1] And here, liability and class membership both require proof of a negative—proof that, for every individual policy owner, American General did not do what the Statutes required. But

---

[1]    *See also In re: Facebook Priv. Litig.*, 2016 WL 4585817, at *9 (N.D. Cal. Sept. 2, 2016); *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *9 (C.D. Cal. Mar. 18, 2015); *Bruce v. Teleflora, LLC*, 2013 WL 6709939, at *5–7 (C.D. Cal. Dec. 18, 2013); *Martinez v. Welk Grp.*, 2012 WL 2888536, at *4 (S.D. Cal. July 13, 2012); *Diaz v. First Am. Home Buyers Prot. Corp.*, 2011 WL 13143553, at *6 (S.D. Cal. Sept. 8, 2011); *cf. Moore v. Apple Inc.*, 2015 WL 7351464, at *8 (N.D. Cal. Nov. 20, 2015) ("Because actual breach of a contract is an essential element of Plaintiff's asserted cause of action [for tortious interference with a contract], the Court must undertake this analysis for each class member to determine Apple's culpability.").

- 4 -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION          17cv1709

1   answering that question requires an individualized review of each policy file, and Plain-
2   tiff presents no evidence about any particular policy besides her own.

3       The facts of Plaintiff's individual case illustrate that even when American General
4   thought the Statutes did not apply, that does not mean it violated the Statutes. As this
5   Court held on summary judgment, American General gave Mr. Moriarty more than a 60-
6   day grace period, even though the Policy's terms did not require it. (D.E. 184 at 7:5–15.)
7   And as the evidence shows, American General sent Mr. Moriarty a 30-day lapse notice—
8   again, even though the Policy's terms did not require it. (*See* D.E. 219-1 at 28:6–30:11.)

9       In addition, many other policies required a 60-day grace period (Ex. B, ¶¶ 6, 9),
10   and many other policy owners received a 60-day grace period even if their policies did
11   not require one (*see* D.E. 222-3 at 100:9–17). Similarly, some policies required a 31-day
12   lapse notice (Ex. B, ¶¶ 6, 9), and as with Mr. Moriarty, American General often provided
13   a lapse notice anyway (*see* D.E. 222-3 at 102:5–16). Those notices were not uniform.
14   (*See* Ex. C.) And though American General did not believe the secondary designee re-
15   quirement applied to all pre-2013 policies, that does not mean no proposed class member
16   ever had the chance to designate one. American General gave some policy owners the
17   chance to designate a secondary notice recipient. (*See* Ex. D.) Determining who received
18   that opportunity but did not designate requires a file-by-file review.

19       Plaintiff ignores all of this, pretending that since American General once thought
20   the Statutes did not apply to pre-2013 policies, it must have always violated the Statutes.
21   But Plaintiff cannot wish away facts or jettison logic. And despite Plaintiff's insistence,
22   American General has *not* admitted uniform non-compliance for all pre-2013 policies.

23       For example, Plaintiff says that "over 47,000" policies terminated without a 60-
24   day grace period or a 30-day lapse notice. (D.E. 222-1 at 19:4.) But the pages she cites
25   report the number of policies (42,703) for which the written contract did not *require* a
26   60-day grace period or 30-day lapse notice. (D.E. 222-3 at 100:9–17, 102:5–16.) The
27   same document also makes clear that American General voluntarily complied for at least
28   half of those 42,703 policies, and it says nothing about whether American General also

complied for the other half. (*Id.*) And this Court's October 2020 summary-judgment order rejects the notion that an insurer necessarily violates the Statutes if its pre-2013 policy forms did not expressly require a 60-day grace period or 30-day lapse notice. (*See* D.E. 184 at 7:5–15, 10:7–17.) What matters is whether the insurer *actually provides* a grace period and lapse notice.

Similarly, Plaintiff says 57,767 policies terminated without American General first complying with the secondary-designee requirement. (D.E. 222-1 at 17:1–2.) But the document she cites refers to policies for which American General, in 2018, believed it "was not obligated" to comply with the Statutes. (D.E. 222-3 at 82:18–19.) That is different from saying American General did not, in fact, comply. And although Plaintiff says American General "did not provide *anyone* with a pre-2013 policy the right to des-ignate another person to receive" notices (D.E. 222-1 at 25:8–9), she cites no evidence for that statement, and creating that evidence would require an individualized review of thousands of files. (*See* Ex. D.) For now, it is irrelevant whether American General's internal guidelines tracked the Statutes' requirements. (*See* D.E. 222-1 at 27:28–28:9.) Plaintiff must prove, with evidence, *actual* non-compliance. That requires individualized inquiries. *Cf. Campion*, 272 F.R.D. at 531 ("[E]ven if Defendant has a uniform policy that encourages the wrongful denial of claims, the mere existence of this policy would not prove on a class-wide basis that claims were wrongfully denied or inappropriately handled.").

Of course, before the California Supreme Court issued its opinion in *McHugh*, American General took the reasonable position that the Statutes applied only to policies issued after the Statutes took effect. (*See* D.E. 219-1 at 19:18–25:14.) But *McHugh* has now ended the debate about whether, in general, the Statutes apply to pre-2013 policies that were issued and delivered in California. And American General will follow the law.

Plaintiff brazenly accuses American General of ignoring *McHugh*, but her attack uses ***pre***-*McHugh* evidence only. (*See* D.E. 222-1 at 9:21–10:3, 16:3–22, 20:3–21.)[2] In

_____

[2] The California Supreme Court issued its *McHugh* opinion in August 2021. 12 Cal.

fact, she has no post-*McHugh* evidence, as Judge Gallo ruled that discovery would not be reopened. (D.E. 218.) Her statements that American General "does not care" about the *McHugh* decision and "still has a uniform company practice not to comply with the Statutes" (D.E. 222-1 at 16:15–19) have no basis in evidence or reality. They are false.

Again, it is Plaintiff's burden to "satisfy through evidentiary proof" that common questions predominate over individual ones. *Comcast*, 569 U.S. at 33. That is a heavy burden. *See id.* at 34. Plaintiff has not carried her burden.

      b.   There are material variations in policy terms.

The individualized issues do not stop at determining whether there was a breach. Plaintiff acts as if the policies in the proposed class are all the same. They are not. The proposed class encompasses multiple life-insurance policy forms issued by different companies (including companies American General bought). Those policies differ as to: (1) whether the contract has a 60-day grace period; (2) whether it requires a 30-day lapse notice; (3) renewal language; (4) the time allowed for reinstatement; and (5) interest on death-benefit proceeds. (Ex. B.) And because "not all [putative class members] have the same contract," individual issues predominate. *Martinez*, 2012 WL 2888536, at *4.[3]

      c.   Renewals raise individualized inquiries.

Determining whether the Statutes even apply raises individualized fact issues, as well. Plaintiff's proposed class includes policies that "renewed … in California," even if the policy were not issued or delivered in California. (D.E. 222 at 3:11.)[4] Whether a

---

5th 213. The evidence Plaintiff cites about American General's understanding of the Statutes is from May 2021 and earlier. (*See* D.E. 223-3 at 14–75, 117–25.)

[3]     *See also Weisberg v. Takeda Pharms. U.S.A., Inc.*, 2018 WL 4043171, at *10 (C.D. Cal. Aug. 21, 2018); *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 543 (C.D. Cal. 2013) ("the variety and great number of form contracts at issue here would alone preclude class certification"); *Westways World Travel, Inc. v. AMR Corp.*, 2005 WL 6523266, at *9 (C.D. Cal. Feb. 24, 2005), *aff'd*, 265 F. App'x 472 (9th Cir. 2008); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017).

[4]     American General disagrees that the Statutes apply under a renewal theory simply because a policy owner makes a premium payment after January 1, 2013. (*See, e.g.*, D.E. 135-1 at 16:16–18:9.) But certification is inappropriate even under that theory.

policy has "renewed" depends on the policy language and individual facts, such as the policy's expiry date. Some American General policies define "renewal"; others do not. (*See* Ex. B, ¶¶ 6, 10.) "Renewal" definitions also vary. (*See id.*) Some types of policies do not renew at all. *See Bennett v. Reliastar Life Ins. Co.*, 2020 WL 5835324, at *4 (C.D. Cal. Sept. 23, 2020). And if merely making a premium payment "renews" a policy, then determining whether a policy issued and delivered in another state later renewed "in California" will require a payment-by-payment review.

> d.   Many policyholders stop paying premiums and let their policies lapse voluntarily.

The California Supreme Court explained that the Statutes are meant to protect policy owners from losing their policies—and this is the key word—"*inadvertently*." *McHugh*, 12 Cal. 5th at 246 (emphasis added) Plaintiff once agreed, stating the Statutes guard against "unintended" or "inadvertent" lapses. (D.E. 134-1 at 21:9–19.) And the Statutes themselves say that the lapse-notice requirement "shall not apply to nonrenewal. CAL. INS. CODE § 10113.71(b)(2). But many policyholders voluntarily stop paying their premiums, choosing to give up their policies. There are many reasons why that might happen—such as affordability, investment changes, liquidity, divorce, grown children, or availability of other insurance.

Determining whether a policy lapsed voluntarily requires a file-by-file review. The policyholder may have asked to cancel their policy. (Ex. E, ¶¶ 7–8.) Or the policyholder may have asked to cancel their automatic bank withdrawals, declined to select a new payment method, and let the policy lapse. (*Id.* ¶ 6.) Or the policyholder may have stopped paying premiums once the premiums on their term-life policy skyrocketed—such as from $67.68 to $932.80 or from $535.60 to $11,242.40. (*Id.* ¶¶ 3, 5.) Or the policyholder may have obtained new insurance. (*Id.* ¶ 4.)

File-by-file review might have been possible in *Bentley*, where the class was "comprised of only 33 persons." *Bentley v. United of Omaha Life Ins. Co.*, 2020 WL 3978090 (C.D. Cal. Mar. 13, 2020). With such a small class, the *Bentley* defendant per-formed an individualized review of 46 policies. (RJN Ex. 33.) In fact, the individualized

- 8 -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION      17cv1709

1  review was *necessary*, because the court excluded 11 policies "that end[ed] … because

2  of the policyholder's own affirmative choice." *Bentley v. United of Omaha Life Ins. Co.*,

3  2018 WL 3357458, at *6 (C.D. Cal. May 1, 2018). Because the Statutes are meant to

4  "ensure that policyholders have notice before their life insurance is canceled involuntar-

5  ily," the *Bentley* court explained that requiring notice to those voluntarily cancelling

6  "would not further the Statutes' purpose." *Id.*

7       American General must be allowed to present every available defense against each

8  class member. *Wal-Mart*, 564 U.S. at 367; *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

9  But doing so would require an individualized review for over 57,000 putative members.

10 The need for 57,000+ mini-trials about whether a policyholder voluntarily gave up their

11 policy defeats predominance.

12              e.   Reinstatement raises individualized inquiries.

13      Plaintiff's proposed class includes living owners of terminated policies, some of

14 whom may have sought reinstatement. (Ex. E.) American General has reinstated many

15 putative class policies, many with no premium change. And if a policy owner received

16 a reinstatement offer but did nothing to reinstate, then American General caused the

17 policy owner no harm. But it will require an individualized review of 12,390 policies to

18 determine whether policies were reinstated. (Ex. F at 493, 495, 497.) It will also require

19 individualized review to determine whether a policy was informally reinstated (without

20 requiring evidence of insurability). (*See* Ex. G ["Hite Dep. I"] at 59:4–25, 61:21–25,

21 64:14–25.) The need for those mini-trials makes predominance impossible.

22   **2.  *Plaintiff cannot bypass the individualized factual issues about breach, causation,***

23        ***damages, and defenses.***

24      Plaintiff tries to avoid her predominance problems by pretending that there is no

25 need for individualized inquiries to determine who can recover. That is incorrect.

26      "To ensure that common questions predominate over individual ones, [a] court

27 must 'ensure that [a] class is not defined so broadly as to include a great number of

28 members who for some reason could not have been harmed by the defendant's allegedly

- 9 -

1   unlawful conduct.'" *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020)

2   (citation omitted). In addition, "plaintiffs must be able to show that their damages

3   stemmed from the defendant's actions." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514

4   (9th Cir. 2013). And "the 'fact of damages,'" which is "a threshold question of causation

5   and injury in fact," must be established through common proof; it cannot be individual-

6   ized. *Lucas*, 212 F. Supp. 3d at 970 (citation omitted). Thus, when "figuring out whether

7   each individual putative class member was harmed would involve an inquiry specific to

8   that person," *Lara v. First Nat'l Ins. Co. of Am.*, ___ F.4th ___, 2022 WL 414691, at *4

9   (9th Cir. 2022), courts properly deny certification, *id.* at *5–6.[5]

10      Here, though, the proposed class includes policy owners who have suffered no

11   harm and are entitled to no damages—such as those who voluntarily terminated their

12   policy, had their policy reinstated, or had actual notice of a missed premium payment

13   yet failed to pay it. Determining whether American General complied with the Statutes

14   for a particular policy, whether that particular policy owner suffered harm as result of a

15   violation of the Statutes, and whether American General has a valid defense to a damages

16   claim requires an individualized inquiry. For example, after this Court held the Statutes

17   apply to pre-2013 policies and that American General did not send a secondary designee

18   notice to Mr. Moriarty, this Court still held Plaintiff was not entitled to summary judg-

19   ment because there were factual questions about whether the violation caused damages.

20   (*See* D.E. 184 at 10:7–11:14; D.E. 190 at 4:10–18.) Similar factual questions will exist

21   for putative class members. And because "each putative class member's entitlement to

---

22

23   [5]    *See also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252
     (D.C. Cir. 2013) (explaining "plaintiffs must … show that they can prove, through com-

24   mon evidence, that all class members were in fact injured"); *Gonzales v. Comcast Corp.*,
     2012 WL 10621, at *18 (E.D. Cal. Jan. 3, 2012) ("While determining the *amount* of

25   damages does not defeat the predominance inquiry, a proposed class action requiring the
     court to determine individualized *fact* of damages does not meet the predominance stand-

26   ards of Rule 23(b)(3)."), *adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012); *Allied
     Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*, 247 F.R.D. 156, 165 (C.D. Cal.

27   2007) ("[C]ertification is precluded where plaintiffs have not shown that the fact of in-
     jury element can be proven for all class members with common evidence."); *Hernandez

28   v. State Farm Fire & Cas. Co.*, 2017 WL 932198, at *5–6 (S.D. Cal. Mar. 9, 2017).

damages hinges on factual determinations requiring individualized proof," Plaintiff has not met the predominance requirement. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440, at *6 (S.D. Cal. Aug. 28, 2012) (Moskowitz, J.); *see Van Tassel v. State Farm Mut. Auto. Ins. Co.*, 843 F. App'x 948, 949 (9th Cir. 2021).

Plaintiff's invocation of *Thomas v. State Farm Life Insurance Co.* cannot overcome these barriers to certification. *Thomas* was an individual case, not a class action, and State Farm stipulated there was no evidence it complied with the Statutes' secondary designee requirement for two specific policies. *Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1020 (S.D. Cal. 2019), *aff'd sub nom. Thomas v. State Farm Life Ins. Co.*, 2021 WL 4596286 (9th Cir. Oct. 6, 2021). There was no evidence whether the two policies lapsed voluntarily or whether the statutory violation caused harm. Here, by contrast, there is a robust record that would let a jury find that Plaintiff knew the Policy was going to lapse and that any statutory violation did not cause harm. In addition, determining compliance requires individualized review. That review will reveal that many other policies lapsed voluntarily, that many other policy owners could have reinstated their policy, and that many alleged violations of the Statues otherwise caused no harm.

Also, the summary-judgment dispute in *Thomas* was "solely" about whether the Statutes applied. *Id.* at 1019. Issues of causation and damages were not squarely before the Ninth Circuit.[6] The Ninth Circuit's non-precedential statement that a technical statutory violation "means that the policy cannot lapse" was therefore ill-considered. 2021 WL 4596286, at *1. And as American General details in its opposition to Plaintiff's summary-judgment motion, a violation of the Statutes does not create perpetual coverage and forever eliminate the need to pay premiums.

The Statutes do not create a private right of action; putative class members must use an available cause of action, like breach of contract. "Considering whether 'questions

---

[6]    *See* Appellee's Answer Br. at 11, *Thomas v. State Farm Life Ins. Co.* (9th Cir. Aug. 27, 2020) (No. 20-55231), 2020 WL 5351406, at *11 ("The issue of causation, submitted as a coda to State Farm's opening brief, was not before the district court and likewise should not be before this court.").

1  of law or fact common to class members predominate' begins, of course, with the ele-

2  ments of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*,

3  563 U.S. 804, 809 (2011). To recover for breach of contract, for example, each putative

4  class member would have to prove (1) the existence of a policy, (2) their own "perfor-

5  mance or excuse for nonperformance" under the policy, (3) a breach of the policy (pre-

6  sumably, a violation of the Statutes), and (4) "the resulting damages to the plaintiff."

7  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A violation of the Stat-

8  utes cannot forever excuse policy owners from paying premiums. *See, e.g.*, 16 WILLIS-

9  TON ON CONTRACTS § 49:85 (4th ed. 2021). And when a policy owner voluntarily termi-

10  nates a policy, a violation of the Statutes cannot be the proximate cause of injury. *Troyk*

11  *v. Farmers Grp.*, 171 Cal. App. 4th 1305, 1352 (2009) (explaining proximate causation

12  is "'essential'" (citation omitted)). It requires an individualized inquiry to determine

13  when a policy owner is excused from failing to pay premiums and whether a violation

14  of the Statutes is the proximate cause of damage. Again, this Court already held, in Plain-

15  tiff's individual case, that a jury must resolve factual disputes about, among other things,

16  whether Plaintiff had actual notice that the Policy had lapsed and whether a violation of

17  the Statutes actually caused damages. (*See* D.E. 184 at 10:7–11:14; D.E. 190 at 4:10–

18  18.) The need for over 57,000 mini-trials to resolve such factual issues for each member

19  of the proposed class swamps any common questions that might exist.

20  **3.** *Individual issues of law predominate.*

21  Besides individualized fact issues, individualized legal issues also abound. Plain-

22  tiff seeks to certify a nationwide class that includes: (1) owners and beneficiaries of pol-

23  icies issued in 49 states; (2) residents of 50 states and other countries; and (3) policies

24  that lapsed while the owners and beneficiaries lived outside California. American Gen-

25  eral is also not a California company; it is headquartered in Texas and has its principal

26  place of business there. And claims, lapse, and reinstatement decisions—and the mailing

27  of notices—occurred in India, South Carolina, Illinois, Texas, and Tennessee. (Ex. I.)

28  This creates a choice-of-law nightmare and makes predominance impossible. *See Ayala*

- 12 -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION   17cv1709

*v. U.S Xpress Enters.*, 2016 WL 7586910, at \*4–6 (C.D. Cal. Dec. 22, 2016).

             a.   <u>Plaintiff cannot show it is constitutional to apply California law for each member.</u>

Even assuming the Statutes purport to apply to each putative class member, Plaintiff bears the initial burden to prove she can constitutionally apply California law to all class claims. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). To carry that burden, Plaintiff would have to prove "California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Id.* (citation omitted). This requires examining whether the parties, at the time of contracting, "had any idea that [California] law would control." *Philips Petrol. Co. v. Shutts*, 472 U.S. 797, 822 (1985).

But Plaintiff does not show how applying California law to each member's claim satisfies due process. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001). The proposed class includes members with policies issued in other states, who did not live in California when their policy lapsed, or both. It requires individualized inquiries to determine whether California law constitutionally applies to those policies. *See Mares v. Swift Transp. Co. of Ariz.*, 2017 WL 10592147, at \*8 (C.D. Cal. May 23, 2017) (partially denying certification because individualized analysis was needed to constitutionally apply California law).

             b.   <u>The applicable law will vary.</u>

Even if it were constitutional to apply California law for each proposed class member, that would not mean California law applies. "California law cannot apply to … class claims if the interests of other states outweigh California's interest." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021). To determine whether California law applies, courts use the "governmental interest test." *Id.* That test shows that California law does not apply across the board, and Plaintiff does not carry her burden to show that choice-of-law issues do not defeat predominance. *See Dent v. Nat'l Football League*, 2021 WL 3885954, at \*10 (N.D. Cal. Aug. 31, 2021).[7]

---

[7]   *Cf. also Peterson v. CJ Am., Inc.*, 2015 WL 11582833, at \*5 (S.D. Cal. Dec. 16,

As to the first prong of the governmental interest test, California law differs from other states' laws. State laws vary about lapse notices, grace periods, and secondary designees. (Ex. J.) And many states statutorily mandate that their own law applies to insurance policies issued in that state. (Ex. K.) In addition, contract law also varies state-to-state. For example, "the laws of the 50 states vary as to the admissibility of extrinsic evidence—sometimes drastically so." *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 510 (D. Minn. 2014). (Here, extrinsic evidence is needed to analyze expectations for choice-of-law purposes and to determine whether a policyholder voluntarily terminated her policy, actually received notice, chose not to reinstate, and so on.) Prejudgment interest rates vary state to state. (Ex. L.) And statutes of limitations differ—both in their length and when the limitations period begins. *Thompson v. Allianz Life Ins. Co. of N. Am.*, 330 F.R.D. 219, 226 (D. Minn. 2019). (Ex. P.) That matters because a claim that is time-barred in the jurisdiction in which it arose is also time-barred in California. *See G&G Prods. LLC v. Rusic*, 902 F.3d 940, 947 (9th Cir. 2018).[8]

As to the second and third prongs of the governmental interest test, other states have interests in applying their own laws, and those interests would be more impaired if California law applied across-the-board. *See Stromberg*, 14 F.4th at 1068. Each state "'has an interest in having its law applied to its resident claimants,'" *id.* at 1069–70 (citation omitted), and each "jurisdiction ordinarily has the predominant interest in regulating conduct within its own borders," *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 936–37 (9th Cir. 2019). So even if a policy owner once lived in California, if the owner lived in another state when the lapse occurred, the other state has an interest in applying its own laws here. Likewise, states where beneficiaries live have an interest

---

2015) (stating that "'class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members'" (citation omitted)).

[8] *See also Lucas*, 212 F. Supp. 3d at 971 (denying certification and holding discovery-rule determinations "are not susceptible to generalized proof"); *Henson v. Fidelity Nat'l Fin. Inc.*, 300 F.R.D. 413, 421 (C.D. Cal. 2014) (explaining the discovery rule is "fact-intensive and highly individualized"); *Gustafson*, 294 F.R.D. at 546 (denying certification, in part due to differences in limitations periods and discovery rules).

- 14 -

in applying their own laws. The other states might have struck a different balance when it comes to regulating insurers. Plaintiff cannot second-guess that balance. *See Andren v. Alere, Inc.*, 2017 WL 6509550, at *18 (S.D. Cal. Dec. 20, 2017).

Also, "California's interest in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594. "The fact that numerous states have enacted statutes dictating that life insurance policies are to be governed under the laws of that state clearly suggests that … [California's] interest does not outweigh that of other states." *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 582–83 (E.D. Mich. 2004). Thus, California law does not apply to the entire class, even though Plaintiff sued under a California statute. *See Stromberg*, 14 F.4th at 1067–68 (holding it was error to apply a California statute for non-California class members' claims against a California defendant). Determining which state's law applies will require individualized inquiries that defeat predominance. *See Ayala*, 2016 WL 7586910, at *5–6. For example, what law applies if: (1) the policy was issued in Kentucky to a Kentucky resident; (2) the insured lives in Florida; (3) the owner paid one premium in California; (4) the owner then moved to Nevada, where the policy lapsed; and (5) the beneficiary now lives in Hawaii?

### 4. *Plaintiff has not submitted a realistic trial plan.*

When the laws of several states "potentially" apply, a plaintiff seeking class certification "bears the burden of demonstrating 'a suitable and realistic plan for trial of the class claims.'" *Zinser*, 253 F.3d at 1189 (citation omitted). Plaintiff has not met her burden. Certification should be denied because she fails to prove these issues can realistically be tried together in any reasonable manner.

\* \* \*

Precedent defeats Plaintiff's theory that predominance is met simply because her claims depend on the Statutes' applicability. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (holding it is reversible error to "rely[] on [one factor] to the near exclusion of other factors" relevant to the predominance inquiry). And as the record shows, questions capable of generalized, class-wide proof do

- 15 -

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION        17cv1709

1   not predominate here. *See Lucas*, 212 F. Supp. 3d at 968–69. Instead, critical issues re-

2   quire an individualized analysis. *See id.* Thus, Plaintiff has not met her burden.

3   **B.   Plaintiff has not proven commonality.**

4       Commonality requires Plaintiff to prove—with evidence—that the putative class

5   members "'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 350 (citation omit-

6   ted). Commonality "does not mean merely that they have all suffered a violation of the

7   same provision of law." *Id.* "'What matters … is not the raising of common "ques-

8   tions"—even in droves—but, rather the capacity of a classwide proceeding to generate

9   common *answers* apt to drive the resolution of the litigation.'" *Id.* (citation omitted).

10       Plaintiff asserts that the central "common" question is whether the Statutes apply

11   to pre-2013 policies. But *McHugh* already answered that question; regurgitating the an-

12   swer will not drive the resolution of this litigation. In fact, *McHugh* itself shows that the

13   Statutes' applicability does not answer whether an insurer is liable. There, the insurer

14   denied a beneficiary's claim because the policy had terminated for nonpayment of pre-

15   miums before the insured's death. *McHugh*, 12 Cal. 5th at 221. The beneficiary sued for

16   breach of contract, claiming the insurer violated the Statutes. The trial court held the

17   Statutes applied to the pre-2013 policy but that a jury would determine whether the in-

18   surer was liable. *Id.* at 221. The jury then reached a defense verdict, finding that the

19   insurer did not harm the policyholder. *Id.* at 221–22. The California Supreme Court ex-

20   plicitly refused to address the correctness of the verdict. *See id.* at 246 n.10. Thus, even

21   accepting the Statutes apply, over 57,000 *McHugh*-type mini-trial will be required on

22   questions of breach, causation, and injury. Each policy file is different, so it is "impos-

23   sible to say that examination of all the class members' claims for relief will produce a

24   common answer to the crucial question[s]." *Wal-Mart*, 564 U.S. at 352.[9]

25       In addition, not all members of the proposed class have "'suffered the same in-

26   jury.'" *Davidson v. O'Reilly Auto Enters.*, 968 F.3d 955, 967 (9th Cir. 2020) (citation

27   

28   [9]   *Cf. Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[A] dis-
trict court *must* consider the merits if they overlap with the Rule 23(a) requirements.").

omitted). For some policies, no benefits are owed because the insured is still alive. The proposed class also encompasses policies that were voluntarily terminated or voluntarily reinstated. Those putative members have suffered no injury because of any violation of the Statutes. The proposed class even encompasses policies which are not lapsed at all, on the speculation that those policies might lapse in the future. Again, those putative class members have no injury at all. Thus, Plaintiff has not proven commonality.

## C.  Plaintiff has not proven that class treatment is superior to other methods for resolving the controversy.

For this Court to certify a damages class, Plaintiff must also prove "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Four factors typically guide that analysis. *See id.* Plaintiff, however, has not carried her burden of proving superiority.

*First*, there is the interest of each putative class member in personally controlling her own case. Class actions exist for times when the potential recovery is so small that there is little (or no) incentive for solo actions. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). By contrast, when individual damages may be substantial, each putative class member has a strong interest in controlling her own case. *See, e.g.*, *Zinser*, 253 F.3d at 1190–91 (holding a class action was not superior, in part because class member sought more than $50,000).[10] Here, Plaintiff seeks substantial death benefits—the Policy's face amount is *$1 million*—and punitive damages for herself. (*See* D.E. 18 at 34; D.E. 222-2 at 8.) In addition, purported class members with a $250,000 policy (RJN Ex. 2) and a $500,000 policy (RJN Ex. 1) have already filed individual actions against American General. Those amounts are not anomalous. (*See* RJN Ex. 3 ($1.4 million policy); RJN Ex. 4 ($100,000 policy).)[11] There is no good reason why those six- and

---

[10]    *See also Torres v. Dino Palmieri Salons, Inc.*, 2021 WL 4808780, at *9 (N.D. Ohio Oct. 15, 2021); *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003).

[11]    Cases against other insurers seek similar amounts. (*See* RJN Exs. 5–32.) And according to the ACLI, the average individual life-insurance policy sold in 2012 was for $163,000. AM. COUNCIL OF LIFE INSURERS, LIFE INSURERS FACT BOOK 2021, at 93 (2021), https://tinyurl.com/ACLIFactBook2021.

seven-figure policies should be lumped together. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 (9th Cir. 1974).

*Second*, there is the extent and nature of litigation begun by class members. The existence of individual suits "'indicates that individual litigation may be sufficient to satisfy potential claims.'" *Zinser*, 253 F.3d at 1191 (citation omitted). Again, purported class members have sued American General, seeking the benefits of their policies and, sometimes, punitive and emotional-distress damages. (RJN Exs. 1–4.)[12] Those other cases against American General—not to mention the dozens of other cases filed in California about the Statutes (*see* RJN Exs. 5–32)—bely Plaintiff's assumption that policy owners are ignorant of their rights, and they show that class-action treatment is not superior. Policy owners and beneficiaries can see advertisements and call an attorney if they have questions, and like Plaintiff, they may have a million reasons to do so.

*Third*, there is the desirability of consolidating all claims in a single action before a single court. For the reasons above, consolidation is not desirable.

*Fourth*, there are the likely difficulties in managing a class action. "If each class member has to litigate numerous and substantial separate issues to establish [a] right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192; *see Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (affirming a class was not superior "in light of expected difficulties identifying class members and determining appropriate damages"). As this Court has recognized, questions about breach, causation, and injury-in-fact must be litigated individually. (*See* D.E. 190 at 4:12–21.) Even assessing compliance with the Statutes and whether a policy could have been informally reinstated requires reviewing thousands of files. Those and other individualized issues—such as damages and choice of law—make the proposed class unmanageable and prevent superiority. *See Hernandez*, 2017 WL 932198, at *6 (explaining individualized issues

---

[12]    American General identified most of these cases years ago. (D.E. 150 at 26:24–26.) Thus, Plaintiff's assertion that "the record is devoid of any other suits or claims against [American General] on this issue" (D.E. 222-1 at 30:7) is incorrect.

1   defeat superiority).[13]

2   **D.   This Court lacks subject-matter jurisdiction over much of the class.**

3       **1.   *Plaintiff lacks Article III standing to seek injunctive or declaratory relief.***

4       Article III standing "'is the threshold issue in any suit.'" *NEI Contracting &*

5   *Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019)

6   (citation omitted) (affirming class decertification based on lack of standing). And Plain-

7   tiff "bears the burden of showing that Article III standing exists." *Ellis*, 657 F.3d at 978.

8   But "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for

9   each claim that they press and for each form of relief that they seek (for example, in-

10  junctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208

11  (2021). When Plaintiff lacks standing to seek a particular form of relief for herself, she

12  cannot represent a class seeking that relief. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6

13  (2016); *Lucas*, 212 F. Supp. 3d at 972.

14      Plaintiff lacks standing to seek either injunctive or declaratory relief. In fact, in a

15  holding Plaintiff never mentions, this Court found that Plaintiff "does not have Article

16  III standing" to seek an injunction. (D.E. 184 at 13:14.) That conclusion was correct.

17  Plaintiff lacks standing to pursue an injunction because she cannot show "a sufficient

18  likelihood that [s]he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461

19  U.S. 95, 111 (1983). The Policy was not in force when this case began (because the

20  insured, Mr. Moriarty, had passed away), so there is no chance Plaintiff will face an

21  alleged improper termination of the Policy in the future. Nor has Plaintiff shown she has

22  an interest in any other American General policy. As a result, there is no threat of future

23  harm to Plaintiff.[14] For similar reasons, Plaintiff lacks standing to seek declaratory relief.

---

24  [13]    Plaintiff cites *Briseno v. ConAgra Foods, Inc.*, which declined to create "a free-

25  standing administrative feasibility prerequisite to class certification." 844 F.3d 1121,

26  1126 (9th Cir. 2017). But "*Briseno* was narrow in focus," *Walker v. Life Ins. Co. of Sw.*,

    953 F.3d 624, 633 (9th Cir. 2020), and does not excuse Plaintiff from proving both pre-

27  dominance and superiority, *see id.*; *Briseno*, 844 F.3d at 1124 n.4, 1127.

    [14]    *See also Siino v. Foresters Life Ins. & Annuity Co.*, 2020 WL 8410449, at *9 (N.D.

28  Cal. Sept. 1, 2020) (holding a plaintiff without an in-force policy lacked standing to seek

    an injunction); *Bentley v. United of Omaha Life Ins. Co.*, 2016 WL 7443189, at *7 (C.D.

- 19 -

Declaratory relief "'operates prospectively, and not merely for the redress of past wrongs.'" *Morales v. GE Osmonics, Inc.*, 2010 WL 11508990, at *2 (S.D. Cal. July 12, 2010) (citation omitted). Because Plaintiff cannot obtain prospective injunctive relief, she cannot obtain prospective declaratory relief, either. *See Elliott v. QF Circa 37, LLC*, 2018 WL 2933467, at *23–24 (S.D. Cal. June 12, 2018).

Further, Plaintiff's requested declaration "to the effect that [the Statutes] applied as of January 1, 2013, to policies issued or delivered prior to … 2013" (D.E. 18, ¶ 74) is moot since the California Supreme Court resolved that issue in *McHugh*. (D.E. 219-1 at 30:12–32:2.) Thus, this Court lacks jurisdiction to issue that declaration. *See Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, 2018 WL 1896310, at *6 (C.D. Cal. Mar. 28, 2018); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 952 (S.D. Cal. 2005).

Because Plaintiff lacks standing to seek injunctive relief or declaratory relief, the Court cannot certify a class seeking that relief. *See Lucas*, 212 F. Supp. 3d at 972.

## 2. *The proposed class includes members who lack standing.*

Article III standing requires "an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 141 S. Ct. at 2203. And because class members become parties upon certification, "'[n]o class may be certified that contains members lacking Article III standing.'" *Mazza*, 666 F.3d at 594 (citation omitted); *see TransUnion*, 141 S. Ct. at 2208 ("Every class member must have Article III standing in order to recover individual damages."). Doing otherwise would violate the Rules Enabling Act by extending "different rights in a class proceeding than … in an individual action." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016).[15]

---

Cal. June 22, 2016) (same).

[15]    "Defining [a] class in such a way as to ensure the standing of the class is necessary to avoid inconsistencies and inequities that would inevitably occur if plaintiffs were allowed to sue as class members, but not as individuals." *Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 944 (S.D. Cal. 2019). A class is overbroad when it includes those who could not have been harmed. *Moore v. Apple Inc.*, 309 F.R.D. 532, 543 (N.D. Cal. 2015). *But see B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) (focusing the standing inquiry on the named plaintiff).

Here, the proposed class includes members who voluntarily terminated their policies or had their policies reinstated. Those members have no "concrete, particularized, and actual or imminent" injury-in-fact. *TransUnion*, 141 S. Ct. at 2203. (That American General allegedly violated a statute is not an injury-in-fact. *Id.* at 2004–06.) Further, any injury those putative members did suffer was not "caused by" American General. *Id.* at 2203. As a result, they cannot recover damages. *Id.* at 2208 ("Every class member must have Article III standing in order to recover individual damages."); *id.* at 2214 (rejecting the damages claims of class members who lacked standing).[16]

The proposed class also includes members with policies that "will undergo lapse or termination" *in the future*. (D.E. 222 at 3:12.) Those policy owners lack standing because they have no actual or imminent injury. *See Mueller v. Auker*, 700 F.3d 1180, 1195 (9th Cir. 2012) ("'To the extent that the Muellers seek to represent a class of parents who might in the future have their children removed, they lack standing.'" (citation and internal brackets omitted)). Their supposed future harm is not "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).[17] Thus, they cannot be members of the class. *See Mazza*, 666 F.3d at 594.

### 3.  *SLUSA precludes certain class claims for variable policies.*

Plaintiff's proposed class includes variable universal life-insurance policies that are "securities" under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 78a *et seq.*; *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1117 (9th Cir. 2013). SLUSA deprives this Court of jurisdiction over state-law contract class claims that are based on misrepresentations or omissions in connection with the purchase

---

[16]  *See also In re Asacol Antitrust Litig.*, 907 F.3d 42, 58 (1st Cir. 2018) ("[A] class cannot be certified based on an expectation that the defendant will have no opportunity to press at trial genuine challenges to allegations of injury-in-fact.").

[17]  Defining the class to include those whose policies might lapse in the future causes a host of other problems, too. It defeats predominance. *See Castillo*, 980 F.3d at 730. It also makes the class definition overbroad and imprecise. *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). And it raises Seventh Amendment and Due Process concerns for the unidentifiable members. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845–48 (1999).

1  or sale of securities. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821,

2  828–35 (9th Cir. 2018).[18] Plaintiff alleges breach of contract based on false conduct: She

3  alleges that American General failed to tell owners of their rights, forcing some owners

4  to reinstate policies with a higher premium. (*See* D.E. 18, ¶ 41.) SLUSA deprives this

5  Court of jurisdiction over those claims. *Northstar*, 904 F.3d at 834.

6  **E.   Plaintiff has not proven that her claims are typical of proposed class members.**

7  Plaintiff must prove her "claims or defenses … are typical" of the proposed class.

8  FED. R. CIV. P. 23(a)(3). This "typicality" analysis asks "'whether other members have

9  the same or similar injury, whether the action is based on conduct which is not unique

10  to the named plaintiffs, and whether other class members have been injured by the same

11  course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

12  (citation omitted). A class should not be certified when "'there is a danger that absent

13  class members will suffer if their representative is preoccupied with defenses unique to

14  it.'" *Id.* (citation omitted).

15  Plaintiff is subject to unique defenses, and much of this litigation has been con-

16  sumed by the facts of her individual case. Mr. Moriarty received a 60-day grace period

17  and a 30-day lapse notice. (*See* D.E. 184 at 7:5–15; D.E. 219-1 at 28:6–30:11.) Plaintiff

18  also had actual notice the Policy would terminate if she did not pay the premium. She

19  knew Mr. Moriarty had closed the bank account that paid his insurance premium. (Ex.

20  M ["Plaintiff Dep."] at 74:25–76:1, 190:16–191:2.) And she even called her broker about

21  paying the premium. (*Id.* at 165:12–170:15.) Yet Plaintiff failed to pay the premium. In

22  addition, questions about the adequacy of the lapse notice and who would have been Mr.

23  Moriarty's secondary designee have been unique to Plaintiff. *See Tidwell v. Thor Indus.*,

24  2007 WL 8083631, at *5 (S.D. Cal. Mar. 26, 2007) (denying certification because "the

25  factual events which would support [the] legal theories and the defenses are unique").

26  Plaintiff's purported injury is also atypical. Mr. Moriarty has passed away, and

27

28  [18]   *See also Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1153 n.4 (9th Cir. 2017); *Hampton v. Pac. Invs. Mgmt. Co.*, 705 F. App'x 558, 561 (9th Cir. 2017).

- 22 -

Plaintiff seeks $1 million in death benefits under the Policy. Yet Plaintiff also seeks to represent those who have no damages claim because the insured is still alive. She even tries to represent those whose policies are still in force. Plaintiff lacks standing to do so, so her asserted injury cannot be typical of the proposed class members.

**F. Plaintiff has not proven that she will be an adequate representative.**

Plaintiff must prove that she "will fairly and adequately protect the interests" of absent members. FED. R. CIV. P. 23(a)(4). Adequacy "depends on, among other factors, … a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985. Plaintiff is an inadequate representative for two reasons.

*First*, Plaintiff seeks non-economic, punitive, and exemplary damages for herself —and only herself. (D.E. 18 at 34:8–9.) If those demands had merit, an adequate representative would have pursued them on behalf of the class. A class representative cannot "'throw away what could be a major component of the class's recovery.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (citation omitted).[19]

*Second*, Plaintiff lacks standing to seek injunctive or declaratory relief, and so she cannot "share an interest with class members whose primary goal is to obtain" that kind of relief. *Ellis*, 657 F.3d at 986.

**G. Plaintiff fails to satisfy the requirements for a Rule 23(b)(2) class.**

Plaintiff argues that this Court should certify a class for declaratory or injunctive relief under Rule 23(b)(2).[20] But earlier this year, Judge Tigar refused to certify a similar proposed class under Rule 23(b)(2). *Siino v. Foresters Life Ins. & Annuity Co.*, 2022 WL 110249, at *2–3 (N.D. Cal. Jan. 12, 2022). For three reasons, this Court should do the same.[21]

---

[19]    *See also Hernandez*, 2017 WL 932198, at *4 ("Abandonment of meritorious class claims for the sake of maintaining a class action … bespeaks inadequate representation."); *Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *3–4 (S.D. Cal. Feb. 19, 2008) (finding a plaintiff who failed to seek certain damages for the class was inadequate); *Drimmer v. WD-40 Co.*, 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007) (same).

[20]    Rule 23(b)(2)'s "primary role … has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014).

[21]    In arguing for Rule 23(b)(2) certification, Plaintiff cites inapposite out-of-Circuit

*First*, "'certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive,'" *Ellis*, 657 F.3d at 986 (citation omitted); "individualized monetary claims belong in Rule 23(b)(3)," *Wal-Mart*, 564 U.S. at 362. Here, the monetary claims are primary, not incidental. Plaintiff seeks substantial money damages—calculated based on "the face amount" of individual policies—for class members. (D.E. 222-1 at 28:22.) Even for policies where the insured is still alive, the end goal is to obtain policy benefits. The monetary claims are not uniform, though, because different policies have different face amounts. That prevents Rule 23(b)(3) certification. *See Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 310 (S.D. Cal. 2015) ("Because plaintiff is seeking individualized monetary claims and not solely injunctive relief, certification is only proper under Rule 23(b)(3).").[22]

*Second*, Plaintiff lacks standing to seek an injunction or declaratory relief. *See In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 612 (S.D. Cal. 2016) (denying Rule 23(b)(2) certification because named plaintiffs lacked standing to seek prospective relief), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017); *Friend v. Hertz Corp.*, 2011 WL 750741, at \*4 (N.D. Cal. Feb. 24, 2011) (same), *aff'd*, 564 F. App'x 309 (9th Cir. 2014).

*Third*, Plaintiff does not show that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Plaintiff seeks "'a bare injunction to follow the law,'" but that is not enough. *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 105 (N.D. Cal. 2016) (citation omitted), *aff'd*, 867 F.3d 1093 (9th Cir. 2017). And as American General explains in its opposition to Plaintiff's summary-judgment motion, the notion that this Court can somehow declare

_____

decisions. Two predate the Supreme Court's *Wal-Mart* decision. *See Brown v. Kelly*, 609 F.3d 467, 477 n.8 (2d Cir. 2010) (addressing certification of a defendant class); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) (plaintiffs sought "only injunctive and declaratory relief, not individual damages"). And Plaintiff mistakenly relies on dicta in a decision that *vacated* class certification. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 434 (6th Cir. 2012).

[22] *See Russell v. Kohl's Dep't Stores, Inc.*, 2015 WL 12748629, at \*6 (C.D. Cal. Dec. 4, 2015); *Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 579 (S.D. Cal. 2013).

1  policies to be in force forever without payment of premiums fails as a matter of law.

2  Thus, there is no basis for certifying a class under Rule 23(b)(2).

3  **H.  Plaintiff cannot satisfy the requirements for an "issue class" under Rule 23(c)(4).**

4  Finally, if all else fails, Plaintiff asks this Court to certify "issue classes" under

5  Rule 23(c)(4). But Plaintiff's cursory argument fails for four reasons.

6  *First*, issue certification is appropriate only when class-wide adjudication will

7  "achieve judicial economy as to the action as a whole." *Dent*, 2021 WL 3885954, at *15

8  (emphasis omitted). But here, it would achieve nothing to certify an issue class about

9  whether the Statutes apply to pre-2013 policies. The California Supreme Court already

10  decided that issue. For this reason alone, Judge Tigar recently denied issue certification.

11  *See Siino*, 2022 WL 110249, at *1 n.1.

12  *Second*, determining whether American General complied with the Statutes, and

13  the effect of any non-compliance, requires individualized inquiries. Plaintiff cannot

14  dodge those inquiries under Rule 23(c)(4). *See Reitman v. Champion Petfoods USA, Inc.*,

15  830 F. App'x 880, 882 (9th Cir. 2020) (affirming the denial of issue certification because

16  individualized issues affected liability determinations); *Tasion Commc'ns, Inc. v. Ubiq-*

17  *uiti Networks, Inc.*, 308 F.R.D. 630, 639–40 (N.D. Cal. 2015).

18  *Third*, the Supreme Court has never held—and Rule 23 does not describe—issue

19  certification to be an alternative to Rule 23(b). Instead, the Supreme Court has explained

20  that a party seeking certification must satisfy "at least one of the provisions of Rule

21  23(b)." *Comcast*, 569 U.S. at 33; *accord Dalton v. Lee Publ'ns, Inc.*, 270 F.R.D. 555,

22  559 (S.D. Cal. 2010) (Moskowitz, J.). Plaintiff has not met those requirements.

23  *Fourth*, certifying an issue class here would violate the Seventh Amendment.[23]

24  ## V.  CONCLUSION

25  For these reasons, the motion for class certification (D.E. 222) should be denied.

26

---

27  [23]   *See, e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996); *In re*
28  *Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300–04 (7th Cir. 1995); *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318–19, 328 (5th Cir. 1978).

- 25 -

1    DATED: February 21, 2022      **MAYNARD COOPER & GALE, LLP**

2

3                              By: /s/ *Christopher C. Frost*
                             Michael D. Mulvaney (*pro hac vice*)

4                              Christopher C. Frost (SBN 315932)
                             Nicholas J. Boos (SBN 233399)

5                              Email: mmulvaney@maynardcooper.com
                             Email: cfrost@maynardcooper.com

6                              Email: nboos@maynardcooper.com

7                              **NOONAN LANCE BOYER & BANACH, LLP**
                             David J. Noonan (SBN 55966)

8                              Email: dnoonan@noonanlance.com

9                              Attorneys for Defendant

10                            AMERICAN GENERAL LIFE INSURANCE
                           COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMERICAN GENERAL'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION     17cv1709