UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE L. MORIARTY, as Successor-In-Interest to Heron D. Moriarty, Decedent, on Behalf of the Estate of Heron D. Moriarty, and on Behalf of the Class,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.: 3:17-cv-1709-JO-WVG<br><br>**ORDER GRANTING PLAINTIFF'S RENEWED SUMMARY JUDGMENT MOTION**<br><br>**[ECF NO. 301]** |

Plaintiff Michelle Moriarty sued Defendant American General Life Insurance Company for breach of contract after Defendant refused to pay the life insurance benefits on her husband's policy. Plaintiff contends that her husband's policy was still in force at the time of his death under California Insurance Code Sections 10113.71(b) and 10113.72(c). The Court agrees and reconsiders its September 7, 2022, order denying Plaintiff summary judgment on her breach-of-contract claim.[1] For the reasons set forth

---

[1] The Honorable Barry Ted Moskowitz issued the September 2022 order denying Plaintiff's motion for summary judgment. (ECF No. 252). The case was transferred to the undersigned

below, the Court grants Plaintiff's Renewed Motion for Summary Judgment on her breach-of-contract claim.

## I. BACKGROUND

**A. Factual Background**

On September 20, 2012, Heron D. Moriarty purchased a $1 million term life insurance policy from Defendant American General Life Insurance Company. (ECF No. 301, Exh. A). He designated Plaintiff Michelle Moriarty, his wife, as the primary beneficiary of the policy. (Id.).

Mr. Moriarty timely paid his premiums for about four years; between September 2012 and February 2016, Mr. Moriarty paid the monthly premiums by automatic draft from his bank account. (ECF No. 301, Exhs. C, D, & G). But on March 20, 2016, Defendant was not able to obtain the monthly payment because Mr. Moriarty's bank account had been closed. (ECF No. 301, Exh. C). Around this time, Mr. Moriarty was suffering from mental health issues and had been admitted to two different psychiatric hospitals. (ECF No. 301, Exh. E).

Before terminating the insurance policy, Defendant attempted to contact Mr. Moriarty. On March 24, 2016, Defendant sent a letter addressed to Mr. Moriarty explaining that (1) it could not obtain the premium payment because the designated bank account was closed and (2) the policy "may lapse if a new payment is not selected." (ECF No. 301, Exh. C). On May 22, 2016, Defendant mailed Mr. Moriarty a letter providing that his policy was terminated. (ECF No. 301, Exh. D). Defendant only reached out to Mr. Moriarty; it did not send a termination notice to a designated third party. (ECF No. 301, Exh. D). In fact, Defendant had never informed Mr. Moriarty of his right to designate a third party to receive termination notices in the first place. (ECF No. 302). Unfortunately, during this late May time period, Mr. Moriarty was experiencing delusions

---

after Judge Moskowitz suffered an injury. (ECF Nos. 263 & 298).

and other worsening mental health symptoms and was confined in a detention facility. (ECF No. 301, Exh. E). On May 31, 2016, Mr. Moriarty committed suicide while housed in the detention facility.[2] (Id.).

Plaintiff, as the beneficiary of her husband's life insurance policy, tried to collect her benefits but Defendant refused to pay, maintaining that the policy "lapsed on March, 20 2016, and had no value on the date of death." (ECF No. 301, Exh. F).

**B. Procedural History**

Plaintiff originally filed the instant action as a class action lawsuit in state court. (ECF No. 1). Defendant removed this case to federal court on August 23, 2017. (Id.). Plaintiff asserted four causes of action against Defendant for (1) declaratory relief; (2) breach of contract; (3) bad faith; and (4) violations of the California Business and Professions Code Section 17200. (ECF No. 18).[3] The Court ultimately denied Plaintiff's motion for class certification on September 27, 2022, leaving only her individual claims against Defendant. (ECF No. 253).

Both parties filed cross motions for summary judgment. (ECF Nos. 134 & 135). The Court issued an order granting summary judgment in part and identifying the issues that would need to be tried. (ECF No. 184).[4] The Court ruled that Defendant (1) failed to

---

[2] Suicide was not a policy exclusion at the time of Mr. Moriarty's death. (ECF No. 301, Exh. A).

[3] Plaintiff's amended complaint, the operative complaint in this matter, was filed in October 2017. (ECF No. 18).

[4] The Court issued its summary judgment order on October 2, 2020. (ECF No. 184). The Court later, on January 26, 2021, issued an order certifying for appeal the question whether Sections 10113.71 and 10113.72 apply to policies first issued before those sections came into effect, and the Court also stayed the case. (ECF Nos. 199). Defendant filed an appeal with the Ninth Circuit addressing that question. (ECF No. 200). The California Supreme Court answered the question first on August 30, 2021. *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24 (Cal. 2021) (holding that the sections "apply to all life insurance policies in force when the[] . . . sections went into effect, regardless of when the policies were originally issued"). Thus, Defendant filed a motion to voluntarily dismiss its appeal, which the Ninth Circuit granted. (ECF No. 208).

comply with Insurance Code Section 10113.72(b) because it "never provided Mr. Moriarty with the right to designate [a third party] to receive notices of pending lapses in his policy"; and (2) failed to comply with Section 10113.71(a)'s sixty-day grace period requirement by sending a termination letter on May 22, 2016 with a March 20, 2016 termination date. (Id. at 7-9). Even though the Court found that Defendant failed to properly terminate the policy in accordance with the Insurance Code, the Court ruled that whether Plaintiff suffered damages because of that failure was a factual question for trial. (Id. at 10–11). Thus, the Court denied Plaintiff summary judgment on her breach-of-contract claim. (Id. at 11). The Court did grant Defendant summary judgment on Plaintiff's restitution claims under California Business and Professions Code Section 17200. (Id. at 14). The Court also granted Defendant summary judgment on Plaintiff's bad faith and punitive damage claims based on Defendant's conduct up to August 20, 2021—the day *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24 (Cal. 2021), was decided. (ECF No. 250 at 5–7).

On May 10, 2023, after transfer to the undersigned, the Court accepted briefing on whether it should reconsider its previous ruling that Plaintiff was not entitled to summary judgment on her breach-of-contract claim.[5]

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *accord Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) ("Summary judgment is appropriate when there is no genuine dispute as to material facts

---

[5] Denials of summary judgment are interlocutory and subject to reconsideration *sua sponte* when the case is transferred to another judge for trial. *Castner v. First National Bank of Anchorage*, 278 F.2d 376, 380 (9th Cir. 1960) (holding so); *accord Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) (recognizing "that a district court judge may grant a motion for summary judgment that was previously denied by another district court judge" and "that the law of the case doctrine does not apply to pretrial rulings such as motions for summary judgment"); *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979) (explaining "that an order denying a motion for summary judgment is generally interlocutory and 'subject to reconsideration by the court at any time'" (citation omitted)).

and the moving party is entitled to judgment as a matter of law."). Material facts "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.  DISCUSSION

**A. Breach of Contract Claim**

In support of her request for summary judgment, Plaintiff argues that her husband's life insurance policy never lapsed because Defendant failed to comply with pretermination notice requirements. And because the policy was still in force as a matter of law, Plaintiff contends, Defendant's failure to pay the benefits on the policy was a breach of contract. The Court will examine this argument and Defendant's counterarguments below.

California law requires life insurance companies to provide certain protections before terminating a term life insurance policy for nonpayment. In 2012, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72.[6] These provisions require life insurance companies to:

> (1) notify the policy owner of the right to designate a third party to receive notices of lapse or pending termination, § 10113.72(a);
>
> (2) remind the policy owner annually of the right to designate a third party to receive these notices and the right to change designations, § 10113.72(b); and
>
> (3) give at least thirty-day notice to the policy owner and to the designated third party before terminating the policy, § 10113.72(c).

---

[6] Although these sections became effective on January 1, 2013, after Mr. Moriarty bought his policy, the sections "apply to all life insurance policies in force when the[] . . . sections went into effect, regardless of when the policies were originally issued." *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24, 27 (Cal. 2021).

These provisions also dictate that policies shall not lapse or be terminated for the nonpayment of a premium unless the insurer complies with the above requirements, *i.e.*, unless the insurer provides a thirty-day notice of termination to both a policy owner and a designated third party. § 10113.71(b)(1) ("A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium."); § 10113.72(c) ("No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination.").

The California Supreme Court has clarified that insurance companies must comply with these requirements to properly terminate a policy for nonpayment. *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24, 45 (Cal. 2021) ("When the Legislature enacted changes to the Insurance Code protecting people who hold life insurance policies from inadvertently losing them, it established limited protections that kept such policies from being revoked when policy owners lapsed in paying premiums."). As a result of these protections, "insurers cannot terminate policies for a premium lapse until they give at least 30-day mailed notice to the policy owners and to any additional designated individuals." *Id.* In the same case, the California Supreme Court held that these provisions apply to all policies, even those purchased before 2013, in force when these provisions became law. *Id.* at 27.

There is no genuine dispute that Defendant failed to comply with the notice requirements of Sections 10113.71 and 10113.72 before terminating Mr. Moriarty's life

insurance policy. As Defendant admits in its response,[7] Defendant did not notify Mr. Moriarty of his right to designate a third party to receive a termination notice. (ECF No. 301 at 24–25). Thus, Defendant failed to mail a termination notice to a third party as required by law. § 10113.71(b)(1); § 10113.72(c).[8]

As a result of Defendant's failure to give the required notice, Mr. Moriarty's life insurance policy did not lapse. According to the plain language of Sections 10113.71(b)(1) and 10113.72(c), life insurance policies do not lapse for nonpayment if an insurance company fails to mail a termination notice to a designated third party: "*No individual life insurance policy shall lapse or be terminated* for nonpayment of premium unless the insurer . . . gives notice to the policy owner and to the person or persons designated . . . ." By refusing to pay the benefits of Mr. Moriarty's life insurance policy—another undisputed fact—Defendant breached the contract, entitling Plaintiff to summary judgment on this claim. *Thomas v. State Farm Life Ins. Co.*, No. 20-55231, 2021 U.S. App. LEXIS 30035, at *3–4 (9th Cir. Oct. 6, 2021) (affirming summary judgment on breach of contract claim based on holding that the failure to comply with insurance code notice requirements precludes a policy from lapsing).

Notwithstanding this failure to comply with California law, Defendant argues that triable issues of fact regarding causation of damages preclude summary judgment. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). Defendant argues that whether it caused Plaintiff's damages depends on

---

[7] Defendant also conceded at oral argument that it did not terminate Mr. Moriarty's policy in accordance with the sections. (ECF No. 305 at 17:13–19).

[8] It also appears that Defendant's March 24 letter was not a valid notice of termination because it merely noted that the policy "may" lapse and thus did not notify Mr. Moriarty that the policy would lapse, as required by § 10113.72(c) (requiring insurance companies to provide notices of a planned termination).

7

3:17-cv-1709-JO-WVG

whether Mr. Moriarty would have paid the premium in time if Defendant had provided proper notice under the sections. Thus, Defendant argues, a jury should determine (1) who Mr. Moriarty would have listed as a designee to receive a termination notice and (2) whether Mr. Moriarty (or the third party) would have paid the premium before the termination date if Defendant had timely mailed a notice to that third party. In short, Defendant argues that Plaintiff needs to convince a jury that Defendant's failure to provide proper notice—as opposed to the Moriartys' inability or unwillingness to pay the premium—caused the policy to lapse.

The Court finds that this line of inquiry—that is, asking a jury to determine who is responsible for the lapse in the policy—and the associated disputes of fact identified by Defendant are immaterial for the simple reason that the policy did not lapse. As discussed above, the California legislature explicitly provided that a policy shall not lapse for nonpayment unless the insurance company provides the required pretermination notice. Given the clear and explicit language of the statute itself, the Court is unpersuaded by the non-binding authority cited by Defendant to the contrary. *See, e.g.*, *Pineda v. Williams-Sonoma Stores, Inc.*, 246 P.3d 612, 616 (Cal. 2011) (explaining that statutory interpretation begins with the "words of a statute," which govern when unambiguous).

Because Mr. Moriarty's policy was still in force under California law, Defendant's failure to pay the policy amount is the breaching conduct. *See, e.g.*, *Mackey v. Bristol West Ins. Service of Cal., Inc.*, 105 Cal. App. 4th 1247, 1258 (Cal. Ct. App. 2003) ("In California, there is no such thing as substantial compliance in furnishing notice that an insurance policy has been cancelled. Termination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation") (citation omitted). Contrary to Defendant's arguments, there is no dispute regarding causation: Defendant admittedly refused to pay the benefits of this policy, and this refusal is the breach

of contract that caused Plaintiff's damages.[9]

## B. Declaratory Relief

In her renewed motion for summary judgment, Plaintiff also asks this Court to grant summary judgment on her declaratory relief claim. In her amended complaint, Plaintiff requested a declaratory judgment declaring that Sections 10113.71 and 10113.72 apply to policies issued or delivered prior to January 1, 2013. (ECF No. 18 at 23). That issue was decided by the California Supreme Court in *McHugh* on August 20, 2021. *McHugh*, 494 P.3d at 27. The Court now grants Plaintiff judgment on her breach-of-contract claim and, in doing so, has applied *McHugh*'s holding that Sections 10113.71 and 10113.72 apply to policies in force when these sections went into effect. Because a declaratory judgment would, thus, be redundant and serve no useful purpose, the Court denies this request. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (ruling that a declaratory claim regarding an underlying cause of action was duplicative and properly dismissed); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) ("[D]eclaratory judgment without the possibility of prospective effect would be superfluous."); *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.").

## C. Class Certification

Plaintiff also asks this Court to reconsider the Court's September 27, 2022, order denying class certification, but Plaintiff has not shown that reconsideration is warranted. Plaintiff's motion for class certification was denied primarily because Plaintiff's proposed class was too broad and included many policyholders still alive and not entitled to the same type of damages as deceased policy holders. (ECF No. 253). The Court held that these

---

[9] The policy provides that Defendant would pay the "face amount of this policy" if Mr. Moriarty died "while this policy is in force." (ECF No. 301, Exh. A at 6).

differences between purported class members precluded Plaintiff from satisfying the requirements of Rule 23. (Id.). Plaintiff has not sought to narrow the class or remedy those deficiencies. Nor has she demonstrated that the Court's reasoning in reconsidering the summary judgment decision also necessitates reconsideration of the class certification decision; it does not. The Court therefore declines to reconsider the previous ruling on class certification.

## IV.  CONCLUSION

For the reasons set forth above, the Court grants summary judgment in favor of Plaintiff on her breach-of-contract claim. Plaintiff's declaratory relief claim is denied as moot. The Court has not reconsidered the previous summary judgment rulings on Plaintiff's UCL and bad faith causes of action.

The parties are ordered to meet and confer regarding pre- and post-judgment interest. Any motions regarding interest must be filed by August 24, 2023, and responses must be filed by August 31, 2023. The motion(s) will be submitted on September 1, 2023, without oral argument.

The parties are to appear by video only on August 23, 2023, at 9:30 a.m. to address whether there are any remaining issues to be tried, such as the portions of the bad faith and punitive damages claims not resolved by summary judgment.[10] If so, the Court will invite discussion on whether this decision should be certified for appeal under 28 U.S.C. § 1292(b) and whether a stay should be entered.

**IT IS SO ORDERED**.

Dated:  August 14, 2023

_____
Honorable Jinsook Ohta
United States District Judge

---

[10] The parties may contact chambers if this date and time poses a scheduling problem.